IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| In re: | § § | |
| SAM KANE BEEF PROCESSORS, LLC,[1] | § § | Case No. 19-20020 |
| Debtor. | § § | Chapter 11 |

**DEBTOR'S EMERGENCY MOTION FOR ORDER
PURSUANT TO 11 U.S.C. §§ 105(a), 363(b) AND 507(a) AUTHORIZING
THE DEBTOR TO PAY PREPETITION WAGES TO EMPLOYEES**

**THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY. YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN 21 DAYS OF THE DATE THIS WAS SERVED ON YOU. YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING.**

**EMERGENCY RELIEF HAS BEEN REQUESTED. IF THE COURT CONSIDERS THE MOTION ON AN EMERGENCY BASIS, THEN YOU WILL HAVE LESS THAN 21 DAYS TO ANSWER, IF YOU OBJECT TO THE REQUESTED RELIEF OR IF YOU BELEIVE THAT THE EMERGENCY CONSIDERATION IS NOT WARRANTED, YOU SHOULD FILE AN IMMEDIATE RESPONSE.**

**REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.**

Sam Kane Beef Processors, LLC, the above captioned debtor and debtor in possession (the "Debtor"), hereby files this this Emergency Motion for Order Pursuant to 11 U.S.C. §§ 105(a),

---

[1] The Debtor in this Chapter 11 Case, along with the last four digits of the Debtor's federal tax identification number, is: Sam Kane Beef Processors, LLC (0433).

363(b) and 507(a) Authorizing the Debtor to Pay Prepetition Wages to Employees (the "Motion") and in support hereof, respectfully state as follows:

## I.     BASIS FOR EMERGENCY RELIEF

1. The Debtor operates a meat-packing plant in Corpus Christi, TX. The Debtor employs more than 700 employees.

2. Prior to the Petition Date, the Debtor's operations were being funded by one of the Debtor's pre-petition secured lenders, Marquette Transportation Finance, LLC ("Marquette"), pursuant to a Receivership Finance Stipulation. Under the Receivership Finance Stipulation, all of the Debtor's account receivables are paid to Marquette and then advanced to the Debtor to fund the purchase of cattle and operations.

3. In reliance upon the Receivership Finance Stipulation, the Receiver has incurred payroll expenses, purchased and slaughtered cattle and begun to process slaughtered cattle for packaging and sale. The nature of the Debtor's operations is such that, if the processing of the slaughtered beef is not completed in a timely manner, the product may spoil and become worthless.

4. On January 22, 2019, Marquette failed to advance funds needed to pay for purchased cattle, fund payroll and other operating expenses incurred as requested by the Receiver in accordance with the Receivership Finance Stipulation. Additionally, Marquette failed to provide assurance to the Receiver that such expenses would be funded.

5. The Debtor has a payroll funding obligation for wages incurred through January 18, 2019 that is due on Thursday, January 24, 2019. Given the financial condition of the Debtor and various other events as set forth in the First Day Declaration of Richard S. Schmidt, the Debtor believes that the failure to meet such payroll obligation would result in a material loss of the Debtor's workforce – further hampering the Debtor's ability to complete processing of slaughtered

product and preserve value. Additionally, the Debtor and its advisors have conducted an extensive pre-petition sale process and are in the process of negotiating definitive documentation for a sale of substantially all of the Debtor's assets to a stalking-horse purchaser. It is a material condition of said bid that there be no material adverse change in the Debtor's workforce.

6. By separate motion, the Debtor has requested immediate access to its receivables and authorizing to use alleged cash collateral. By this Motion, the Debtor requests authority to pay pre-petition wage obligations necessary to sustain its work-force

## II.     JURISDICTION AND VENUE

7. This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

8. The statutory predicates for the relief requested in this motion are 11 U.S.C. 105(a), 363(b) and 507(a).

## III.     BACKGROUND

9. On January 22, 2019 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11, Title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of Texas, Corpus Christi Division (the "Court").

10. Pursuant to Bankruptcy Code §§ 1107(a) and 1108, the Debtor is operating its business and managing its property as a debtor in possession.

