# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| SAM KANE BEEF PROCESSORS, LLC,[1] | § | Case No. 19-20020 |
| | § | |
| Debtor. | § | Chapter 11 |

**DEBTOR'S EMERGENCY MOTION PURSUANT TO 11 U.S.C. §§ 105, 363, 365, AND 554, FOR ENTRY OF: (I) AN ORDER (A) APPROVING AUCTION AND BIDDING PROCEDURES; (B) SCHEDULING AUCTION AND SALE HEARING; AND (C) APPROVING THE FORM OF NOTICE; (II) AN ORDER AUTHORIZING ABANDONMENT OF ASSETS NOT SOLD AT AUCTION, AND (III) GRANTING RELATED RELIEF**

THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY. YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN 21 DAYS OF THE DATE THIS WAS SERVED ON YOU. YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING.

EMERGENCY RELIEF HAS BEEN REQUESTED. IF THE COURT CONSIDERS THE MOTION ON AN EMERGENCY BASIS, THEN YOU WILL HAVE LESS THAN 21 DAYS TO ANSWER, IF YOU OBJECT TO THE REQUESTED RELIEF OR IF YOU BELEIVE THAT THE EMERGENCY CONSIDERATION IS NOT WARRANTED, YOU SHOULD FILE AN IMMEDIATE RESPONSE.

REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.

THERE WILL BE A HEARING ON THIS MOTION ON WEDNESDAY, JANUARY 28, 2019, AT 9:00 A.M. IN COURTROOM 400, 515 RUSK, HOUSTON, TX 77002.

---

[1] The Debtor in this Chapter 11 Case, along with the last four digits of the Debtor's federal tax identification number, is: Sam Kane Beef Processors, LLC (0433).

Sam Kane Beef Processors, LLC, the above captioned debtor and debtor in possession (the "Debtor"), hereby files this Emergency Motion Pursuant to 11 U.S.C. §§ 105, 363, 365 and 554, and Bankruptcy Rules 2002, 6004, and 6006 for Entry of (I) an Order (A) Approving Auction and Bidding Procedures; (B) Scheduling Auction and Sale Hearing; and (C) Approving the Form of Notice; (II) An Order Authorizing Abandonment of Assets Not Sold at Auction, and (III) Granting Related Relief (the "Motion") and in support hereof, respectfully state as follows:

## I.     PRELIMINARY STATEMENT

1. The Debtor filed this bankruptcy in order to preserve its ability to complete a sale of substantially all of the Debtor's assets as a going concern. As previously disclosed in the Debtor's fist-day pleadings, the anticipated sale was the culmination of an extensive pre-petition marketing process conducted by the Debtor's investment bank, Gordian Group, LLC ("Gordian").

2. Since the filing, and as result of circumstances well beyond the Debtor's control, the Debtor has determined that moving forward with its previously identified stalking horse purchaser is not practicable.

3. Nevertheless, during the months leading up to the Petition Date, the Debtor, with the advice and aid of its investment banker, Gordian, conducted an extensive marketing and sale process related to the Debtor's assets. While the Debtor's primary focus in those efforts was to to sell the Debtor's assets as a going concern, the Gordian process also attracted alternative bidders. As a result of the extensive progress and momentum that the Gordian team has developed, the Debtor believes in its business judgment that maximum value for the estate's assets may be obtained at this time by moving for a quick auction of the estate's assets.

## II.     JURISDICTION AND VENUE

4. This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

5. The statutory predicates for the relief requested in this motion are 11 U.S.C. 105(a), 363, 365 and 554.

## III.     BACKGROUND

6. On January 22, 2019 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11, Title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of Texas, Corpus Christi Division (the "Court").

7. Pursuant to Bankruptcy Code §§ 1107(a) and 1108, the Debtor is operating its business and managing its property as a debtor in possession.

**A.     In General**

8. The Debtor operates a meat packing plant located at 9001 Leopard Street in Corpus Christi, Texas. It is in the business of buying and selling livestock for purposes of slaughter, manufacturing, and preparing meat products for sale in commerce.

