IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | |
|---|---|
| In re: § <br> § <br> **SAM KANE BEEF PROCESSORS, LLC,**[1] § <br> § <br> Debtor. § <br> § | Case No. 19-20020 <br><br> Chapter 11 |

### DEBTOR'S EXPEDITED MOTION FOR AUTHORITY TO SELL CERTAIN REAL ESTATE TO CIRCLE K STORES INC. FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES, AND INTERESTS PURSUANT TO SECTIONS 105 AND 363 OF THE BANKRUPTCY CODE

**THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE TO A RESOLUTION, YOU MUST FILE A WRITTEN RESPONSE AND SEND A COPY OF SAID RESPONSE TO THE MOVING PARTY. YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN 21 DAYS OF THE DATE THIS MOTION WAS SERVED ON YOU. YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING.**

**REPRESENTED PARTIES SHOULD ACT THROUGH THEIR RESPECTIVE ATTORNEYS.**

Sam Kane Beef Processors, LLC, the above-captioned debtor and debtor in possession (the "Debtor"), hereby files the Debtor's Expedited Motion Pursuant to 11 U.S.C. §§ 105 and 363 and Bankruptcy Rules 2002 and 6004 for entry of an order authorizing the sale of certain real estate to Circle K Stores Inc. ("Circle K") free and

---

[1] The Debtor in this Case, along with the last four digits of the Debtor's federal tax identification number, is: Sam Kane Beef Processors, LLC (0433).

12495908.4

clear of certain liens, claims, encumbrances, and interests (the "Motion") and in support hereof, respectfully states as follows:

## I. PRELIMINARY STATEMENT

1. Prior to the commencement of this chapter 11 case (the "Case"), the United States District Court for the Southern District of Texas appointed Richard S. Schmidt as the receiver (the "Receiver") over the Debtor's assets. *See* Case No. 2:18-cv-00171, Dkt. No. 45. Solely in that capacity, the Receiver marketed the Debtor's assets, including without limitation, certain real property described as "Lot Three (3) Block One (1), GUTH PARKSIDE ANNEX, an addition in the City of Corpus Christi, Texas as shown by map or plat thereof recorded in Volume 60, Page 33, Map Records of Nueces County, Texas" (the "Real Estate") to potential purchasers. As a result of such efforts, the Receiver negotiated that certain Purchase Agreement And Escrow Instructions dated May 30, 2018 (the "Purchase Agreement") with Circle K on terms that were satisfactory not only to the Receiver but also the Debtor's pre-petition secured lender and lienholder with respect to the Real Estate, Marquette Commercial Finance, a Division of Marquette Transportation Finance LLC ("Marquette"). Although the proposed transaction remains a valid exercise of business judgment, upon the commencement of the Case, the Receiver lost the authority to complete the contemplated transaction without seeking authority from this Court. Accordingly, the Debtor seeks entry of an order approving and authorizing the sale.

## II. JURISDICTION AND VENUE

2. This Court has subject matter jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

12495908.4

3. The subject of the Motion is a core proceeding under 28 U.S.C. § 157(b)(2)(N). The relief requested herein may be granted in accordance with the provisions of sections 105(a) and 363 of Title 11 of the United States Code (the "Bankruptcy Code"), and Rules 2002 and 4004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

### III. BACKGROUND

4. On January 22, 2019 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Texas, Corpus Christi Division (the "Court").

5. Pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, the Debtor is operating its business and managing its property as a debtor in possession.

6. As more fully set forth in the *Declaration of Richard S. Schmidt in Support of Chapter 11 Petition and First Day Pleadings* [Dkt. No. 3] (the "Declaration"), which is incorporated herein by reference, the Debtor operated a meat packing plant located at 9001 Leopard Street in Corpus Christi, Texas. Specifically, prior to the Petition Date, the Debtor was in the business of buying and selling livestock for purposes of slaughter, manufacturing, and preparing meat products for sale in commerce.

