### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE SOUTHERN DISTRICT OF TEXAS
### CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| SAM KANE BEEF PROCESSORS, LLC,[1] | § | Case No. 19-20020 |
| | § | |
| Debtor. | § | Chapter 11 |

**DEBTOR'S EMERGENCY MOTION FOR FINAL ORDER (I) AUTHORIZING THE DEBTOR TO USE CASH COLLATERAL PURSUANT TO SECTION 363(C) OF THE BANKRUPTCY CODE, AND (II) GRANTING RELATED RELIEF**

**THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY. YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN 21 DAYS OF THE DATE THIS WAS SERVED ON YOU. YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING.**

**REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.**

**EMERGENCY RELIEF HAS BEEN REQUESTED. IF THE COURT CONSIDERS THE MOTION ON AN EMERGENCY BASIS, THEN YOU WILL HAVE LESS THAN 21 DAYS TO ANSWER. IF YOU OBJECT TO THE REQUESTED RELIEF OR IF YOU BELIEVE THAT THE EMERGENCY CONSIDERATION IS NOT WARRANTED, YOU SHOULD FILE AN IMMEDIATE RESPONSE.**

Sam Kane Beef Processors, LLC, the above captioned debtor and debtor in possession (the

"Debtor"), hereby files this Emergency Motion for Final Order (I) Authorizing the Debtor to Use

---

[1] The Debtor in this Chapter 11 Case, along with the last four digits of the Debtor's federal tax identification number, is: Sam Kane Beef Processors, LLC (0433).

Cash Collateral Pursuant to Section 363(c) of the Bankruptcy Code, and (II) Granting Related Relief (the "Motion") and in support hereof, respectfully states as follows:

## I.    JURISDICTION AND VENUE

1.    This Court has jurisdiction over these matters pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (M).  Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

2.    The statutory predicates for the relief requested in this Motion are 11 U.S.C. §§ 105, 361, 362, and 363, and Rules 2002, 4001, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## II.    BACKGROUND

3.    On January 22, 2019 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11, Title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of Texas, Corpus Christi Division (the "Court").

4.    Pursuant to Bankruptcy Code §§ 1107(a) and 1108, the Debtor is operating its business and managing its property as a debtor in possession.

**A.    In General**

5.    Prior to the Petition Date, the Debtor operated a meat packing plant located at 9001 Leopard Street in Corpus Christi, Texas.

6.    The Debtor was involved in litigation with the United States and various livestock sellers for alleged violations of, and claims made pursuant to, the Packers and Stockyards Act of 1921, as amended and supplemented.

7.    On October 5, 2018, the United States District Court for the Southern District of Texas entered an Order Appointing Receiver (the "Receivership Order").  [Doc. No. 45 in Case

No. 2:18-cv-00171].  Pursuant to the Receivership Order, Richard S. Schmidt began operating the Debtor and managing its assets prior to the Petition Date.[2]

**B.**     **Parties Asserting an Interest in the Debtor's Cash**

8.     Rabo AgriFinance LLC, f/k/a Rabo Agrifinace, Inc. ("Rabo") provided a loan to the Debtor on or about April 29, 2013.  Accordingly, Rabo asserts a first lien against substantially all of the Debtor's assets pursuant to: (a) that certain Term Note, dated December 11, 2015; (b) that certain Amended and Restated Loan and Security Agreement, dated December 11, 2015; (c) that certain Deed of Trust, dated April 29, 2013 and recorded on April 30, 2013, as Document No. 2013016626 in the Nueces County Clerk's office; and (d) that certain UCC-1 Financing Statement, File No. 16-00081191.

9.     In April 2016, Marquette Transportation Finance, LLC ("Marquette") and the Debtor entered into a factoring agreement (the "Factoring Agreement") secured by a first lien on the Debtor's accounts receivable.  The Debtor defaulted under the Factoring Agreement in July 2018, and Marquette and the Debtor entered into a Forbearance Agreement.  In July 2018, the Debtor defaulted under the Factoring Agreement, which resulted in the Debtor and Marquette, entering into that Second Forbearance Agreement that, among other things, granted Marquette a first lien against certain unencumbered real property of the Debtor and a second lien with respect to additional property.

