## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF TEXAS

| | |
|---|---|
| In Re: Sam Kane Beef Processors, LLC | Case No. 19-20020 |
| | Chapter 11 |
| Debtor | |

### MOTION FOR RECONSIDERATION OF DEBTOR'S MOTION TO SELL CERTAIN REAL PROPERTY TO CIRCLE K STORES, INC.
### [Relates to DE 160 and DE 165]

**THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE TO A RESOLUTION, YOU MUST FILE A WRITTEN RESPONSE AND SEND A COPY OF SAID RESPONSE TO THE MOVING PARTY. YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN 21 DAYS OF THE DATE THIS MOTION WAS SERVED ON YOU. YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING.**

**REPRESENTED PARTIES SHOULD ACT THROUGH THEIR RESPECTIVE ATTORNEYS.**

The Texas Cattle Feeders ("TCF") Group[1] hereby file its Motion for Reconsideration of Debtor Sam Kane Beef Processors, LLC's ("Sam Kane") Expedited Motion for Authority to Sell Certain Real Estate to Circle K Stores Inc. Free and Clear of Liens, Claims, Encumbrances, and

---

[1] The TCF Group comprises of Amigos Beef Cattle Company, LLC, Cal-Tex Feedyard, Inc., Carrizo Feeders, Ltd., Chaparral Feeders, Inc., Charco Cattle Feeders, Dawn Custom Cattle Feeders, Inc., Driskill Feedyard, Inc., Graham Land and Cattle Company, Immel Feedyard, Lipan Cattle Feeders, LLC, Live Oak Feedlot, Inc., Livestock Investors, Ltd. d/b/a A Bar G Feedyard, Lubbock Feeders, LLC, Luckey Custom Feedlot, Inc., McDonald Bar 6 Feedlot, Inc., Morales Feed Lots, Inc., Runnels Peters Feedyards, LLC, Santa Fe Feeders, Ltd., Shearrer Feedlot, Inc., Starr Feedyards, Ltd., and Texana Feeders, Ltd.

Interests Pursuant to Sections 105 and 363 of the Bankruptcy Code (the "Motion") [D.E. 160]; the real estate is described in the Motion as "Lot Three (3) Block One (1), GUTH PARKSIDE ANNEX, an addition in the City of Corpus Christi, Texas as shown by map or plat thereof recorded in Volume 60, Page 33, Map Records of Nueces County, Texas" (the "subject property") and show the Court as follows:

1. On March 7, 2019, Debtor filed the Motion and requested a hearing be set by March 15, 2019 with the closing date for the sale of the subject property to take place on or before March 29, 2019. Pursuant to DE 160, objections to the motion were due within 21 days from the filing of the Motion on March 7, 2019.

2. On or about March 12, 2019 the Court granted the Motion without hearing. [DE 165].

3. The TCF Group does not object to the proposed sale itself. The sole basis of their motion for reconsideration and objection is to a certain section of the Motion and Oder that the payment of the subject property's sales proceeds be distributed to Marquette Transportation Finance Service, LLC ("Marquette"). The TCF Group requests that the Court hold such proceeds with the Debtors or hold them in the Court's Registry.

4. The Motion filed by the Debtor states the following key facts:
   a. The subject property was acquired by the Debtor on March 14, 2014.
   b. The first lien of Rabo AgriFinance LLC did not attach to the subject property.
   c. In July 2018, Marquette took a lien on the subject property.

5. The subject property is presumptuously a part of the res of the Packers and Stockyard Trust of the Debtor within 7 U.S.C. § 196. Neither Marquette nor Debtor has provided any evidence to satisfy their burden to show that the subject property is not part of the PSA trust.

6.      The PSA does not require the Texas Cattle Feeders Group to trace the cattle proceeds to the subject property. *In re: Gotham Provision Co., Inc.*, 669 F.2d 1000 (5th Cir. 1982). Instead, the subject property is deemed to be proceeds of cattle sales, and the burden to trace or disprove that the subject property is not a trust asset is upon the debtor or creditor challenging the asset's attachment to the PSA trust. *Id*.

7.      The PSA statutory trust provides livestock producers with a floating trust in a meat packer's "cash sales, and all inventories of, or receivables or proceeds from meat, meat food products, or livestock products derived therefrom." 7 U.S.C.A. § 196(b). The Fifth Circuit has specifically found that the PSA statutory trust "consists of a floating pool of inventories and receivables" such that a livestock producer is not required to "perform the almost impossible task of tracing their products into specific receivables." *In re: Gotham Provision Co., Inc.*, 669 F.2d at 1010-11. The only burden on unpaid livestock producers is to prove the balance due, and "the existence of a floating pool of commingled inventories of livestock products, accounts receivables and proceeds derived from cash and credit livestock sales." *Id*. at 1011. The burden of proving that specific funds are not related to the PSA trust is on the party seeking to disprove that such funds are not subject to the PSA trust. *Id*. at 1011.

