# UNITED STATES BANKRUPTCY COURT
# SOUTHERN DISTRICT OF TEXAS
# CORPUS CHRISTI DIVISION

| | |
|---|---|
| In Re: | Case No. 19-20020 |
| SAM KANE BEEF PROCESSORS, LLC | Chapter 11 |
|     Debtor.<br>_____/ | |
| AMIGOS BEEF CATTLE COMPANY, LLC, CAL-TEX FEEDYARD, INC., CARRIZO FEEDERS, LTD., CHAPARRAL FEEDERS, INC., CHARCO CATTLE FEEDERS, DAWN CUSTOM CATTLE FEEDERS, INC., DRISKILL FEEDYARD, INC., GRAHAM LAND AND CATTLE COMPANY, IMMEL FEEDYARD, LIPAN CATTLE FEEDERS, LLC, LIVE OAK FEEDLOT, INC., LIVESTOCK INVESTORS, LTD. D/B/A BAR G FEEDYARD, LUBBOCK FEEDERS, LLC, LUCKEY CUSTOM FEEDLOT, INC., MCDONALD BAR 6 FEEDLOT, INC., MORALES FEED LOTS, INC., RUNNELS PETERS FEEDYARDS, LLC, SANTA FE FEEDERS, LTD., SHEARRER FEEDLOT, INC., STARR FEEDYARDS, LTD., AND TEXANA FEEDERS, LTD., EULER HERMES NORTH AMERICA INSURANCE COMPANY, COFACE NORTH AMERICA INSURANCE COMPANY, ATEWAY CATTLE CO., GRISHAM FARMS, BLUE CREEK FEED CO., AND SOUTHERN LIVESTOCK, INC., | Adversary No. |
|     Plaintiffs,<br>v. | |
| SAM KANE BEEF PROCESSORS, LLC, MARQUETTE TRANSPORTATION FINANCE, LLC d/b/a MARQUETTE | |

COMMERCIAL FINANCE, LLC, AND
JOHN DOE,

    Defendants.

_____/

**COMPLAINT FOR (1) DECLARATORY JUDGMENT APPROVING PSA TRUST CHART; (2) DECLARATORY JUDGMENT AGAINST SAM KANE BEEF PROCESSORS, LLC, AND MARQUETTE TRANSPORTATION FINANCE, LLC THAT CERTAIN ASSETS AND FUNDS IN THE CUSTODY OF THE DEFENDANTS ARE OWNED AND HELD IN TRUST FOR PLAINTIFFS; AND (3) FOR AN ORDER <u>COMPELLING THE DEBTOR TO TURNOVER SUCH ASSETS</u>**

Plaintiffs, the Texas Cattle Feeders ("TCF") Group,[1] Euler Hermes North America Insurance Company ("Euler Hermes"), Coface North America, Gateway Cattle Co., Grisham Farms, Blue Creek Feed Co. and Southern Livestock, Inc. hereby file their Complaint for (1) declaratory judgment approving PSA Trust Chart (2) declaratory judgment that certain assets and funds in the custody of Sam Kane Beef Processors, LLC, and Marquette Transportation Finance, LLC are owned by and held in trust for Plaintiffs; and, (3) for an order compelling the Defendants to turnover such assets. Plaintiffs do not consent to general jurisdiction as to all claims, including but not limited to any disgorgement claims against Marquette Transportation Finance, LLC, and reserve their rights to subsequently assert any and all claims not asserted herein in a separate proceeding. In support thereof, Plaintiffs respectfully shows as follows:

---

[1] The TCF Group comprises of Amigos Beef Cattle Company, LLC, Cal-Tex Feedyard, Inc., Carrizo Feeders, Ltd., Chaparral Feeders, Inc., Charco Cattle Feeders, Dawn Custom Cattle Feeders, Inc., Driskill Feedyard, Inc., Graham Land and Cattle Company, Immel Feedyard, Lipan Cattle Feeders, LLC, Live Oak Feedlot, Inc., Livestock Investors, Ltd. d/b/a Bar G Feedyard, Lubbock Feeders, LLC, Luckey Custom Feedlot, Inc., McDonald Bar 6 Feedlot, Inc., Morales Feed Lots, Inc., Runnels Peters Feedyards, LLC, Santa Fe Feeders, Ltd., Shearrer Feedlot, Inc., Starr Feedyards, Ltd., and Texana Feeders, Ltd.