**A.     In General**

11. The Debtor operates a meat packing plant located at 9001 Leopard Street in Corpus Christi, Texas. It is in the business of buying and selling livestock for purposes of slaughter, manufacturing, and preparing meat products for sale in commerce.

12. As one of the few genuine "Texas Packers" left in the state, the Debtor is a leading independent, fully-automated processor and distributor of high-quality beef sourced from trusted Texas cattle ranchers. With the closest comparable facilities located in the Texas panhandle, using an alternative facility would require many Texas cattle ranchers to bear additional costs to transport their product for processing. As a result, the Debtor's 238,186 square foot facility in Corpus Christi is considered the hub of the South Texas beef industry.

13. Prior to the Petition Date, the Debtor was involved in litigation with the United States and various livestock sellers for alleged violations of, and claims made pursuant to, the Packers and Stockyards Act of 1921, as amended and supplemented.

14. On October 5, 2018, the United States District Court for the Southern District of Texas entered an Order Appointing Receiver (the "Receivership Order"). [Doc. No. 45 in Case No. 2:18-cv-00171]. Pursuant to the Receivership Order, Richard S. Schmidt began operating the Debtor and managing its assets prior to the Petition Date.[2]

**B.   The Debtor's Employees**

15. The Debtor currently has 726 employees, including both salaried and hourly employees. The amount due for current payroll obligations totals $423,308.52.

16. The Debtor utilizes the services of a professional employment organization, Paycom Software, Inc. ("Paycom"), to process payroll and administer employee benefit plans. Indeed, the Debtor submits a net amount of money to Paycom each month, who then administers all of the Debtor's obligations incurred or related to wages, salaries, reimbursable employee

---

[2] For further explanation of the Debtor's operations and events leading to bankruptcy, please refer to the Declaration of Richard S. Schmidt in Support of Chapter 11 Petition and First Day Pleadings [Doc. No. 3]. Capitalized terms not defined herein shall have the meaning set forth in the First Day Declaration.

expenses, employee benefit plans, payroll taxes, and payroll service fees. The payroll is funded every Thursday so that employees are paid by direct deposit through Paycom on Friday.

## IV. RELIEF REQUESTED

17. By this Motion, the Debtors request that this Court, pursuant to §§ 105(a), 363(b), and 507(a) of the Bankruptcy Code, and Rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), enter an Order (i) authorizing, but not directing, the Debtors to (a) pay, in its sole discretion, all obligations incurred under or related to wages, salaries, other compensation, reimbursable employee expenses, and payroll service fees relating to Employees (collectively, the "Employee Obligations") and all costs related to the foregoing, and (b) maintain and continue to honor its practices, programs, and policies in place for its employees, as such may be modified, amended, or supplemented from time to time in the ordinary course of business, and (ii) authorizing and directing the Debtor's banks, financial institutions, and professional employment organizations, to receive, process, honor, and pay checks presented for payment and electronic payment requests relating to the Employee Obligations, subject to the terms set forth in the Order filed concurrently with this Motion.

## V. APPLICABLE AUTHORITY

A. **Certain Employee Obligations are Entitled to Priority Treatment**

17. Pursuant to section 507(a)(4)(A) of the Bankruptcy Code, claims of Employees for "wages, salaries, or commissions, including vacation, severance, and sick leave pay" earned within 180 days of the petition date are granted priority unsecured status up to $12,850 per employee. 11 U.S.C. § 507(a)(4)(A). Additionally, section 507(a)(5) of the Bankruptcy Code provides that claims for contributions to employee benefit plans are also afforded priority unsecured status up to $12,850 per employee covered by applicable benefits plans, less any amount paid pursuant to

section 507(a)(4).  11 U.S.C. § 507(a)(5)(A).

18. The prepetition Employee Obligations constitute priority claims under sections 507(a)(4) or (5) of the Bankruptcy Code.  To the extent such claims are afforded priority status, the Debtor are required to pay these claims in full to confirm a chapter 11 plan. *See* 11 U.S.C. § 1129(a)(9)(b) (requiring payment of certain allowed unsecured claims for (a) wages, salaries or commissions, including vacation, and sick leave pay earned by an individual, and (b) contributions to an employee benefit plan).  As priority claims, the Employee Obligations are entitled to payment in full before any general unsecured claims asserted against the Debtor can be satisfied and would be entitled to payment in full under any plan of reorganization.  Authorizing the Debtor to make these payments at this time will affect only the timing of such payments.