9. As one of the few genuine "Texas Packers" left in the state, the Debtor is a leading independent, fully-automated processor and distributor of high-quality beef sourced from trusted Texas cattle ranchers. With the closest comparable facilities located in the Texas panhandle, using an alternative facility would require many Texas cattle ranchers to bear additional costs to transport their product for processing. As a result, the Debtor's 238,186 square foot facility in Corpus Christi is considered the hub of the South Texas beef industry.

10. Prior to the Petition Date, the Debtor was involved in litigation with the United States and various livestock sellers for alleged violations of, and claims made pursuant to, the Packers and Stockyards Act of 1921, as amended and supplemented.

11. On October 5, 2018, the United States District Court for the Southern District of Texas entered an Order Appointing Receiver (the "Receivership Order"). [Doc. No. 45 in Case No. 2:18-cv-00171]. Pursuant to the Receivership Order, Richard S. Schmidt (the "Receiver") began operating the Debtor and managing its assets prior to the Petition Date.[2]

B. **The Pre-Petition Marketing Process**

12. On or about November 3, 2018, the Receiver engaged Gordian to market and sell the Debtor's assets. Pursuant to such engagement, Gordian has marketed the Debtor's assets, solicited and received bids, and has engaged in continuing negotiations with potential purchasers. As a result of these efforts, the Debtor has received certain bids for the purchase of the Debtor's assets. As of the Petition Date, the Debtor, with the aid of counsel and Gordian, was in the process of selecting a lead bidder and negotiating definitive documentation for a stalking horse transaction. Unfortunately, on or about January 29, 2019, the Debtor determined that proceeding to a final transaction with the lead bidder, given the financial and operational constraints currently imposed upon the Debtor, was simply not feasible.

13. The Debtor immediately began preparing for the next best alternative – an immediate auction of substantially all of the Debtor's assets. Given the work already performed by Gordian, the Debtor, in its business judgment, believes that there is sufficient interest at this time to hold a successful auction.

---

[2] For further explanation of the Debtor's operations and events leading to bankruptcy, please refer to the Declaration of Richard S. Schmidt in Support of Chapter 11 Petition and First Day Pleadings [Doc. No. 3]. Capitalized terms not defined herein shall have the meaning set forth in the First Day Declaration.

4

14. Upon being retained by the Receiver, Gordian identified and contacted approximately one hundred twenty-one (121) potential bidders. Seventy-seven (77) of those parties responded and, subsequently, received additional information and were invited to enter into non-disclosure agreements ("NDA"). Thirty-one (31) parties executed an NDA and were provided confidential information, and seven (7) parties submitted a total of eight (8) letters of intent ("LOI") within the Debtor's established bid-deadline January 14, 2019 ("Bid Deadline"). All parties submitting LOI have continued to express interest in purchasing all or some of the Debtor's assets.

15. In addition, Gordian and the Debtor have continued to receive inquiries regarding the availability of the Debtor's assets. These inquiring parties include parties that previously conducted due diligence but declined to submit LOI and additional parties learning of the Debtor since or as a result of the filing. As such, Gordian has advised the Debtor that, in its professional opinion, an auction of substantially all of the Debtor's assets would likely result in a better outcome for the estate's creditors than an immediate conversion to Chapter 7.

C. **The Sale Procedures and Form of Notice**

16. The Debtor seeks approval of the Bid Procedures as set forth in the attached **Exhibit A**. The following provides a summary of certain material procedures:

- **Notice of Auction and Sale Hearing**. Within one (1) business day of the entry of an order approving this Motion, the Debtor will serve by first class mail a notice of the proposed sale containing the date of the Auction and Sale Hearing to: (i) all potential purchasers previously identified or solicited by the Debtor and/or Gordian during this bankruptcy case; (ii) all other potentially interested parties identified by the Debtor and/or Gordian (collectively, with the parties identified in (i) above, the "Potential Purchasers"); (iii) the Office of the United States Trustee; (iv) all parties who are known to possess or assert a lien, claim, encumbrance or

interest in or upon any of the Assets (as defined in the Offers); (v) all applicable United States, state and local regulatory or taxing authorities, recording offices or any governmental entity which have a reasonably known interest in the relief requested; and (vi) all parties on the most current master service list filed in this case.