7. Rabo AgriFinance LLC, f/k/a Rabo Agrifinace, Inc. ("Rabo") provided a loan to the Debtor on or about April 29, 2013. Accordingly, Rabo asserts a first lien against substantially all of the Debtor's assets pursuant to: (a) that certain Term Note, dated December 11, 2015; (b) that certain Amended and Restated Loan and Security Agreement, dated December 11, 2015; (c) that certain Deed of Trust, dated April 29, 2013 and recorded on April 30, 2013, as Document No. 2013016626 in the Nueces County Clerk's office; and (d) that certain UCC-1 Financing Statement, File No. 16-00081191.

8. On or about March 14, 2014, the Debtor purchased the Real Estate.

3

9. In April 2016, Marquette and the Debtor entered into a factoring agreement (the "Factoring Agreement") secured by a first lien on the Debtor's accounts receivable. The Debtor defaulted under the Factoring Agreement in July 2018, and Marquette and the Debtor entered into a Forbearance Agreement. In July, 2018, the Debtor defaulted under the Factoring Agreement, which resulted in the Debtor and Marquette, entering into that Second Forbearance Agreement that, among other things, granted Marquette a first lien against the Real Estate and a second lien with respect to additional property. Attached hereto as Exhibit A is a true and correct copy of that certain Deed of Trust (with Security Agreement and Assignment of Rents) and Grant of Lien dated July 10, 2018, which was recorded as Document No. 2018030374 in the Nueces County Clerk's office on July 13, 2018.

10. Additionally, prior to the Petition Date, the Receiver engaged the Gordian Group, LLC ("Gordian") to market the Debtor's assets to potential investors and purchasers and, ultimately, identified a stalking horse purchaser but that sale did not close. Thus, on January 28, 2019, less than a week after the Petition Date, the Debtor filed its Emergency Motion Pursuant to 11 U.S.C. §§ 105, 363, 365 and 554, and Bankruptcy Rules 2002, 6004, and 6006 for Entry of (I) an Order (A) Approving Auction and Bidding Procedures; (B) Scheduling Auction and Sale Hearing; and (C) Approving the Form of Notice; (II) An Order Authorizing Abandonment of Assets Not Sold at Auction, and (III) Granting Related Relief [Dkt. No. 49] (the "Sale Motion") seeking to, among other things, conduct an auction to sell substantially all of the Debtor's assets.

11. On January 30, 2019, the Court entered its order (the "Bid Procedures Order"), authorizing, among other things, the sale of substantially all of the Debtor's assets pursuant to an auction to be conducted on February 6, 2019. *See* Dkt. No. 64. In accordance with the Bid

Procedure Order, the Debtor held an auction on or about February 6, 2019 and it was continued until about February 8, 2019.

12. The Debtor determined that JDH Capital Company, a Texas corporation (together with its subsidiary) was the winning bidder and entered into a form of purchase agreement, dated February 13, 2019.

13. The Court conducted a sale hearing on February 14, 2019. That same day, the Court entered its order approving sale of substantially all of the Debtor's assets and the form of Asset Purchase Agreement ("APA") attached thereto as Exhibit A [Dkt. No. 137] (the "Sale Order"). Pursuant to Schedule 2.2(b) of the APA, the Real Estate (defined under the APA as Excluded Real Property) was *not* included in the assets sold pursuant to the Sale Order.

14. The Debtor lacks equity in the Real Estate, which is encumbered by Marquette's lien to secure debt in the amount of approximately $48 million.[2] Marquette has consented to the proposed Sale.

## IV.   RELIEF REQUESTED

15. By this Motion, the Debtor requests that the Court, pursuant to 11 U.S.C. § 105(a) and 363(b), (f), and (m), approve the sale of the Real Estate to Circle K free and clear of certain liens, claims, encumbrances and grant such other and further relief as the Court deems appropriate.

## V.   APPLICABLE AUTHORITY

**A.   Section 363(b) Authorizes the Proposed Sale of Real Estate to Circle K.**

16. Section 363(b)(1) of the Bankruptcy Code provides, in relevant part, that "[t]he trustee, after notice and hearing, may use, sell, or lease, other than in the ordinary course of

---

[2]   Rabo does not have an interest in or lien against the Real Estate.