10.     Additionally, various parties, including the Texas Cattle Feeders[3], assert statutory trust claims pursuant to the Packers and Stockyard Act, in addition to other claims.  On February

---

[2] For further explanation of the Debtor's operations and events leading to bankruptcy, please refer to the Declaration of Richard S. Schmidt in Support of Chapter 11 Petition and First Day Pleadings [Doc. No. 3].

[3] Amigos Beef Cattle Company, LLC, Cal-Tex Feedyard, Inc., Carrizo Feeders, Ltd., Chaparral Feeders, Inc., Charco Cattle Feeders, Dawn Custom Cattle Feeders, Inc., Driskill Feedyard, Inc., Graham Land and Cattle Company, Immel Feedyard, Lipan Cattle Feeders, LLC, Live Oak Feedlot, Inc., Livestock Investors, Ltd. d/b/a A Bar G Feedyard, Lubbock Feeders, LLC, Luckey Custom Feedlot, Inc., McDonald Bar 6 Feedlot, Inc., Morales Feed Lots, Inc., Runnels

22, 2019, the United States Department of Agriculture filed its Notice of Statutory Trust Claims Received by the USDA [Doc. No. 146] (the "USDA Notice") identifying those alleged trust claims believed by the USDA to be valid.

### C.    Prior Use of Cash Collateral

11.    On the Petition Date, the Debtor filed its Emergency Motion for Interim Order (I) Authorizing the Debtor to (A) Use of Property of the Estate, or in the alternative, (B) Use Cash Collateral Pursuant to Section 363(c) of the Bankruptcy Code, (II) Granting Adequate Protection for the Use Thereof, (III) Scheduling a Final Hearing Pursuant to Bankruptcy Rule 4001 as to Use of Cash Collateral, and (IV) Granting Related Relief [Doc. No. 5] (the "First Cash Collateral Motion").  In the First Cash Collateral Motion, the Debtor sought emergency use of estate property or, in the alternative, cash collateral in order to facilitate completion of definitive documentation with the Debtor's identified stalking horse purchaser.  The First Cash Collateral Motion was supported by TCF and unopposed by the Debtor's pre-petition secured lender, Marquette. Following representations from counsel for the Debtor, TCF, and Marquette, the Court entered its Interim Order (I) Authorizing the Debtor to (A) Use of Property of the Estate, or (B) Use of Collateral Pursuant to 363(c) of the Bankruptcy Code; (II) Granting Adequate Protection for the Use Therefore; (III) Scheduling a Final Hearing Pursuant to Bankruptcy Rule 4001 as to Use of Cash Collateral; and (IV) Granting Related Relief [Doc. No. 22], authorizing interim use of cash collateral and setting a final hearing for February 1, 2018.

12.    Unfortunately, the Debtor determined that moving forward with the previously identified stalking horse purchaser was not practicable but continued to require use of cash collateral to preserve assets.  Accordingly, the Debtor filed its Supplemental Emergency Motion

---

Peters Feedyards, LLC, Santa Fe Feeders, Ltd., Shearrer Feedlot, Inc., Starr Feedyards, Ltd., and Texana Feeders, Ltd. (collectively, the "Texas Cattle Feeders" or "TCF").

for Interim Order (I) Authorizing the Debtor to (A) Use Property of the Estate, or in the Alternative (B) Use Cash Collateral Pursuant to Section 363(C) of the Bankruptcy Code; (II) Granting Adequate Protection for the Use Thereof; and (III) Granting Related Relief [Doc. No. 43] (the "Supplemental Cash Collateral Motion").