8.      The report of the Senate Committee on Agriculture and Forestry on the 1976 amendments to the PSA clearly indicates that a PSA trust beneficiary is not required to trace assets of the debtor purchaser to be entitled to reimbursement. In pertinent part, the Committee's report states:

> Under this provision, no specific identification of the livestock or the carcasses, meats, proceeds or receivables derived therefrom is required. Instead, they are held in a pool in trust for the benefit of all unpaid cash sellers.

S.Rep. No. 932, supra at 13, (1976) U.S.Code Cong. & Ad.News at 2279.  In determining the need to provide priority to livestock producers for the livestock they raised, The Senate Agriculture and Forestry Committee noted:

> Under present law, a packer is able to offer as security for a loan the livestock, meat, meat food products, or receivables or proceeds therefrom, which he has not paid for. The producer, who was responsible for raising, feeding, and caring for the livestock is left unpaid, **while secured creditors reap the reward of his labors**....

S.Rep. No. 932, 94th Cong., 2d Sess. 5-6, reprinted in (1976) U.S.Code Cong. & Ad.News 2271, 2272(emphasis added).

9.  In *In re Gotham Provision Company, Inc.*, First State Bank of Miami entered into a financing agreement with Gotham (meat packer) similar to the agreement between Same Kane Beef Processors, LLC and Marquette.  Pursuant to the financing agreement, the bank would advance funds to Gotham and take as collateral a security interest in Gotham's "inventories, accounts receivable and proceeds from the sale of the meat." *Id*. at 1003.  Unfortunately, Gotham sustained financial difficulties and filed bankruptcy.  Approximately one month prior to filing bankruptcy, the outstanding balance due to the bank was $450,000.00, and seven days after the filing of the bankruptcy petition the outstanding balance was reduced to $112,324.19.  The Court found that the bank had constructive knowledge of the trust "because a federal statute created the trust." *Id*. at 1011.  The *Gotham* Court held that the unpaid livestock producers had priority to the comingled assets over the bank, and that the bank had to pay the livestock producers the funds it received to reduce the balance of its loan, up to the amount necessary to compensate the livestock producers in full. *Id*. at 1010.

10.  When analyzing the PSA it is also instructive to look to decisions involving the parallel provisions of the Perishable Agricultural Commodities Act Statutory Trust, 7 U.S.C. § 499a et seq.  The Fifth Circuit has noted that the Perishable Agricultural Commodities Act

("PACA") Statutory Trust, 7 U.S.C. §499$e(c)$ was modeled after the PSA Trust. *Kingdom Fresh Produce, LLC. v. Stokes Law Office, LLP*, 845 F.3d 609, 613 (5th Cir. 2016). Specifically, the Fifth Circuit noted the PSA trust provisions are to be viewed as "parallel provisions" with those of the PACA. *Id*. As a result, "courts have often looked to those 'parallel' provisions when interpreting PACA's trust provisions." *Id*. citing *In re Monterey House, Inc.*, 71 B.R. 244, 246 (Bankr. S.D. Tex. 1986); *In re Fresh Approach*, *Inc.*, 51 B.R. 412, 419–20 (Bankr. N.D. Tex. 1985); *Consumers Produce Co. v. Volante Wholesale Produce, Inc.*, 16 F.3d 1374, 1382 n.5 (3rd Cir. 1994).

11. In cases under the PACA, the statutory trust is deemed to include assets acquired by the PACA debtor prior to the date on which the current outstanding trust debt was incurred. *Sanzone-Palmisano Company v. M. Seaman Enterprises, Inc.*, 986 F.2d 1010 (6th Cir. 1993); *In re Kornblum & Co., Inc.*, 81 F.3d 280 (2nd Cir. 1996). In deciding to include assets in the PACA trust that were obtained prior to the creation of a single trust beneficiary's claim, the *Kornblum* Court noted that "a single PACA trust exists for the benefit of all of the sellers to a Produce Debtor, and continues in existence until all of the outstanding beneficiaries have been paid in full." *In re Kornblum & Co., Inc.*, 81 F.3d at 286. As with the PSA, the PACA through almost identical language provides PACA trust beneficiaries with priority over all other claims to the assets of the purchaser of produce. In *Sanzone-Palmisano Co.*, the Sixth Circuit illustrated the priority of the PACA claims as follows:

> We recognize that the ramifications of enforcing the trust obligation are greater when a purchaser of produce sells commodities other than produce. Retail grocers commonly commingle the proceeds from the sale of produce with the proceeds from the sale of all other commodities. Like the produce suppliers, the suppliers of these other commodities are normally unsecured creditors. Without the protection of PACA, produce suppliers would share ratably with all other suppliers the funds remaining after the satisfaction of the secured creditors, other priority claims, and administrative costs. With the protection of PACA, however, the produce suppliers'

claims are satisfied first, and the remaining unsecured creditors are left to share the substantially reduced amount left after satisfaction of other priority claims.

*Sanzone-Palmisano Company*, 986 F.2d at 1013. While this outcome may seem harsh, it is the outcome intended by Congress. *Id*.