2

## I. JURISDICTION

1.      Jurisdiction of this matter is conferred on the Court by 28 U.S.C. § 157 and 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157.

## II. PARTIES

2.      Amigos Beef Cattle Company, LLC operates a commercial cattle feeding facility which provides feed and care for cattle to prepare them for sale as fed or finished fed or finished cattle to slaughterhouses (also called "packers"). In the ordinary course of its business it sold and delivered cattle to Defendant Kane.

3.      Cal-Tex Feedyard, Inc. operates a commercial cattle feeding facility which provides feed and care for cattle to prepare them for sale as fed or finished fed or finished cattle to slaughterhouses (also called "packers"). In the ordinary course of its business it sold and delivered cattle to Defendant Kane.

4.      Carrizo Feeders, Ltd., operates a commercial cattle feeding facility which provides feed and care for cattle to prepare them for sale as fed or finished cattle to slaughterhouses (also called "packers"). In the ordinary course of its business it sold and delivered cattle to Defendant Kane.

5.      Chaparral Feeders, Inc. operates a commercial cattle feeding facility which provides feed and care for cattle to prepare them for sale as fed or finished cattle to slaughterhouses (also called "packers"). In the ordinary course of its business it sold and delivered cattle to Defendant Kane.

6.      Charco Cattle Feeders operates a commercial cattle feeding facility which provides feed and care for cattle to prepare them for sale as fed or finished cattle to

slaughterhouses (also called "packers"). In the ordinary course of its business it sold and delivered cattle to Defendant Kane.

7. Dawn Custom Cattle Feeders, Inc. operates a commercial cattle feeding facility which provides feed and care for cattle to prepare them for sale as fed or finished cattle to slaughterhouses (also called "packers"). In the ordinary course of its business it sold and delivered cattle to Defendant Kane.

8. Driskill Feedyard, Inc. operates a commercial cattle feeding facility which provides feed and care for cattle to prepare them for sale as fed or finished cattle to slaughterhouses (also called "packers"). In the ordinary course of its business it sold and delivered cattle to Defendant Kane.

9. Graham Land and Cattle Company a operates commercial cattle feeding facility which provides feed and care for cattle to prepare them for sale as fed or finished cattle to slaughterhouses (also called "packers"). In the ordinary course of its business it sold and delivered cattle to Defendant Kane.

10. Immel Feedyard operates a commercial cattle feeding facility which provides feed and care for cattle to prepare them for sale as fed or finished cattle to slaughterhouses (also called "packers"). In the ordinary course of its business it sold and delivered cattle to Defendant Kane.

11. Lipan Cattle Feeders, LLC operates a commercial cattle feeding facility which provides feed and care for cattle to prepare them for sale as fed or finished cattle to slaughterhouses (also called "packers"). In the ordinary course of its business it sold and delivered cattle to Defendant Kane.

12. Live Oak Feedlot, Inc. operates a commercial cattle feeding facility which provides feed and care for cattle to prepare them for sale as fed or finished cattle to slaughterhouses (also called "packers").  In the ordinary course of its business it sold and delivered cattle to Defendant Kane.

13. Livestock Investors, Ltd. d/b/a Bar G Feedyard operates a commercial cattle feeding facility which provides feed and care for cattle to prepare them for sale as fed or finished cattle to slaughterhouses (also called "packers").  In the ordinary course of its business it sold and delivered cattle to Defendant Kane.

14. Lubbock Feeders, LLC operates a commercial cattle feeding facility which provides feed and care for cattle to prepare them for sale as fed or finished cattle to slaughterhouses (also called "packers"). In the ordinary course of its business it sold and delivered cattle to Defendant Kane.

15. Luckey Custom Feedlot, Inc. operates a commercial cattle feeding facility which provides feed and care for cattle to prepare them for sale as fed or finished cattle to slaughterhouses (also called "packers").  In the ordinary course of its business it sold and delivered cattle to Defendant Kane.

16. McDonald Bar 6 Feedlot operates a commercial cattle feeding facility which provides feed and care for cattle to prepare them for sale as fed or finished cattle to slaughterhouses Intervention and Complaint.  In the ordinary course of its business it sold and delivered cattle to Defendant Kane.

17. Morales Feed Lots, Inc. operates a commercial cattle feeding facility which provides feed and care for cattle to prepare them for sale as fed or finished cattle to

slaughterhouses (also called "packers").  In the ordinary course of its business it sold and delivered cattle to Defendant Kane.