**B.     Payment of Payroll Taxes and Deductions Is Required by Law**

19. The Debtor also seeks authority to continue paying, through Paycom, the payroll taxes and deductions to the appropriate entities.  These liabilities are all included in the amounts submitted to Paycom each week for payroll processing. These amounts principally represent Employees' earnings that governments, Employees, and judicial authorities have designated for deduction from Employees' paychecks.  Certain deductions, including Employees' contributions to the employee benefit plans, are not property of the Debtor's estates because they have been withheld from Employees' paychecks on behalf of another party. *See* 11 U.S.C. § 541(b).  Further, federal and state laws require the Debtor and its officers to remit certain tax payments that have been withheld from Employees' paychecks. *See* 26 U.S.C. §§ 6672 and 7501(a); *see also City of Farrell v. Sharon Steel Corp.*, 41 F.3d 92, 95-97 (3d Cir. 1994) (finding that state law requiring a corporate debtor to withhold city income tax from its employees' wages created a trust relationship between the debtor and the city for payment of withheld income taxes); *DuCharmes & Co., Inc. v.*

*State of Mich. (In re DuCharmes & Co.)*, 852 F.2d 194 (6th Cir. 1988) (noting that individual officers of a company may be held personally liable for failure to pay trust fund taxes). Because the deductions and payroll taxes are not property of the Debtor's estates, the Debtor requests that this Court authorize them to remit the deductions and payroll taxes to the proper parties in the ordinary course of business.

C. **Ample Authority Exists to Authorize the Debtor to Honor Employee Obligations**

20. Courts generally acknowledge that it is necessary to authorize payment (or other special treatment) of prepetition obligations in appropriate circumstances. *See, e.g., In re Ionosphere Clubs, Inc.*, 98 B.R. 174-75 (Bankr. S.D.N.Y. 1989) (granting authority to pay prepetition wages); *see also Armstrong World Indus., Inc. v. Jones A. Phillips, Inc. (In re James A. Phillips, Inc.)*, 29 B.R. 391, 398 (S.D.N.Y. 1983) (granting authority to pay prepetition claims of suppliers who were potential lien claimants). As set forth herein, in authorizing payments of certain prepetition obligations, including Employee Obligations, courts have relied on several legal theories, based on sections 1107(a), 1108, 363(b), and 105(a) of the Bankruptcy Code.

21. Pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, debtors in possession are fiduciaries "holding the bankruptcy estate[s] and operating the business[es] for the benefit of [their] creditors and (if the value justifies) equity owners." *In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002). Implicit in the fiduciary duties of any debtor in possession is the obligation to "protect and preserve the estate, including an operating business' going-concern value." *Id*. Some courts have noted that there are instances in which a debtor can fulfill this fiduciary duty "only … by the preplan satisfaction of a prepetition claim." *Id*. The *CoServ* court specifically noted that the preplan satisfaction of prepetition claims would be a valid exercise of the debtor's fiduciary duty when the payment "is the only means to effect a substantial

enhancement of the estate ….” *Id*; *See also In re Mirant Corp.*, 296 B.R. 427, 429-30 (Bankr. N.D. Tex. 2003) (allowing debtors to pay claims "reasonably believe[d]" to be authorized under the *CoServ* test or whose payment was necessary "in the exercise of their business judgment … in order for [the d]ebtors to continue their respective businesses").