- **Notice of Intent to Credit Bid.**  Any party asserting an interest in the Assets that intends to credit bid must file a Notice of Intent to Credit Bid not later than 3:00 p.m. Central Time on February 1, 2019 (a "Credit Bid Notice").  Such notice shall identify (i) the name of the entity holding an alleged lien or interest; (ii) the collateral in which the party asserts an interest; and (iii) the alleged amount of the debt secured by such lien or interest.  If any other party-in-interest objects to a proposed credit bid, such party-in-interest shall file an Objection to Right to Credit Bid not later than 3:00 p.m. Central on February 4, 2019, or such objection shall be waived.  All disputes regarding an asserted right to credit shall be resolved by the Court immediately prior to the commencement of the Auction.

- **Qualified Bidders**.  Only Qualified Bidders may participate in the bidding process.  To become a Qualified Bidder, a potential bidder must on or before 3:00 p.m. Central Time on February 4, 2019 (the "Bid Deadline") submit a Qualified Bid which shall: (i) be in writing to Debtor's advisors and counsel (addresses listed below) in a form to be approved by the Debtor; (ii) clearly outline the Purchased Asset lots to be acquired and excluded; (iii) deposit the greater $250,000 or 10% of Purchase Price Value in an escrow account to be held by Debtor's counsel; (iv) must not be subject to financing or due diligence contingencies or other conditions; (v) remain open until the conclusion of the Sale Hearing (as defined below); (vi) be accompanied by evidence establishing that the bidder is capable and qualified, financially, legally, and otherwise.

6

- **Notice of Qualified Bids**. On or before 3:00 p.m. Central Time on February 5, 2019, the Debtor shall file a notice with the Court stating whether the Debtor has received Qualified Bids. The Debtor shall notify each Qualified Bidders of its status as a Qualified Bidder by facsimile or electronic mail.

- **Auction**. An auction for the Assets will be conducted on February 6, 2019, commencing at 9:30 a.m. Central Time in Courtroom 400, 515 Rusk, Houston, TX 77002. Only Qualified Bidders may participate in the auction. All Qualified Bidders, or their authorized representatives, must be physically present or present via teleconference at the auction. Debtor retains the right, in its discretion, to commence the auction with incremental bidding, sealed highest and best offers, or other method, as it sees fit to try to maximize value. The Debtor may conduct the auction by any grouping of assets, in any order, that it deems appropriate. Minimum overbid increments at the auction shall be in the amount of not less than $25,000.00.

  All Qualified Bidders participating at the Auction shall be deemed to have consented to the core jurisdiction of the Bankruptcy Court and waived any right to a jury trial in connection with any disputes relating to the Auction.

- **Selection of the Highest and Best Bid(s)**. At the conclusion of the auction, the Debtor will announce the highest and best Qualified Bid(s) (the "Highest and Best Bid(s)") and the next highest and best Qualified Bid (the "Back-Up Bid(s)"). The Debtor will seek approval of the Highest and Best Bid(s) at the Sale Hearing. If for any reason, the Qualified Bidder(s) submitting the Highest and Best Bid(s) fails to timely consummate the purchase of the Assets, the Debtor may seek to consummate a sale based on the Back-Up Bid(s) without further approval by the Court. The Back-Up Bid(s) and the obligation of the party submitting such bid(s) to consummate the purchase of the Assets shall remain open and in

full force until the close of a sale of the Assets to the party making the Highest and Best Bid(s) or the party making the Back-Up Bid(s).

- **Sale Hearing**.  The Sale Hearing approving and authorizing the Proposed Sale(s) to the Highest and Best Bidders(s) on terms and conditions consistent with the Offer(s) and in accordance with the Bid Procedures, shall be conducted by the Bankruptcy Court immediately following the conclusion of the Auction, or on such other date as may be established by the Bankruptcy Court.  Unsuccessful Qualified Bidders shall not be permitted to submit new, higher bids at the Sale Hearing.