business, property of the estate." 11 U.S.C. § 363(b)(1). The proposed use, sale or lease of property of the estate may be approved under section 363(b) of the Bankruptcy Code if it is supported by sound business justification. *See e.g. Institutional Creditors of Continental Air Lines, Inc. v. Continental Air Lines, Inc. (In re Continental Air Lines)*, 780 F.2d 1223, 1226 (5th Cir. 1986) ("[F]or a debtor-in-possession or trustee to satisfy its fiduciary duty to the debtor, creditors and equity security holders, there must be some articulated business justification for using, selling, or leasing the property outside the ordinary course of business."); *see also In Re Crutcher Resources Corp.*, 72 B.R. 628, 631 (Bankr. N.D. Tex. 1987) ("A bankruptcy judge has considerable discretion in approving a § 363(b) sale of property of the estate other than in the ordinary course of business, but the movant must articulate some business justification for the sale."). In reviewing a proposed sale of assets, a bankruptcy court should give deference to the business judgment of a debtor in possession when it deems the sale to be appropriate. *See Esposito v. Title Ins. Co. (In re Fernwood Mkts.)*, 73 B.R. 616, 621 n.2 (Bankr. E.D. Pa. 1987); *see also In re Chateaugay Corp.*, 973 F.2d 141 (2d Cir. 1992) (holding that a judge determining a § 363(b) application must find from the evidence presented a good business reason to grant such application); *In re Phoenix Steel Corp.*, 82 B.R. 334, 335-36 (Bankr. D. Del. 1987) (stating that judicial approval of a § 363 sale requires a showing that the proposed sale is fair and equitable, a good business reason exists for completing the sale and that the transaction is in good faith).

17.   In exercising its best business judgment, the Debtor has determined that the Real Estate should be sold to Circle K for the price agreed to and set forth in the Purchase Agreement, which was fully negotiated – in good faith and at arms' length – prior to the Petition Date.

18.     The Purchase Agreement provides, among other things, that: (a) at closing Circle K would pay the purchase price of $425,000 in exchange for the Real Estate; and (b) the Real Estate would be sold and transferred (i) subject to, among other things, current taxes, assessments, patent reservations, all covenants, conditions, restrictions, reservations, easements, encumbrances, liens, and declarations or other matters of record or to which reference is made in the public record and (ii) free of all mortgages and deeds of trust executed by the Debtor and liens arising from Debtor's actions and/or failure to pay amounts due and payable. The Debtor believes these terms remain fair and reasonable and proposes to provide Circle K with the Deed attached hereto as Exhibit C in exchange for $425,000 to be placed in escrow for distribution to Marquette and the undersigned counsel (as set forth more fully below).

19.     The Real Estate is encumbered by Marquette's pre-petition lien, securing approximately $48 million in debt, and it is the Debtor's understanding that Marquette is unopposed to the relief requested in this Motion.

20.     Under the circumstances, and given the foregoing, the Debtor does not believe it would be an exercise of sound business judgment to market the Real Estate again. The Debtor would only incur additional marketing costs to sell a fully encumbered asset.

21.     It would almost certainly diminish – rather than maximize – the value of the Debtor's estate by ensuring additional costs and delay. In short, it would not be cost-effective or productive for the Debtor to re-market the Real Estate. Thus, the Debtor has determined that it is in the best interests of the estate and its creditors to consummate the sale of the Real Estate to Circle K for the purchase price of $425,000.

**B.     Section 363(f) Authorizes the Sale Free and Clear of Liens and Other Claims.**

22.     The Debtor requests that the sale and transfer of the Real Estate be approved free and clear of certain liens, claims, encumbrances, or interests, other than those specifically assumed by Circle K. In particular, the proposed sale and transfer of the Real Estate would be free and clear of any and all related lien rights held by Marquette. Such relief is consistent with the provisions of section 363(f) of the Bankruptcy Code.

23.     Section 363(f) provides that a debtor in possession may sell property free and clear of any lien, claim, encumbrance, or interest of another entity in such property under any of the following circumstances:

(1)     applicable non-bankruptcy law permits sale of such property free and clear of such interest;

(2)     such entity consents;

(3)     such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

(4)     such interest is in bona fide dispute; or

(5)     such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f).

24.     As indicated by the use of the disjunctive term "or," satisfaction of any one of the five requirements listed in section 363(f) is sufficient to permit the sale of assets free and clear of liens. *See In re Elliott*, 94 B.R. 343, 345 (E.D. Pa. 1988) (stating that section 363(f) is written in the disjunctive; the court may approve a sale "free and clear" provided that at least one of the subsections is met).