13.     In connection with the Supplemental Cash Collateral Motion, the Debtor identified two areas of concern related to the preservation of causes of action held that may be held by the estate – (i) renewing or obtaining an extended reporting period for the Debtor's D&O insurance policy, and (ii) obtaining forensic images of the Debtor's servers, computers, etc. to preserve electronically stored information ("ESI").

14.     On January 30, 2019, the Court entered the Second Interim Order (I) Authorizing the Debtor to (A) Use Property of the Estate, or (B) Use Cash Collateral Pursuant to 363(C) of the Bankruptcy Code; (II) Granting Adequate Protection for the Use Therefore; and (III) Granting Related Relief [Doc. No. 65] (the "Second Interim Cash Collateral Order").   Reflecting a compromise reached between the Debtor, TCF, and Marquette, the Second Interim Order authorized to Debtor to pay actual and necessary expenses associated with the operation of the Debtor and its business but did not approve expenses by category or projected accruals.

**D.     <u>Sale of the Debtor's Assets</u>**

15.     Also on January 30, 2019, the Court entered its order authorizing, among other things, the sale of substantially all of the Debtor's assets pursuant to an auction to be conducted on February 6, 2019 [Doc. No. 64] (the "Bid Procedures Order).   In accordance with the Bid Procedure Order, the Debtor held an auction on or about February 6, 2019 and it was continued until about February 8, 2019.

16.     The Debtor determined that JDH Capital Company ("Purchaser"), a Texas corporation, was the winning bidder and entered into a form of purchase agreement, dated February 13, 2019.

17.     The Court conducted a sale hearing on February 14, 2019.  That same day, the Court entered its order approving sale of substantially all of the Debtor's assets and the form of Asset Purchase Agreement attached thereto as Exhibit A [Doc. No. 137] (the "Sale Order").

18.     Pursuant to the Sale Order, the Debtor and Purchaser entered into that Asset Purchase Agreement related to the sale of substantially all of the Debtor's assets to Purchaser (the "Transaction"), which Transaction closed on February 28, 2019.

**E.     Continued Need for Use of Cash Collateral**

19.     While working to finalize the sale, the Debtor also worked to preserve various assets not included in the Transaction.  As noted above, of particular concern was the Debtor's ability to purchase an extended reporting period under the Debtor's existing D&O insurance and to obtain forensic imaging of the Debtor's servers and computers.

20.     Following the entry of the Second Interim Cash Collateral Order, the Debtor continued to work with TCF and Marquette to obtain consent to use cash collateral for these items. As to the D&O insurance, the parties reached an agreement and the Debtor timely purchased the extended reporting period.  As to the ESI collection and preservation, despite an indication from all parties that the task should be performed, TCF has not consented to the Debtor using cash collateral to pay for such services.

21.     At the January 30, 2019 hearing, TCF counsel acknowledged the need for ESI collection and imaging but expressed concern regarding the amount budgeted by the Debtor for such services.  TCF counsel advised the Debtor that TCF would propose an alternative provider

6

whom TCF's counsel expected to be able to provide forensic imaging services for an amount less than originally anticipated by the Debtor.

22.     In the interim, the Debtor obtained quotes from qualified providers, including an initial quote of approximately $75,000 from a well-qualified provider that has previously worked with Mr. Schmidt and Debtor's counsel. That quote was forwarded to TCF's counsel more than two weeks ago, but TCF again did not approve such expense. After receiving a second, lower cost bid, the Debtor negotiated with its prior bidder to obtain a significant discount and an all-inclusive price of $40,000. Given all of the relevant factors, including the ability of the initial bidder to complete the imaging promptly and with as little disruption to the Purchaser's operations as possible, the Debtor believes that this proposal is in the best interest of the estate.

23.     On March 6, 2019, the Debtor renewed its request that TCF agree to the expenditure for ESI collection and preservation. TCF again declined and stated that it would be providing information related to an alternative provider. To date, no such information has been provided to the Debtor.