12.  In *Kornblum,* the Court set forth a three-prong test for determining whether an asset of the Debtor was part of the PACA trust. To exclude the asset as part of the trust, the Debtor has the burden to establish:

  1. No PACA trust existed when the asset was purchased;

  2. Where a PACA trust existed at the time of purchase, that the asset was not purchased with trust assets; or

  3. Where a PACA trust existed at the time of purchase and the asset was purchased with trust assets, that Debtor paid all unpaid trust beneficiaries prior to the transactions involving the current trust beneficiaries, thereby terminating the trust.

*In re Kornblum & Co., Inc.*, 81 F.3d at 287 citing *Sanzone–Palmisano Co.*, 986 F.2d at 1012 ("[T]he trust beneficiary need not prove that it, and not another produce supplier, was the source of the produce or produce-related assets."); *Six L's Packing Co. v. West Des Moines State Bank,* 967 F.2d 256, 258 ("[T]he burden is on the PACA debtor ... to show that the disputed [asset] is from a non-trust source."); *Fresh Approach*, 51 B.R. at 422 (same); see also *International Bhd. of Teamsters v. United States*, 431 U.S. 324, 359 n. 45, 97 S.Ct. 1843, 1867 n. 45, 52 L.Ed.2d 396 (1977) ("Presumptions shifting the burden of proof are often created to reflect judicial evaluations of probabilities and to conform with a party's superior access to the proof.")..

13.  In the instant case, Marquette had both actual and constructive knowledge of the PSA trust and that Sam Kane Beef was in financial difficulties yet continued to loan Sam Kane additional funds and accepted payment of PSA trust assets. As noted in *Kornblum*, the acquisition date of the subject property is irrelevant when determining whether the asset is an

6

asset of the trust unless Debtor or Marquette can show that (1) no PSA trust existed at the time of the purchase of the subject property, (2) even though a PSA trust existed at the time, that the subject property was not purchased with trust assets or (3) although a PSA trust existed at the time of the purchase of the property and trust assets were used for the purchase, that Debtor thereafter paid all unpaid trust beneficiaries in full prior to the transactions involving the current trust beneficiaries thereby terminating the trust. Consequently, the burden to trace the assets used to acquire the subject property is upon Marquette and Debtor. In other words, it is incumbent upon the Debtor and Marquette to show that the funds used to purchase the subject property were in <u>no way</u> related to funds derived from livestock purchased by Debtor in cash sales, or all inventories of, or receivables or proceeds from meat, meat food products, or livestock products derived therefrom. Marquette cannot show that the assets used to purchase the subject property were <u>NOT</u> PSA trust assets, nor has Marquette or the Debtor offered any evidence to satisfy their burden to show that the assets used to purchase the subject property were <u>NOT</u> PSA trust assets. Further, there is no evidence that Debtor's PSA trust was ever satisfied in full, thereby terminating the trust prior to the transactions involving the current PSA trust beneficiaries. Consequently, the funds of the subject property's liquidation should be distributed to the PSA trust beneficiaries up to the amount of the PSA trust.

  WHEREFORE, the TCF Group prays that the Court sustain its objection and Motion for Reconsideration of the Order to distribute the proceeds from the sale of the subject property to Marquette and find that neither Debtor nor Marquette has offered any evidence to show that the subject property is a NOT a PSA trust asset, and order that the proceeds from the sale of the subject property are to be distributed to the PSA trust beneficiaries.

Dated: March 15, 2019.

Respectfully submitted

NAMAN HOWELL SMITH & LESS, PLLC

/s/ David L. LeBas
David L. LeBas – SBN 12098600
8310 N. Capital of Texas Highway, Suite 490
Austin, TX 78731
Telephone (512) 479-0300
Facsimile (512) 474-1901
dlebas@neimanhowell.com

And

STOKES LAW OFFICE LLP

/s/ Craig A. Stokes
Craig A. Stokes – SBN 19267700
3330 Oakwell Court, Suite 225
San Antonio, TX 78218
Telephone (210) 804-0011
Facsimile (210) 822-2595
cstokes@stokeslawoffice.com

And

/s/ Johnie Patterson
Johnie Patterson
Walker & Patterson, P.C.
4815 Dacoma
P.O. Box 61301
Houston, TX 77208
Telephone (713) 956-5577
Facsimile (713) 956-5570

*Counsel for Amigos Beef Cattle Company, LLC, Cal-Tex Feedyard, Inc., Carrizo Feeders, Ltd., Chaparral Feeders, Inc., Charco Cattle Feeders, Dawn Custom Cattle Feeders, Inc., Driskill Feedyard, Inc., Graham Land and Cattle Company, Immel Feedyard, Lipan Cattle Feeders, LLC, Live Oak Feedlot, Inc., Livestock Investors, Ltd. d/b/a A Bar G Feedyard, Lubbock Feeders, LLC, Luckey Custom Feedlot, Inc., McDonald Bar*

8

*6 Feedlot, Inc., Morales Feed Lots, Inc., Runnels Peters Feedyards, LLC, Santa Fe Feeders, Ltd., Shearrer Feedlot, Inc., Starr Feedyards, Ltd., and Texana Feeders, Ltd.*

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing document was served on all counsel of record by the Court's Electronic Case Filing System on March 15, 2019.

*/s/* Craig A. Stokes
Craig A. Stokes