18. Runnells Peters Feedyards, LLC operates a commercial cattle feeding facility which provides feed and care for cattle to prepare them for sale as fed or finished cattle to slaughterhouses (also called "packers").  In the ordinary course of its business it sold and delivered cattle to Defendant Kane.

19. Santa Fe Feeders, Ltd. operates a commercial cattle feeding facility which provides feed and care for cattle to prepare them for sale as fed or finished cattle to slaughterhouses (also called "packers").  In the ordinary course of its business it sold and delivered cattle to Defendant Kane.

20. Shearrer Feedlot, Inc. operates a commercial cattle feeding facility which provides feed and care for cattle to prepare them for sale as fed or finished cattle to slaughterhouses (also called "packers").  In the ordinary course of its business it sold and delivered cattle to Defendant Kane.

21. Starr Feedyards, Ltd. operates a commercial cattle feeding facility which provides feed and care for cattle to prepare them for sale as fed or finished cattle to slaughterhouses (also called "packers").  In the ordinary course of its business it sold and delivered cattle to Defendant Kane.

22. Texana Feeders, Ltd. operates a commercial cattle feeding facility which provides feed and care for cattle to prepare them for sale as fed or finished cattle to slaughterhouses (also called "packers").  In the ordinary course of its business it sold and delivered cattle to Defendant Kane.

23. Plaintiffs, Euler Hermes North America Insurance Company and Coface North America Insurance Company are the subrogees of MGM Cattle Co. ("MGM") which operates a feeding facility which provided feed and care for cattle to prepare them for sale as fed or finished cattle to slaughter houses (also called "packers"). In the ordinary course of its business, MGH sold and delivered cattle to Defendant, Kane.

24. Plaintiff, Gateway Cattle Co., operates a commercial cattle feeding facility which provides feed and care for cattle to prepare them for sale as fed or finished cattle to slaughterhouses (also called "packers"). In the ordinary course of its business it sold and delivered cattle to Defendant Kane.

25. Plaintiff, Blue Creek Feed Co., operates a commercial cattle feeding facility which provides feed and care for cattle to prepare them for sale as fed or finished cattle to slaughterhouses (also called "packers"). In the ordinary course of its business it sold and delivered cattle to Defendant Kane.

26. Plaintiff, Southern Livestock, Inc. operates a commercial cattle feeding facility which provides feed and care for cattle to prepare them for sale as fed or finished cattle to slaughterhouses (also called "packers"). In the ordinary course of its business it sold and delivered cattle to Defendant Kane.

27. Plaintiff, Grisham Farms, a sole proprietorship, operates a commercial cattle feeding facility which provides feed and care for cattle to prepare them for sale as fed or finished cattle to slaughterhouses (also called "packers"). In the ordinary course of its business it sold and delivered cattle to Defendant Kane.

28. John Doe (whether one or more) is an unknown defendant cattle supplier with

interest in the Packers and Stockyard's Act statutory trust who may be served with a summons when identified.

29.	Plaintiffs are a group of Texas entities engaged in the business of buying and selling wholesale quantities of livestock in interstate commerce with their principal places of business in Texas. At all times relevant herein, the Debtor was subject to and licensed by the United States Department of Agriculture under PACA.

30.	Defendant Sam Kane Beef Processors, LLC ("Kane") is a limited liability company organized under the laws of the state of Texas and currently in a Chapter 11 bankruptcy proceeding before this Court. Kane Beef Processors, LLC owns and operates the processing plant located at 9001 Leopard St. Corpus Christi, Texas 78409 (the "Processing Plant"). At all relevant times, Kane was authorized to do business in Texas and may be served through its counsel of record in this case.

31.	Defendant Marquette Transportation Finance, LLC d/b/a. Marquette Commercial Finance, LLC ("Marquette") is a corporation organized under the laws of the state of Missouri. Marquette is authorized to do business in Texas and may be served with process by serving its registered agent, National Registered Agents, Inc. Service of summons on Marquette Commercial Finance, a division of Marquette Transportation Finance, LLC may be made by certified mail, return receipt requested addressed to its registered agent National Registered Agents, Inc. at 1999 Bryan Street, Suite 900, Dallas, Texas 75201, all in accordance with Fed. R. Civ. P. 4(e)(l). Marquette claims a perfected security interest in the cash, accounts receivable and other assets of the Debtor.

## III. FACTS

32. Each of the Plaintiffs has on its own account and for the benefit of its customers, regularly sold cattle to Kane in the ordinary course of its business and the business of Kane.