22. This Court may grant the relief requested herein pursuant to section 363(b) of the Bankruptcy Code. Section 363(b) provides, in pertinent part, that "[t]he [debtor], after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Courts have long recognized that, where a sound business justification can be articulated, payment of prepetition claims under sections 363(b) of the Bankruptcy Code is permitted. *See In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989) (discussing prior order authorizing payment of prepetition wage claims pursuant to sections 363(b) of the Bankruptcy Code; relief appropriate where payment was needed to "preserve and protect its business and ultimately reorganize, retain its currently working employees and maintain positive employee morale."); *see also In re Montgomery Ward Holding Corp.*, 242 B.R. 147, 153 (D. Del. 1999) (use of assets outside the ordinary course of business permitted if "sound business purpose justifies such actions."); *see also Armstrong*, 29 B.R. at 397 (relying on section 363 of the Bankruptcy Code to allow contractor to pay prepetition claims of suppliers who were potential lien claimants because the payments were necessary for general contractors to release funds owed to debtors).

23. Courts have also authorized payment of prepetition claims in appropriate circumstances pursuant to section 105(a) of the Bankruptcy Code. Section 105(a) of the Bankruptcy Code, which codifies the inherent equitable powers of the bankruptcy court, empowers the bankruptcy court to "issue any order, process, or judgment that is necessary or appropriate to

carry out the provisions of this title." 11 U.S.C. § 105(a). Courts generally recognize that payments to prepetition creditors are appropriate pursuant to section 105(a) of the Bankruptcy Code under the "doctrine of necessity" or the "necessity of payment" rule, where such payments are necessary to the continued operation of the debtor's business. *See, e.g., In re CoServ, L.L.C.*, 273 B.R. 487, 487 (Bankr. N.D. Tex. 2002) ("[I]t is only logical that the bankruptcy court be able to use § 105(a) of the Bankruptcy Code to authorize satisfaction of the prepetition claim in aid of preservation or enhancement of the estate."). Under section 105(a), courts may permit preplan payments of prepetition obligations when such payments are essential to the continued operation of the debtor's business and, in particular, when nonpayment of a prepetition obligation would trigger a withholding of goods or services essential to the debtor's business reorganization plan. *See In re UNR Indus.*, 143 B.R. 506, 520 (Bankr. N.D. Ill. 1992) (permitting the debtor to pay prepetition claims of suppliers or employees whose continued cooperation is essential to the debtors' successful reorganization); *Ionospehere Clubs*, 98 B.R. at 177 (finding that section 105 empowers bankruptcy courts to authorize payment of prepetition debt when such payment is needed to facilitate the rehabilitation of the debtor).

24. Courts have repeatedly recognized the importance of employees to a debtor's reorganization and the severe harm to employees that can arise if courts do not grant motions such as this one. *In re Braniff, Inc.*, 218 B.R. 628, 633 (Bankr. M.D. Fla. 1998) (approving payment of prepetition employee wage claims to the vital roles employees play in the debtor's reorganization). As a result, courts regularly grant motions to pay prepetition employee wages and honor employee benefits when the employees' continued efforts are necessary to the debtor's effective reorganization. *See, e.g., In re The Nat'l Benevolent Ass'n of the Christian Church (Disciples of Christ)*, et al., Chapter 11 Case No. 04-50948 (Bankr. W.D. Tex. Feb. 18, 2004 (Order Authorizing

Debtors' Expedited Motion for Authority to Pay Prepetition Wages, Compensation and Employee Benefits); *In re JIT Holdings, Inc.*, Chapter 11 Case No. 02-21102 (Bankr. S.D. Tex. May 24, 2002) (Order Authorizing the Debtor to Pay and Honor Prepetition Personal and Paid Leave Policies, and Pay Medical Benefits and Reimbursable Employee Expenses); *In re Kitty Hawk, Inc.*, Case No. 00-42141-BJH (Bankr. N.D. Tex. May 4, 2000) (Order Granting Motion to Pay Pre-Petition Debt for Salaries, Wages, Employee Benefits and Payroll Taxes).

25. Accordingly, pursuant to sections 105(a), 363(b), and 1108 of the Bankruptcy Code, this Court is empowered to grant the relief requested herein and such relief is necessary, in the Debtor's discretion and business judgment, in order to prevent harm to the Debtor's business.