- **Return of Deposits**.  Within three (3) business days after the conclusion of the auction described above, the Debtor shall return by check the full amount of the Alternative Buyer's Deposit submitted by each party that is not selected as submitting the Highest and Best Bid(s) or the Back-Up Bid(s).  If the sale of the Assets is consummated with the party submitting the Highest and Best Bid(s), the Alternative Buyer's Deposit of the party that is declared the Back-Up Bid(s) shall be returned by check transfer within three (3) business days after the closing of the sale to the party submitting the Highest and Best Bid(s).  In the event that closing does not occur by the date specified by the Back-Up Bidder(s) in its bid, it shall be entitled (at its option) to return of its deposit, in which case it shall no longer have the status of Back-Up Bidder(s).

- **Designation of Assets for Abandonment.**  Upon the conclusion of the Sale Hearing, the Debtor shall file a notice designating Assets remaining unsold for abandonment.  If any party-in-interest objects to the proposed abandonment, such party must file an objection with the Court not later than February 13, 2019.  To the extent necessary, the Court shall

set to resolve any objection to a proposed abandonment at such earliest time convenient for the Court.

## IV. RELIEF REQUESTED

17. By this Motion, the Debtor requests that the Court, pursuant to sections 105(a) and 363 of the Bankruptcy Code, approve an auction for the sale of the Debtor's assets free and clear of all liens, claims and encumbrances pursuant to the procedures set forth herein. The Debtor further requests that the Court approve the bid procedures attached hereto in Exhibit A hereto and Form of Notice attached hereto as Exhibit B hereto. Additionally, pursuant to section 554 of the Bankruptcy Code, the Debtor requests that the Court approve the abandonment of all inconsequential property of the estate not sold at the auction within seven (7) days of the closing of the Auction.

## V. APPLICABLE AUTHORITY

### A. Section 363(b) Authorizes the Proposed Auction and Sale of Assets.

18. Section 363(b)(1) of the Bankruptcy Code provides, in relevant part, that "[t]he trustee, after notice and hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). The proposed use, sale or lease of property of the estate may be approved under section 363(b) of the Bankruptcy Code if it is supported by sound business justification. *See e.g. Institutional Creditors of Continental Air Lines, Inc. v. Continental Air Lines, Inc. (In re Continental Air Lines)*, 780 F.2d 1223, 1226 (5th Cir. 1986) ("[F]or a debtor-in-possession or trustee to satisfy its fiduciary duty to the debtor, creditors and equity security holders, there must be some articulated business justification for using, selling, or leasing the property outside the ordinary course of business."); *see also In Re Crutcher Resources Corp.*, 72 B.R. 628, 631 (Bankr. N.D. Tex. 1987) ("A bankruptcy judge has

9

considerable discretion in approving a § 363(b) sale of property of the estate other than in the ordinary course of business, but the movant must articulate some business justification for the sale."). In reviewing a proposed sale of assets, a bankruptcy court should give deference to the business judgment of a debtor in possession when it deems the sale to be appropriate. *See Esposito v. Title Ins. Co. (In re Fernwood Mkts.)*, 73 B.R. 616, 621 n.2 (Bankr. E.D. Pa. 1987); *see also In re Chateaugay Corp.*, 973 F.2d 141 (2d Cir. 1992) (holding that a judge determining a § 363(b) application must find from the evidence presented a good business reason to grant such application); *In re Phoenix Steel Corp.*, 82 B.R. 334, 335-36 (Bankr. D. Del. 1987) (stating that judicial approval of a § 363 sale requires a showing that the proposed sale is fair and equitable, a good business reason exists for completing the sale and that the transaction is in good faith).

19. Although the Debtor cannot predict the results of the proposed auction and sale process, the Debtor respectfully submits that the proposed auction and sale of substantially all the Debtor's assets fits squarely within the parameters of the sound business judgment test articulated in the above-referenced authorities. They are also in accord with the policy objective of obtaining the highest value possible in this difficult business segment, and, therefore, the Debtor believes that implementation of an auction and sale process, and approval of any sale that is presented in accordance therewith, is in the best interests of the Debtor, its estate, creditors, and other parties in interest. Accordingly, the Debtor submits that the proposed auction and sale process is warranted and appropriate, and requests that the Court establish a time and date for the auction. The Debtor's pre-petition secured lenders, Rabo Agrifinance, Inc. and Marquette Transportation Finance, LLC, may reserve their respective rights to credit bid for the purchase of the assets in accordance with the procedures set forth herein.