25.     In this instance, as mentioned above, the Debtor believes that Marquette will consent to the transaction presented for approval. Accordingly, the requirements of section

363(f) of the Bankruptcy Code can be satisfied, and the sale of the Real Estate free and clear of liens, claims, encumbrances and other interests is appropriate under the circumstances.

**C.      The Sale Proceeds Should Be Immediately Directed To Marquette.**

26.     The Debtor requests authority to provide Marquette with the direct and immediate payment of $422,000 from the funds placed into escrow by Circle K. This amount represents the purchase price less $3,000 in attorneys' fees to be payable to the undersigned counsel for its review and filing of this Motion.

27.     It is well-settled that a court can approve the sale of a debtor's assets free and clear of liens, claims, encumbrances, or interests, with any such liens, claims, encumbrances, or interests to attach to the sale proceeds in the same manner and to the same extent as with respect to the collateral prior to the sale. *See In re Demay Intern., LLC*, 431 B.R. 164, 177 (Bankr. S.D. Tex. 2010); *In re 1701 Commerce, LLC*, 2012 WL 6571074, Case No. 12-41748-DML (Bankr. N.D. Tex. Dec. 10, 2012); *In re Age Refining, Inc.*, 2011 WL 2746638, Case No. 10-50501-LMC (Bankr. W.D. Tex. April 14, 2014); *In re Whittle Development, Inc.*, 2010 WL 6982609, Case No. 10-37084-HDH (Bankr. N.D. Tex. Dec. 20, 2010); *In re Energytec, Inc.*, 2010 WL 7561444, Case No. 09-41477-BTR (Bankr. E.D. Tex. Feb. 23, 2010).

28.     Thus, upon the closing, as security for approximately $48 million in indebtedness, Marquette will hold a first priority lien against the sale proceeds just as it does with respect to the Real Estate. Direct and immediate payment to Marquette would promote administrative efficiency for an estate that has liquidated substantially all of its assets pursuant to the Sale Order. Accordingly, Marquette should be promptly and directly paid the full amount of the sale proceeds less a $3,000 carve-out for the undersigned counsel's reasonable attorneys' fees incurred in connection with this Motion.

### VI.     WAIVER OF STAY UNDER BANKRUPTCY RULE 6004

29. Pursuant to Bankruptcy Rule 6004(h), an order authorizing the sale of property is "stayed until the expiration of 14 days after the entry of the order, unless the court orders otherwise." *See* Fed. R. Bankr. P. 6004(h). The Debtor requests that the Court order that such fourteen day stay period shall not apply with respect to the sale relief requested herein.

### VII.     EXPEDITED CONSIDERATION

30. The Debtor intends to facilitate a Sale with a closing date of no later than March 29, 2019. Accordingly, the Debtor requests that the Motion be heard on an expedited basis with a hearing date of no later than March 15, 2019.

### VIII.     PRAYER

WHEREFORE, for the foregoing reasons, the Debtor requests the entry of an order: (i) authorizing the Debtor to sell the Real Estate to Circle K and transfer free and clear of liens, claims, encumbrances in exchange for $425,000; (ii) authorizing the direct payment of all sale proceeds directly to Marquette with the exception of $3,000 to be payable to the Debtor's counsel for aid in preparation and prosecution of this Motion; (iv) granting such other and further relief as the Court deems appropriate.

Respectfully submitted this 7th day of March, 2019.

                                     **OKIN ADAMS LLP**

                        By: */s/ David L. Curry, Jr.*
                             Matthew S. Okin
                             Texas Bar No. 00784695
                             Email: mokin@okinadams.com
                             David L. Curry, Jr.
                             State Bar No. 24065107
                             Email: dcurry@okinadams.com
                             Ryan A. O'Connor
                             State Bar No. 24098190
                             Email: roconnor@okinadams.com
                             1113 Vine St. Suite 240
                             Houston, TX 77002
                             Tel: (713) 228-4100
                             Fax: (888) 865-2118

                             **ATTORNEYS FOR THE DEBTOR**

12495908.4