### III.  RELIEF REQUESTED

24.     By this Motion, pursuant to Bankruptcy Code §§ 105, 361, 362, and 363 and Bankruptcy Rules 2002, 4001, and 9014, the Debtor requests that the Court enter an order approving the Debtor's use of Cash Collateral.

25.     The Debtor seeks authority to use cash collateral to preserve valuable estate assets. In connection with the Transaction, the Debtor desires to take certain actions to preserve ESI related to the Debtor's business and operations, which, among other items, may be related to certain claims or causes of action held by the Debtor's estate. The Debtor requests $40,000.00 for forensic imaging and back-up of the Debtor's ESI (the "back-up"). As set forth above, the Debtor

sought multiple bids for the ESI collection, and, ultimately, received an all-inclusive bid from a well-qualified service provider.  The service provider believes it can complete the back-up in two to three business days with minimal disruption to the Purchaser's business operations.

26.     Under the circumstances, the Debtor believes that the foregoing is in the best interest of the estate as it preserves ESI relevant to potentially valuable causes of action that the Debtor may otherwise lose if the electronic information is not protected.  Further, because the Purchaser has already taken over the premises and is attempting to resume normal business operations, the Debtor can no longer afford to wait, or it risks the loss of valuable information.

## IV.  APPLICABLE AUTHORITY

27.     Bankruptcy Rule 4001(b) and (d) governs the procedure for consideration of motions to use cash collateral, and both subsections provide for expedited consideration of such motions for cases in which immediate relief may be crucial to the success of a reorganization.

28.     At a hearing on a debtor's motion for the use of cash collateral, the debtor bears the burden of proof on the issue of adequate protection, and the party claiming an interest in the cash collateral bears the burden of proof on the issue of the validity, priority, or extent of the lien.  11 U.S.C. § 363(p)(2) ("In a hearing under [section 363], the entity asserting an interest in property has the burden of proof on the issue of the validity, priority, or extent of such interest").

29.     As set forth above, the Debtor risks the loss of valuable claims and causes of action if immediate action is not taken to back-up and preserve the ESI.  Therefore, the immediate use of back-up services is necessary to preserve valuable estate assets. Accordingly, the Debtor faces immediate and irreparable harm to the estate absent the emergency consideration of the relief requested in this Motion.  Authority to use Cash Collateral is necessary to preserve estate assets and will be in the best interests of the Debtor, its estate and its creditors.

## V.   <u>BASIS FOR EMERGENCY RELIEF</u>

30.    The Debtor respectfully requests emergency consideration of this Motion in accordance with Bankruptcy Local Rule 9013-1(i).  As discussed above, the Debtor has an immediate need for use of cash collateral.  The Debtor has waited approximately one month for additional bidders to provide the back-up services necessary and has received no preferable bids. The Purchaser has already obtained possession of the premises and is attempting to resume normal business operations.  Therefore, the Debtor requests emergency consideration of this motion so that it can have the back-up services performed as quickly as possible to preserve the valuable causes of action.

## VI.   <u>PRAYER</u>

WHEREFORE, the Debtor respectfully requests that the Court enter an order (i) authorizing the Debtor to use cash collateral pursuant to section 363(c) of the Bankruptcy Code and (ii) granting the Debtor such other and further relief as this Court may deem just and proper.


[*Remainder of Page Intentionally Left Blank*]

Respectfully submitted on the 12th day of March 2019.

**OKIN ADAMS LLP**

By:      /s/ *David L. Curry, Jr.*
       Matthew S. Okin
       Texas Bar No. 00784695
       mokin@okinadams.com
       David L. Curry, Jr.
       Texas Bar No. 24065107
       dcurry@okinadams.com
       Ryan A. O'Connor
       Texas Bar No. 24098190
       roconnor@okinadams.com
       1113 Vine St., Suite 240
       Houston, Texas 77002
       Tel: 713.228.4100
       Fax: 888.865.2118

**ATTORNEYS FOR THE DEBTOR**