33. Each of the Plaintiffs has delivered cattle to Kane for which they have not received payment.

34. Each of the Plaintiffs have filed a timely written claim, or claims, with the United States Department of Agriculture and Kane in order to protect and preserve its rights under § 206(b) of the Packers and Stockyards Act, 7 U.S.C. § 196(b) (the "PSA"), which provides for a packer trust (the "Trust") for the benefit of unpaid cash sellers of livestock. The assets of the trust include all livestock purchased by a packer in cash sales, and all inventories of, or receivables or proceeds from meat, meat food products, or livestock products derived therefrom (the "Trust Assets"). Each of the Plaintiffs has perfected their rights in the PSA trust assets of Kane by sending the trust notice required by PSA to both Kane and to the USDA. All assets of Kane including livestock, inventory and any proceeds of sale of them are considered part of the res of the PASA trust and such assets remain trust assets of Kane regardless of date of acquisition, for so long as Kane has had unpaid livestock suppliers. For this reason, assets acquired prior to the date on which Plaintiffs' claims arose remain subject to the PSA trust.

35. Each of the Plaintiffs is entitled to assert a statutory lien pursuant to Tex. Agric. Code § 148.021-028 for the unpaid purchase price, together with statutory damages, including reasonable attorneys' fees, and a senior priority lien on each animal sold, the carcass of the animal, products from the animal and proceeds from the sale of the animal, its carcass or its products (the "Collateral").

36. On or about February 22, 2019, the United States Department of Agriculture ("USDA") filed its Notice of Statutory Claims Received by the USDA. [D.E. 146]. According to the Notice, the USDA received notices of statutory claims pursuant to the Packers and Stockyards Act ("PSA"), 7 U.S.C. §196(b). Based upon the notices received by the USDA, it created and attached a PSA Trust Chart of the qualified claims made in 2018. See Exhibit "A." The PSA Trust Chart filed by the USDA sets forth the claims for which the USDA received notices that complied with the requirements of the PSA in 2018 and remain unpaid. As such, the Plaintiffs request this Court to approve the PSA Trust Chart for the statutory trust claims filed with the USDA in 2018. See attached, Exhibit "A." The 2018 PSA Trust claims qualified by the USDA total $31,550,489.78.

37. Debtor has admitted that it received notices of statutory trust claims from the Plaintiffs, but that it destroyed most of the copies of the notices.

38. On or about January 12, 2017, the United States Grain Inspection, Packers and Stockyards Administration ("GIPSA") filed a complaint against Kane for failure to pay livestock sellers when due under the Packers and Stockyards Act. Kane agreed to cease and desist from failing to pay livestock sellers when due and agreed to the entry of a Consent Decision. The Consent Decision became final and effective on January 27, 2017. From and after that date Kane has failed to honor its agreement and the Order to pay livestock sellers when payment was due.

39. Defendant Marquette is a secured lender of Defendant Kane and manages Kane's cash accounts, including its receivables which are subject to Plaintiffs' claims as trust beneficiaries and as statutory lien holders. Marquette has used these proceeds to repay itself. Marquette claims a perfected security interest in certain assets of Kane that are subject to the PASA statutory trust.

40. The claims of Marquette are adverse to and conflicting with the claims of Plaintiffs.

41. For some time, Marquette has been on inquiry and actual notice that its lending customer, Kane, was not maintaining sufficient PASA trust assets freely available to pay its PASA creditors in a timely fashion. Such inquiry notice dates back to at least January 2017, when the Kane entered into the Consent Decree described above.

42. On or about July 5, 2018, Kane, Marquette, and most of the Plaintiffs signed a Term Sheet concerning the operations of Kane (the "Term Sheet"). Pursuant to the Term Sheet, Chris Daniel, an individual who has experience in the packing plant industry, was named and installed as "Chief Restructuring Officer" (the "CRO") of Kane. Among other agreements, the Term Sheet provided:

> Kane Beef shall, at its sole cost and expense, retain the services of Chris Daniel (the "Chief Restructuring Officer, also the "CRO"), who shall assume such duties on the Effective Date. The CRO shall: (i) report to all Parties; (ii) assume day to day operating responsibilities; (iii) cause Kane Beefs operations, from the Effective Date forward, to be in full compliance with the Packers and Stockyards Act of 1921 (the "PSA"); (iv) use his best efforts to bring Kane's cattle purchases made prior to the Effective Date in compliance with the payment provisions of the PSA; (v) cause all other of Kane Beefs operations to continue to be in compliance with all other applicable provisions of the PSA; and (vi) act independently and in the best interests of the creditors of Kane Beef existing as of the Effective Date and not at the direction of any employee or representative of Kane Beef. Notwithstanding the foregoing, the CRO shall not have the authority to take the following actions without providing at least ten (10) days' written notice to Kane Beefs existing managers, who are: (1) Alfredo Fernandez; (2) Manuel Fernandez; and (3) Chuck Jackson (the "Kane Managers"), and providing the Kane Managers a reasonable opportunity to consult with the CRO with respect to such proposed actions: (i) voluntarily consenting to the appointment of a receiver and (ii) voluntarily petitioning for bankruptcy. Furthermore, the CRO shall not approve or adopt, outside of a bankruptcy proceeding, a plan of merger through either a sale of substantially all of the assets of Kane Beef or a disposition of a majority of the voting interests in Kane Beef without the affirmative vote of a majority of the Kane Managers.

11

43. On a regular basis, customers of Kane paid money to Kane which was deposited into a depository bank, believed to be BBVA Compass Bank, which was then forwarded electronically to Marquette. The customers of Kane who made these payments were receiving trust assets of Plaintiffs, primarily meat and boxed beef, and made payments of trust assets in return. The payments were trust funds of which Plaintiffs are beneficiaries and constitute collateral of Plaintiffs' statutory liens. (These parties will be collectively referred to as "Customers.")

## IV. FIRST CAUSE OF ACTION
### (Violations of the Packers and Stockyards Act)

44. Plaintiffs reallege and incorporates by reference the allegations contained at paragraphs 1 through 43 inclusive, of this Complaint, as though set forth herein.

45. The acts and omissions of Defendant Kane constitutes violations of the Packers and Stockyards Act. See 7U.S.C.§181 *et seq*. (the "PSA").

46. Plaintiffs have been damaged by the violations of the PSA.

## V. SECOND CAUSE OF ACTION
### (Breach of Contract)

47. Plaintiffs reallege and incorporates by reference the allegations contained at paragraphs 1 through 46 inclusive, of this Complaint, as though set forth herein.

48. Defendant Kane has failed to perform its contractual duties pursuant to outstanding contracts with Plaintiffs and is, therefore, in breach of its contract with Plaintiffs.

49. Plaintiffs have been damaged by Kane's breaches of contract and seek damages associated with such breaches.

## VI.  THIRD CAUSE OF ACTION
### (Declaratory Action)

50. Plaintiffs hereby realleges and incorporates by reference paragraphs 1 through 49 inclusive, of this Complaint as though fully set forth herein.

51. Plaintiffs seek a declaratory judgment against all Defendants pursuant to 28 U.S.C. §2201 & 2202.  Specifically, Plaintiffs request the Court to declare that Plaintiffs' claims to the Trust Assets and the Collateral are correctly stated in the amounts indicated in Exhibit A and further declaring that such claims are superior and prior to any other claimant to these assets, including the assets claimed as collateral by Marquette.  Further, Plaintiffs seek a declaration of the rights, if any, of the unknown John Doe defendants.

52. Plaintiffs also seek a declaratory judgment certifying and approving the 2018 PSA Trust Claims Chart and the claims stated therein as qualified by the USDA and set for in its Notice of Statutory Claims Received by the USDA [D.E. 146].  See attached Exhibit "A."

53. Under the PSA all unsegregated assets of the Debtor remain subject to the PSA trust which is not part of the estate of the Debtors.  Despite repeated demands from the Plaintiffs, the Debtors have refused to turnover assets equal to the value of the PSA trust assets held for the benefit of Plaintiffs.  Such property belongs to Plaintiffs and possible the John Doe Defendants and not the Debtor or Marquette.  As such, Plaintiffs request that the Court declare the existence and extent of the PSA claims of the Plaintiffs and the John Doe Defendants and declare that all assets of Debtor are PSA trust assets to be held for the benefit of Plaintiffs and such John Doe defendants who may be determined to be beneficiaries of the PSA trust of Debtor.

### VII.  FIFTH CAUSE OF ACTION
### PAYMENT OF PSA TRUST CLAIMS FROM THE ASSETS OF THE DEBTOR

54.  Plaintiffs hereby re-allege and incorporate by reference paragraphs 1 through 53, inclusive, of this Complaint as though fully set forth herein.