26. In addition to wages and reimbursable expenses, the continued submission to Paycom and payment of payroll taxes similarly will not prejudice other creditors of the Debtor's estates as the relevant taxing authorities will generally hold priority claims under section 507(a)(8) of the Bankruptcy Code with respect to payroll taxes. Moreover, the portion of the payroll taxes withheld from an Employee's wages on behalf of the applicable taxing authority are held in trust by the Debtor, and thus, are not property of the Debtor's estates under section 541 of the Bankruptcy Code. *See, e.g., Begier v. IRS*, 496 U.S. 53, 62-63 (1990) (holding that withholding taxes are property held by a debtor in trust for another and, as such, are not property of the debtors' estates). Failure to remit payroll taxes to a taxing authority may give rise to personal liability for the Debtor's officers and directors. 26 U.S.C. § 6672; *see In re DuCharmes & Co.*, 852 F.2d 194, 196 (6th Cir. 1988) (explaining that a failure to pay trust fund taxes may give rise to personal liability for a company's officers). As such, remittance of amounts to Paycom sufficient to cover payment of payroll taxes is reasonable and in the best interest of the Debtor's estates and all parties

in interest. In addition, Paycom withholds federal and state taxes from the salaries of the Employees when such salaries are submitted by the Debtor.

27. Thus, the Debtor seek confirmation that they are permitted to continue paying, through Paycom, any local, state and federal withholding and payroll-related taxes relating to prepetition periods, including, but not limited to, all withholding taxes, Social Security taxes and Medicare taxes. *See Begier v. Internal Revenue Service*, 496 U.S. 53, 110 S. Ct. 2258, 2267 (1990) ("We hold that AIA's payments of trust-fund taxes to the IRS from its general accounts were not transfers of 'property of the debtor,' but were instead transfers of property held in trust for the Government . . . . Such payments therefore cannot be avoided as preferences."); *City of Farrell v. Sharon Steel Corp.*, 41 F.3d 92, 96–97 (3d Cir. 1994) (state law requiring Debtor to withhold city income tax from its employees' wages created trust relationship between Debtor and city for payment of withheld taxes).

28. For the reasons set forth above, the Debtor respectfully submit that it is in the best interest of the estate for the Court to authorize the Debtor to pay the Employee Obligations.

## VI. RESERVATION OF RIGHTS

29. Nothing contained herein is intended or shall be construed as (i) an admission as to the validity of any claim against the Debtor, (ii) a waiver of the Debtor's or any party in interest's rights to dispute the amount of, basis for, or validity of, any claim of the Employees, benefit service providers, taxing authorities, or benefits providers under applicable nonbankruptcy law, (iii) a waiver of any claims or causes of action which may exist against any Employee, Owner Operator, benefit service provider, taxing authority, or benefits provider or (iv) an assumption, adoption or rejection of any contract or lease between the Debtor and any third party under section 365 of the Bankruptcy Code. The Debtor expressly reserves its rights to contest any claim and

any payment made pursuant to the Court's order granting this Motion, and such order is not intended and should not be construed as a waiver of the Debtor's rights to subsequently dispute such claim.

## VII. NOTICE

30. Notice of this Motion will be provided by email, when available, or by traditional mail to: (i) the Office of the United States Trustee for the Southern District of Texas; (b) the Debtor's secured creditors; and (c) the parties listed on the Debtor's master service list. The Debtor submits that, in light of the nature of the relief requested, no other or further notice need be given.

## VIII. PRAYER

WHEREFORE, the Debtor respectfully requests that the Court enter an order granting the relief requested in this Motion, and such other and further relief as may be just and proper.

Respectfully submitted this 23 day of January, 2019.

        **OKIN ADAMS LLP**

By:    /s/ *Matthew S. Okin*
      Matthew S. Okin
      Texas Bar No. 00784695
      Email: mokin@okinadams.com
      David L. Curry, Jr.
      State Bar No. 24065107
      Email: dcurry@okinadams.com
      Ryan A. O'Connor
      State Bar No. 24098190
      Email: roconnor@okinadams.com
      1113 Vine St. Suite 240
      Houston, TX  77002
      Tel: (713) 228-4100
      Fax: (888) 865-2118

**PROPOSED ATTORNEYS FOR THE DEBTOR**