B.     **Section 363(f) Authorizes the Sale Free and Clear of Liens and Other Claims.**

20.    The Debtor requests that the auction, sale and transfer of the purchased assets be approved free and clear of all liens or interests, other than those specifically assumed by the party submitting the prevailing bid. Such relief is consistent with the provisions of section 363(f) of the Bankruptcy Code in this case.

21.    Section 363(f) provides that a debtor in possession may sell property free and clear of any lien, claim or interest of another entity in such property under any of the following circumstances:

  (1)   applicable non-bankruptcy law permits sale of such property free and clear of such interest;

  (2)   such entity consents;

  (3)   such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

  (4)   such interest is in bona fide dispute; or

  (5)   such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f).

22.    As indicated by the use of the disjunctive term "or," satisfaction of any one of the five requirements listed in section 363(f) is sufficient to permit the sale of assets free and clear of liens. *See In re Elliott*, 94 B.R. 343, 345 (E.D. Pa. 1988) (stating that section 363(f) is written in the disjunctive; the court may approve a sale "free and clear" provided that at least one of the subsections is met).

23.    In this instance, the Debtor believes that all entities holding or asserting a security interest in the purchased assets not otherwise subject to a bona fide dispute will (i) consent to the transaction presented for approval at a subsequent sale hearing, or (ii) receive cash from the sale

11

proceeds sufficient to pay their secured claims in full. Accordingly, the requirements of section 363(f) can be satisfied, and the sale of assets purchased at auction free and clear of all liens, claims, encumbrances and other interests is appropriate under the circumstances.

C.    **Abandonment of Assets Not Sold at Auction is Proper Under Section 554.**

24.    Pursuant to section 554 of the Bankruptcy Code, a trustee may, after notice and hearing, abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate. 11 U.S.C. § 554. "Unless otherwise directed by the court," after the Debtor files and gives notice of a proposed abandonment, "[a]ny party in interest may file and serve an objection within 14 days of the mailing of the notice, or within the time fixed by the court." FED. R. BANKR. P. 6007(a). Unless a party files a timely objection to the proposed abandonment, a hearing is not required and the property may be abandoned without a court order. *See* 11 U.S.C. § 102(1).

25.    The Debtor intends to hold an auction to sell substantially all of its assets. The Debtor believes that, with the exception of any accounts or other intangibles, any real or physical personal property remaining in the estate after the auction and subsequent sale hearing will be of inconsequential value and benefit to the estate, or will be burdensome to the estate. As a result, the Debtor intends to abandon certain property and assets not sold at the proposed auction. Pursuant to sections 102 and 554 of the Bankruptcy Code and Bankruptcy Rule 6007, the Debtor respectfully requests that this Court enter an order shortening the objection deadline to seven (7) days after the close of the proposed auction.

VI.    **BASIS FOR EMERGENCY RELIEF**

26.    An accelerated auction and sale process is warranted under the unique circumstances of this case because the Debtor has been evaluating and undertaking a sale process

that started in the fall of 2018. After months of effort, the Debtor has identified certain experienced buyers that may be interested in a proposed transaction to can acquire and operate the assets. For important and pressing business reasons, including the limited availability cash collateral, the Debtor requests that this Motion requesting an auction and sale process be approved on an emergency basis.

## VII.   PRAYER

WHEREFORE, the Debtor respectfully requests that the Court enter an order granting the relief requested in this Motion, and such other and further relief as may be just and proper.

Respectfully submitted this 28th day of January, 2019.

**OKIN ADAMS LLP**

By:   /s/ *Matthew S. Okin*
Matthew S. Okin
Texas Bar No. 00784695
Email: mokin@okinadams.com
David L. Curry, Jr.
State Bar No. 24065107
Email: dcurry@okinadams.com
Ryan A. O'Connor
State Bar No. 24098190
Email: roconnor@okinadams.com
1113 Vine St. Suite 240
Houston, TX  77002
Tel: (713) 228-4100
Fax: (888) 865-2118

**PROPOSED ATTORNEYS FOR THE DEBTOR**