55.  Plaintiffs are entitled to an order from this Court for payment of the PSA trust claims of them and of the John Doe defendants described in the First, Second, Third and Fourth Causes of action from the cash, accounts receivable and other assets of the Debtor, less a reserve such expenses of the Debtor that are allowable out of PSA trust assets.

**(For Attorneys' Fees and Costs)**

56.  Plaintiffs hereby re-allege and incorporates by reference paragraphs 1 through 55, inclusive, of this Complaint as though fully set forth herein.

57.  Plaintiffs have engaged the services of the undersigned attorneys to file this action and have agreed to pay them a reasonable fee for their services. Pursuant to the PSA, Plaintiffs seek and are entitled to their attorney's fees and costs associated with this action.

### CONCLUSION AND PRAYER

WHEREFORE, Plaintiffs respectfully pray that this Court issue an order of judgment against Defendants as follows:

A.  Granting a judgment in favor of Plaintiffs and the unknown John Doe defendants as to the 2018 claims, and against Defendants in the aggregate principal amount of at least $31,550,489.78, plus statutory damages, plus interest at the highest permissible rate from the date the obligation became due and payable to Plaintiffs plus an award of reasonable attorneys' fees incurred herein, and for costs of this action;

B.  Declaring and directing that the priority of Plaintiffs' claims herein are superior and senior to all other creditors;

C. Enjoining, until the entry of the relief herein requested and compliance therewith, Defendants, their agents, employees and representatives from in any way, directly or indirectly transferring, assigning or otherwise disposing of the above-described trust fund, or any interest therein, in whole or in part, absolutely or as security;

D. Declaring that Plaintiffs and the John Doe defendants are PSA trust beneficiaries of Defendants with valid PSA trust claims in the amount of $31,550,489.78, plus pre-judgment and post-judgment interest, costs and attorneys' fees; and

E. Ordering the payment of the Plaintiffs' and the John Doe Defendants PSA trust claims out of the assets of the Debtor, less such reserve as ordered by the Court for allowance of expenses.

F. Granting Plaintiffs reasonable costs and expenses, including attorneys' fees in this action, and such other relief, whether in law or in equity, as this Court deems just and proper.

Dated: April 8, 2019.

Respectfully submitted

NAMAN HOWELL SMITH & LESS, PLLC

/s/ David L. LeBas
David L. LeBas – SBN 12098600
8310 N. Capital of Texas Highway, Suite 490
Austin, TX 78731
Telephone (512) 479-0300
Facsimile (512) 474-1901
dlebas@neimanhowell.com

And

STOKES LAW OFFICE LLP

/s/ Craig A. Stokes
Craig A. Stokes – SBN 19267700
David L. Jones – SBN 24002370
3330 Oakwell Court, Suite 225

San Antonio, TX 78218
Telephone (210) 804-0011
Facsimile (210) 822-2595
cstokes@stokeslawoffice.com

And

*/s/* Johnie J. Patterson_____
Johnie J. Patterson – SBN 15601700
Walker & Patterson, P.C.
PO Box 61301
Houston, TX 77208
Telephone (713) 956-5577
Facsimile (713) 956-5570
jjp@walkerandpatterson.com

*Counsel for Amigos Beef Cattle Company, LLC, Cal-Tex Feedyard, Inc., Carrizo Feeders, Ltd., Chaparral Feeders, Inc., Charco Cattle Feeders, Dawn Custom Cattle Feeders, Inc., Driskill Feedyard, Inc., Graham Land and Cattle Company, Immel Feedyard, Lipan Cattle Feeders, LLC, Live Oak Feedlot, Inc., Livestock Investors, Ltd. d/b/a A Bar G Feedyard, Lubbock Feeders, LLC, Luckey Custom Feedlot, Inc., McDonald Bar 6 Feedlot, Inc., Morales Feed Lots, Inc., Runnels Peters Feedyards, LLC, Santa Fe Feeders, Ltd., Shearrer Feedlot, Inc., Starr Feedyards, Ltd., and Texana Feeders, Ltd.*

And

SPROUSE SHRADER SMITH, PLLC

*/s/* John Massouh_____
John Massouh – SBN 24026866
PO Box 15008
Amarillo, TX 79105
Telephone (806) 468-3337
Facsimile (806) 373-3454
John.massouh@sprouselaw.com

*Counsel for Gateway Cattle Co., Southern Livestock, Inc., Grisham Farms, Euler Hermes North America Insurance Company, and Coface North America*