**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**CORPUS CHRISTI DIVISION**

| | | |
|---|---|---|
| **In re:** | § | |
| | § | **Case No. 19-20020** |
| **SAM KANE BEEF PROCESSORS, LLC,**[1] | § | |
| | § | **Chapter 11** |
| **Debtor.** | § | |

**CHAPTER 11 PLAN AND RELATED DISCLOSURE STATEMENT**

**Okin & Adams LLP**
Matthew S. Okin
David L. Curry, Jr.
1113 Vine Street, Suite 201
Houston, Texas 77002
(713) 228-4100
(888) 865-2118 (facsimile)
**Counsel for Debtor and Debtor-in-Possession**

---

[1] The Debtor in this Chapter 11 Case, along with the last four digits of the Debtor's federal tax identification number, is: Sam Kane Beef Processors, LLC (0433).

# Table of Contents

**Article 1-INTRODUCTION** ..........................................................................................................1

**Article 2-IMPORTANT DATES AND DISCLAIMERS** ............................................................1

**Article 3-DEFINED TERMS AND RULES OF INTERPRETATION** .....................................2
   3.1 Scope of Defined Terms; Rules of Construction ....................................................................2
   3.2 Definitions ............................................................................................................................3
**Article 4-INFORMATION RELATED TO THE DEBTOR AND THE PROPOSED PLAN12**
   4.1 The Debtor's Former Business..............................................................................................12
   4.2 Events Leading to the Chapter Case......................................................................................12
   4.3 Retention of Professionals....................................................................................................14
   4.4 Transactions and Litigation During the Chapter 11 Case .....................................................14
   4.5 Best Interest of the Creditors................................................................................................18
   4.6 Tax Concerns........................................................................................................................19
**Article 5-ADMINISTRATIVE CLAIMS, PRIORITY TAX CLAIMS, AND STATORY
FEES**........................................................................................................................................**20**
   5.1 Administrative Claims..........................................................................................................21
   5.2 Priority Tax Claims ..............................................................................................................21
   5.3 Statutory Fees.......................................................................................................................21
   5.4 Professional Fee Claims .......................................................................................................21
**Article 6-CLASSIFICATION OF CLAIMS, INTERESTS, AND VOTING** ........................**22**
   6.1 Impaired Classes ..................................................................................................................22
   6.2 Controversy Concerning Classification, Impairment or Voting Rights ...............................22
**Article 7-TREATMENT OF IMPAIRED CLAIMS** ..............................................................**23**
   7.1 Determination of Allowed Amounts .....................................................................................23
   7.2 Class 1 – PSA Claims...........................................................................................................23
   7.3 Class 2 – Rabo Secured Claim .............................................................................................24
   7.4 Class 3 – Marquette Secured Claim ......................................................................................24
   7.5 Class 4 – 543 Claims ............................................................................................................24
   7.6 Class 5 – Non-Tax Priority Claims .......................................................................................24
   7.7 Class 6 – General Unsecured Claims ....................................................................................25
   7.8 Class 7 – Subordinated Claims of Non-Insiders ...................................................................25
   7.9 Class 8 – Insider Subordinated Claims .................................................................................25
   7.10 Class 9 – Equity Interests ...................................................................................................25

**Article 8-MEANS OF IMPLEMENTATION** ................................................................**25**

8.1 Approval of the 543 Settlement ........................................................................25

8.2 Transfers of Property.........................................................................................25

8.3 No Distribution...................................................................................................26

8.4 Discharge of Sole Member, Winddown of Receivership...................................26

8.5 The Liquidating Debtor .....................................................................................26

8.6 The Liquidating Trust.........................................................................................26

**Article 9-CLAIM/INTEREST OBJECTION PROCEDURES, TREATMENT OF DISPUTED CLAIMS/INTERESTS AND PROCEDURE FOR ASSERTING CLAIMS** ....**28**

9.1 Objection Process..............................................................................................28

9.2 Disputed Claims Reserve .................................................................................28

9.3 Distributions to Holders of Disputed Claims ....................................................28

9.4 Disallowance of Late Filed Proofs of Claim .....................................................29

9.5 Provisions Governing Distributions ...................................................................29

**Article 10-EXECUTORY CONTRACTS AND UNEXPIRED LEASES** ...............................**29**

10.1 Rejection of Executory Contracts and Unexpired Leases ................................29

10.2 Claims Based on Rejection of Executory Contracts and Unexpired Leases....................29

**Article 11-MEANS OF IMPLEMENTATION** ...........................................................**30**

11.1 Legally Binding Effect .......................................................................................30

11.2 Limited Discharge of Debtor and Injunction .....................................................30

11.3 Limited Protection of Certain Parties in Interest...............................................30

11.4 Indemnification .................................................................................................31

11.5 Preservation of Claims and Rights ...................................................................31

**Article 12-RETENTION OF JURISDICTION**............................................................**32**

12.1 Exclusive Bankruptcy Court Jurisdiction...........................................................32

**Article 13-CONDITIONS TO CONFIRMATION OF PLAN**..........................................**33**

13.1 Conditions Precedent to Effective Date ............................................................33

13.2 Annulment of Plan if Conditions Not Waived or Satisfied.................................33

**Article 14-NOTICE PROVISIONS**.........................................................................**33**

14.1 Notices..............................................................................................................33

14.2 Limitation on Notice ..........................................................................................34

**Article 15-MISCELLANEOUS PROVISIONS** .........................................................**34**

15.1 Application of Rule 9006 ...................................................................................35

15.2 Directive to State Agencies ..............................................................................35

15.3 Warranty of Transfers .......................................................................................35

15.4 Compliance with Tax Requirements ..................................................................35

15.5 Amendment of the Plan ........................................................................................35

15.6 Timing of Distributions ......................................................................................35

15.7 Filing of Documents in Public Records .............................................................35

15.8 Right to Seek Further Orders .............................................................................35

15.9 Regulatory Approvals .........................................................................................35

15.10 Withdrawal of Plan ..........................................................................................35

15.11 Due Authorization by Creditors .......................................................................36

15.12 Filing of Additional Documentation ................................................................36

15.13 Implementation .................................................................................................36

15.14 Governing Law .................................................................................................36

15.15 Conflict .............................................................................................................36

15.16 Severability ......................................................................................................36

15.17 Further Action ..................................................................................................36

**Article 1**
**INTRODUCTION**

The Debtor proposes the following chapter 11 plan (this "**Plan**") for the resolution of outstanding Claims against, Interests in, and Expenses incurred by the Debtor.  The Debtor is the proponent of this Plan (the "**Plan Proponent**") within the meaning of Bankruptcy Code § 1129.

As discussed herein in greater detail, during this Chapter 11 Case, the Debtor sold substantially all of its assets – generating insufficient proceeds to pay all secured Creditors' Claims.  The Debtor then entered into a settlement agreement with certain Creditors alleging trust claims in and to all of the Debtor's remaining assets and with the Debtor's remaining secured Creditors.  This Plan proposes to distribute available proceeds of this settlement to pay administrative expense Claimants, priority unsecured Creditors, unsecured Creditors, and subordinated Creditors.  The Debtor anticipates that there remains sufficient Available Cash to pay administrative expense claims in full.  The remainder of the Debtor's assets shall be distributed first to pay priority unsecured Creditor Claims, then unsecured and subordinated Creditor claims.

This document also encompasses the disclosure statement (the "**Disclosure Statement**") with respect to the Plan.  No materials other than this Plan (including the Disclosure Statement included within this Plan) and any Exhibits and schedules attached hereto or referenced herein have been authorized by the Plan Proponent for use in soliciting acceptances or rejections of this Plan.  All references in the remainder of this document to "this Plan" will be deemed to be references to "this Plan and the Disclosure Statement included within this Plan."

This Plan contains many capitalized terms in addition to the terms defined above.  The definitions for the remaining capitalized terms can be found in Section 3.2.

ALL HOLDERS OF CLAIMS OR INTERESTS ENTITLED TO VOTE TO ACCEPT OR REJECT THIS PLAN ARE ENCOURAGED TO READ THIS PLAN CAREFULLY AND, IN ITS ENTIRETY, BUT PARTICULARLY INCLUDING THE RELEASES, EXCULPATIONS, AND INJUNCTIONS SET FORTH IN ARTICLE 11, BEFORE VOTING ON THIS PLAN.

The Disclosure Statement included in this Plan has been conditionally approved by the Bankruptcy Court.  Final approval (or disapproval) will occur on the same day as the hearing on the Confirmation of this Plan. *See Order Granting Debtor's Emergency Motion for Entry of an Order (i) Conditionally Approving the Combined Disclosure Statement and Plan; (ii) Setting a Date for Final Hearing on the Combined Disclosure and Plan; (iii) Approving the Form and Manner of Solicitation Materials; (iv) Establishing Procedures for Soliciting and Voting on the Combined Disclosure Statement and Plan; and (v) Establishing an Administrative Claim Bar Date and Approving the Form and Manner of Notice of the Administrative Claim Bar Date* [ECF # *].

**Article 2**
**IMPORTANT DATES AND DISCLAIMERS**

- Date by which Ballots must be received: **October 9, 2019 at 12:00 p.m., prevailing Central Time**.
- Deadline by which objections to the Disclosure Statement and to Confirmation of the

Plan must be filed and served: **October 9, 2019 at 12:00 p.m., prevailing Central Time.**

- Hearing on final approval of the Disclosure Statement and on Confirmation of the Plan: **October 11, 2019 at 2:30 p.m., prevailing Central Time.**

The statements and estimated Distributions contained in this Plan, including the Disclosure Statement included in this Plan, have been made as of the date of this Plan unless otherwise specified.  Holders of Claims and Interests reviewing this Plan should not infer at the time of such review that there have been no changes in the facts set forth in this Plan since the date of this Plan or the dates otherwise noted.  Each holder of a Claim or Interest entitled to vote on the Plan should carefully review this Plan in its entirety before casting a ballot. THIS PLAN AND DISCLOSURE STATEMENT DOES NOT CONSTITUTE LEGAL, BUSINESS, FINANCIAL, OR TAX ADVICE. ENTITIES DESIRING SUCH ADVICE OR ANY OTHER ADVICE SHOULD CONSULT WITH THEIR OWN ADVISORS.

The Bankruptcy Court has scheduled the Confirmation Hearing, together with the hearing to approve the Disclosure Statement, to commence on **October 11, 2019 at 2:30 p.m. prevailing Central Time, in the United States Bankruptcy Court, 515 Rusk, Courtroom 400, Houston, Texas**.  The Confirmation Hearing may be adjourned from time to time by the Bankruptcy Court without further notice except for an announcement of the adjourned date made at the Confirmation Hearing or any adjournment of the Confirmation Hearing.

Objections to the Disclosure Statement and/or to Confirmation of the Plan must be filed and served on or before **12:00 p.m. prevailing Central Time on October 9, 2019**.  Unless objections are timely served and filed, they might not be considered by the Bankruptcy Court.

## Article 3
### DEFINED TERMS AND RULES OF INTERPRETATION

3.1    <u>Scope of Defined Terms; Rules of Construction</u>.  For purposes of this Plan, except as expressly defined elsewhere in this Plan or unless the context otherwise requires, all capitalized terms used herein shall have the meanings ascribed to them in either ARTICLE 1 or Section 3.2, as the case may be.

Unless otherwise specified, all section, article, schedule or exhibit references in this Plan are to the respective section in, article of, or schedule or exhibit to, this Plan, as same may be amended, waived, or modified from time to time.  The schedules and exhibits to this Plan are hereby incorporated herein by reference as if fully set forth herein.  Except as otherwise expressly provided herein, a term used herein that is not defined herein shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules.  The words "herein," "hereof" and "hereunder" and other words of similar import refer to this Plan as a whole and not to any particular section, subsection or clause contained in this Plan, unless the context requires otherwise.  Whenever from the context it appears appropriate, each term stated in either the singular or the plural includes the singular and the plural, and pronouns stated in the masculine, feminine or neuter gender include the masculine, feminine and the neuter.  The article headings contained in the Plan are for reference purposes only and shall not affect in any way the meaning or interpretation of the Plan.

The rules of construction contained in § 102 of the Bankruptcy Code shall apply to the construction of this Plan, except for § 102(5) of the Bankruptcy Code. The headings in this Plan are for convenience of reference only and shall not limit or otherwise affect the provisions hereof.

3.2     Definitions.  As used in the Plan, the following terms shall have the respective meanings specified below. Any term used in the Plan not defined below or herein shall be interpreted in accordance with the Rules of Construction set forth in Article 3 of this Plan.

3.2.1     506(c) Motion.  The Debtor's *Motion Pursuant to 11 U.S.C. §§ 105 and 506(c) for Entry of an Order (I) Surcharging the Collateral/Property of the Debtor's Creditors, and (II) Granting Related Relief* [ECF # 225].

3.2.2     543 Claims.  Any claim for goods or services provided to the Receiver or the Debtor in connection with the Receivership or the Debtor's operations during the Receivership.

3.2.3     543 Motion.  *Motion Pursuant to 11 U.S.C. §§ 543 and 506(c) for Entry of an Order (I) Deeming the Receiver's Accounting and Reporting Requirements Satisfied or Waived; (II) Protecting Prepetition Receivership Creditors; (III) Compensating the Receiver and His Professionals for Receivership Expenses; (IV) Approving Procedures and Notice to Potential Receivership Creditors; (V) Scheduling a Final Hearing; and (VI) Granting Related Relief* [ECF # 185].

3.2.4     543 Settlement.  That agreement by and among the Debtor, Marquette, and certain Feeders, including the TCF Feeders, announced on the record during the July 17, 2019 hearing and more fully described in the 543 Settlement Agreement.

3.2.5     543 Settlement Agreement.  That *Settlement & Release Agreement* by and among the Debtor, the Signatory Feeders and Marquette.  A true and correct copy of the draft 543 Settlement Agreement is attached hereto as Exhibit A.

3.2.6     2019 Bond Proceeds.  All Cash currently or previously held by the Debtor in that BBVA trust account pursuant to that *Trust Fund In Lieu of Bond* after payment of all valid and owing claims against the bond.

3.2.7     Administrative Claim. Any cost or expense of administration of the Chapter 11 Case incurred on or before the Effective Date entitled to priority under § 507(a)(1) and allowed under § 503(b) of the Bankruptcy Code, including without limitation, any actual and necessary expenses of preserving the Debtor's Estate, including wages, salaries or commissions for services rendered after the commencement of the Chapter 11 Case, certain taxes, fines and penalties, any actual and necessary post-petition expenses of operating the Debtor's business, certain post-petition indebtedness or obligations incurred by or assessed against the Debtor in connection with the conduct of its business, or for the acquisition or lease of property, or for providing services to the Debtor, including all allowances of compensation or reimbursement of expenses to the extent allowed by the Bankruptcy Court under the Bankruptcy Code, and any fees or charges assessed against the Debtor's Estate under chapter 5, title 28, United States Code. With respect to Administrative Claims which are allowed pursuant to §§ 503(b)(2), 503(b)(3), 503(b)(4),  503(b)(5),  503(b)(6),  503(b)(7),  503(b)(8)  or  503(b)(9),  there  shall  be  an

Administrative Claim against the Debtor only to the extent of and only after the entry of a Final Order approving such Administrative Claim following the filing of a motion or application prior to the Administrative Claim Bar Date.

   3.2.8  <u>Administrative Claim Bar Date</u>. The last day to file an application for allowance of an Administrative Claim (other than (i) quarterly U.S. Trustee fees and (ii) Professional Fee Claims) for any Administrative Claim arising on or before September 1, 2019, the Administrative Claim Bar Date shall be October 9, 2019 at 12:00 p.m. central. For claims arising after September 1, 2019, the Administrative Claim Bar Date shall be 15 days after the Effective Date unless otherwise established by a Final Order.

   3.2.9  <u>Allowed Claim</u>. Any Claim (i) which has been scheduled by the Debtor pursuant to Bankruptcy Rule 1007 and (a) is not scheduled as disputed, contingent or unliquidated, (b) as to which no Proof of Claim has been filed and (c) as to which no objection to such scheduled Claim has been filed; (ii) as to which a timely Proof of Claim has been filed as of the Bar Date and no objection thereto has been made; or (iii) that has been allowed by a Final Order.

   3.2.10  <u>Allowed Amount</u>. The amount of an Allowed Claim.

   3.2.11  <u>Automatic Stay</u>.  The stay provided pursuant to § 363 of the Bankruptcy Code.

   3.2.12  <u>Available Cash</u>. All Cash held by the Debtor or the Liquidating Trust on or after the Effective Date less (i) the Plan Reserve; and (ii) the Liquidating Trust Reserve.

   3.2.13  <u>Avoidance Action</u>. Any and all rights, claims and causes of action arising under any provision of chapter 5 of the Bankruptcy Code, including any state law claim made applicable under 11 U.S.C. § 544.

   3.2.14  <u>Bankruptcy Code</u>. Title 11 of the United States Code, as in effect on the Confirmation Date.

   3.2.15  <u>Bankruptcy Court</u>. The unit of the United States District Court for the Southern District of Texas, Corpus Christi Division, having jurisdiction over this Chapter 11 Case, or in the event such Court ceases to exercise jurisdiction over this Chapter 11 Case, such court or adjunct thereof that exercises jurisdiction over the Chapter 11 Case in lieu of the United States Bankruptcy Court for the Southern District of Texas, Corpus Christi Division, and any appellate or other court that is competent to exercise jurisdiction over the confirmation of this Plan.

   3.2.16  <u>Bankruptcy Rules</u>. The Federal Rules of Bankruptcy Procedure, as amended, and the Bankruptcy Local Rules for the Southern District of Texas, as applicable to these Chapter 11 Cases, each as in effect on the date of the event described herein.

   3.2.17  <u>Bar Date</u>. Pursuant to the Bar Date Order, May 15, 2019.

   3.2.18  <u>Bar Date Order</u>:  That *Order Granting Debtor's Expedited Motion for Entry of an Order (I) Setting General Bar Date and (II) Approving of the Form and Manner of*

*Notice Thereof* [ECF # 211].

3.2.19  <u>Business Day</u>. Any day other than a Saturday, Sunday or any other day on which commercial banks in Corpus Christi, Texas are required or authorized to close by law or executive order.

3.2.20  <u>Cash</u>. Legal tender of the United States of America, denominated in U.S. dollars, and equivalents thereof.

3.2.21  <u>Cash Sale</u>.  Shall have the meaning set forth in PSA § 196(c).

3.2.22  <u>Cattle Sellers</u>.  Shall mean any Person, whether real or fictitious, having received payment from the Debtor on account of the sale of Livestock by such Person to the Debtor during the periods set forth in § 548 of the Bankruptcy Code, and all parties which have represented or acted for them in any way, including without limitation the Texas Cattle Feeders Association, and all of these parties' officers, directors, shareholder, affiliates, agents, employees, attorneys, insurers, successors, assigns, and/or its representatives.

3.2.23  <u>Cause(s) of Action</u>.  Any Claim or cause of action, legal or equitable, now owned or hereafter acquired by the Debtor or the Liquidating Trust, whether arising under contract or tort, federal or state law, including but not limited to Avoidance Actions, whether commenced prior or subsequent to the Petition Date.

3.2.24  <u>Chapter 11 Case</u>. Case No. 19-20020, filed under chapter 11 of the Bankruptcy Code by the Debtor and pending before the Bankruptcy Court.

3.2.25  <u>Circle K Carve-Out</u>.  That amount provided to pay Debtor's attorneys' fees incurred in connection with the Circle K Transaction.

3.2.26  <u>Circle K Property</u>.  The real property described as "Lot Three (3) Block One (1), GUTH PARKSIDE ANNEX, an addition in the City of Corpus Christi, Texas as shown by map or plat thereof recorded in Volume 60, Page 33, Map Records of Nueces County, Texas."

3.2.27  <u>Circle K Proceeds</u>.  The Cash proceeds from the sale of the Circle K Transaction less the Circle K Carve-Out.

3.2.28  <u>Circle K Transaction</u>.  That transaction described in Section 4.4.2 of this Plan.

3.2.29  <u>Claim</u>. Any (i) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or (ii) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured.

3.2.30  <u>Claimant</u>. A Person asserting a Claim against the Debtor, the Debtor's property, or the Estate.

3.2.31 <u>Collected Receivables</u>. Shall refer to the combined amount of the Debtor Held Receivables and the Marquette Held Receivables.

3.2.32 <u>Confirmation Date</u>. The date upon which the Bankruptcy Court enters the Confirmation Order; provided however, that if the Confirmation Order or the consummation of the Plan is stayed pending appeal, then the Confirmation Date shall be the entry date of a Final Order vacating such stay or the date on which such stay expires and is no longer in effect.

3.2.33 <u>Confirmation Hearing</u>. The hearing to be conducted by the Bankruptcy Court to determine whether to approve the Plan.

3.2.34 <u>Confirmation Order</u>. The Order of the Bankruptcy Court approving and confirming the Plan in accordance with the provisions of chapter 11 of the Bankruptcy Code.

3.2.35 <u>Consent Order</u>. That *Decision Without Hearing by Reason Consent*, entered on January 12, 2017, against the Debtor by United States Department of Agriculture.

3.2.36 <u>Creditor</u>. Any Person that holds a Claim against the Debtor that arose or is deemed to have arisen on or before the Petition Date, including an Allowed Claim against the Debtor's Estate of a kind specified in §§ 502(g), 502(h) or 502(i) of the Bankruptcy Code.

3.2.37 <u>D&O Claims</u>. Any Claims or Rights of Action of the Debtor against its former officers, directors, managers or other insureds of the Debtor's directors' and officers' liability policies.

3.2.38 <u>Debtor</u>. Sam Kane Beef Processors, L.L.C.

3.2.39 <u>Debtor-in-Possession</u>. The Debtor in its capacity as debtor in possession pursuant to §§ 1107 and 1108 of the Bankruptcy Code.

3.2.40 <u>Debtor Held Receivables</u>. All Cash proceeds generated from the operation of the Debtor's business and collected directly by the Debtor, provided, however, that Debtor Held Receivables shall not include (i) the Circle K Proceeds, (ii) the 2019 Bond Proceeds, (iii) the Cash proceeds from the sale of substantially all of the Debtor's assets to JDH, or (iv) the Feeder Settlement Payment.

3.2.41 <u>Disputed Claim</u>. A Claim against the Debtor as to which an objection has been filed on or before the deadline for objecting to a Claim and which objection has not been withdrawn, settled or otherwise resolved by Final Order.

3.2.42 <u>Disputed Claims Reserve</u>. A reserve to be held in trust for the benefit of holders of Disputed Claims and Disputed Interests in accordance with the provisions of the Plan.

3.2.43 <u>Distribution</u>. The Cash and other property required by the Plan to be distributed to the holders of Allowed Claims and Allowed Interests.

3.2.44 <u>District Court</u>. The United States District Court for the Southern District of Texas.

3.2.45 <u>District Court Case</u>. *United States of America v. Sam Kane Beef*

6

*Processors, LLC*, Case No. 2:18-cv-00171 in the United States District Court for the Southern District of Texas, Corpus Christi Division.

3.2.46  <u>Effective Date</u>. The first Business Day following the date that is fourteen days after the Confirmation Date, provided that no stay of the Confirmation Order is entered. If a stay is entered, the Effective Date shall be the first Business Day after such stay expires or is otherwise terminated, or the first Business Day following the date that is fourteen days after the date that the Confirmation Order is entered, whichever is later. The Effective Date may be extended by the Debtor in its sole discretion.

3.2.47  <u>Equity Interest or Interest</u>. Equity Interest or Interest shall have the meaning ascribed to "equity security" in § 101(16) of the Bankruptcy Code.

3.2.48  <u>Equity Interest Holder or Interest Holder</u>. Equity Interest Holder or Interest Holder shall have the meaning ascribed to "equity security holder" in § 101(17) of the Bankruptcy Code.

3.2.49  <u>Estate</u>. The estate created upon the filing by the Debtor of the Chapter 11 Case pursuant to § 541 of the Bankruptcy Code, together with all rights, claims and interests pertaining thereto.

3.2.50  <u>Excepted Claims</u>.  Any and all claims against a Cattle Seller for fraud, fraudulent inducement, misrepresentation, breach of fiduciary duty, aiding and abetting breach of fiduciary duty, civil conspiracy, or other claims arising from or related to claims against the Debtor's former officers, directors, members, employees, agents or representatives.

3.2.51  <u>Factoring Documents</u>.  Those documents and other instruments evidencing Marquette's transactions with the Debtor described in Exhibit A to the 543 Settlement Agreement.

3.2.52  <u>Feeder Claims</u>.  Shall include: (1) all of the Debtor's pre-petition Causes of Action; and (2) those Avoidance Actions against any and all Cattle Sellers; provided, however, that the Feeder Claims shall not include: (i) any claims against Rabo; (ii) any Avoidance Actions against any Person other than a Cattle Seller or, (iii) any Released Claims.

3.2.53  <u>Feeder Settlement Payment</u>.  As defined in the 543 Settlement, one million eight hundred thousand dollars and no cents ($1,800,000.00).

3.2.54  <u>Final Order</u>. An order or judgment which has not been reversed, vacated or stayed and as to which (a) the time to appeal, petition for *certiorari* or move for new trial, re-argument or rehearing has expired and to which no appeal, petition for *certiorari* or other proceedings for a new trial, re-argument or rehearing shall then be pending, or (b) if an appeal, writ of *certiorari*, new trial, re-argument or rehearing thereof has been sought, such order or judgment of the Bankruptcy Court shall have been affirmed by the highest court to which such order was appealed, or *certiorari* shall have been denied or a new trial, re-argument or rehearing shall have been denied or resulted in no modification of such order, and the time to take any further appeal, petition for *certiorari* or move for a new trial, re-argument or rehearing shall have expired.

3.2.55  <u>General Unsecured Claim</u>. A Claim other than a Secured Claim, an

Administrative Claim, a Priority Claim, or a Subordinated Claim.

  3.2.56 <u>Gordian</u>.  Gordian Group, LLC.

  3.2.57 <u>JDH</u>.  JDH Capital Company.

  3.2.58 <u>JDH Transaction</u>.  That transaction by and between the Debtor and JDH described in Section 4.4.1 of this Plan.

  3.2.59 <u>Lien</u>. A charge against or interest in property to secure payment of a debt or performance of an obligation which has not been avoided or invalidated under any provision of the Bankruptcy Code or other applicable law.

  3.2.60 <u>Liquidating Debtor</u>. As of the Effective Date of the Plan, the Debtor as reorganized under the terms of this Plan.

  3.2.61 <u>Liquidating Trust</u>.  The trust established pursuant to Section 8.5 of this Plan.

  3.2.62 <u>Liquidating Trust Assets</u>.  The Liquidating Trust Assets shall include all property of the Debtor or the Estate on the Effective Date, including but not limited to all Rights of Action and all of the Debtor's rights under the 543 Settlement Agreement, provided, however, that the Liquidating Trust Assets shall not include Released Claims or the Plan Reserve.  For the avoidance of doubt, the Liquidating Trust Assets shall include Feeder Claims, except Released Claims, provided that control of and standing to pursue the same shall be governed pursuant to Section 7.2.3 herein.

  3.2.63 <u>Liquidating Trust Reserve</u>.  On the Effective Date, the Liquidating Trustee shall reserve an amount sufficient for taxes, assessments and other expenses of administration of the Liquidating Trust (including, without limitation, professional fees) as may be necessary and appropriate for the proper operation of matters incident to the affairs of the Liquidating Trust, but in no event shall such amount exceed $75,000.00.

  3.2.64 <u>Livestock</u>.  Shall have the meaning set forth in PSA § 182(4).

  3.2.65 <u>Marquette</u>.  Marquette Transportation Finance, LLC.

  3.2.66 <u>Marquette Funds</u>.  Collectively, the Circle K Proceeds and the 2019 Bond Proceeds.

  3.2.67 <u>Marquette Held Receivables</u>. All Debtor receivable proceeds received during by Marquette during the Bankruptcy, representing funds held by Marquette from collection of the Debtor's receivables post-petition.

  3.2.68 <u>Marquette Remainder Claim</u>. The Allowed Amount of the Marquette Secured Claim after payment of the Marquette Funds.

  3.2.69 <u>Marquette Secured Claim</u>.  The indebtedness arising pursuant to and under the Factoring Documents.

3.2.70 <u>Marquette Settlement Payment</u>. As defined in the 543 Settlement, one million dollars and no cents ($1,000,000.00).

3.2.71 <u>Payment Date</u>. One of more dates identified by the Plan Agent, in his capacity as Plan Agent or Liquidating Trustee, as the case may be, on which Distributions are made to holders of Allowed Claims from Available Cash.

3.2.72 <u>Person</u>. An individual, a corporation, a partnership, an association, a joint stock company, a joint venture, an estate, a trust, an unincorporated association or organization, a governmental unit (as that term is defined in the Bankruptcy Code) or any agency or subdivision thereof or any other entity.

3.2.73 <u>Petition Date</u>. January 22, 2019, the date on which the Debtor filed the voluntary chapter 11 petition commencing this Chapter 11 Case.

3.2.74 <u>Plan Agent</u>. Douglas J. Brickley, any successor Plan Agent appointed pursuant to the terms of this Plan, or such other Person as appointed by the Bankruptcy Court.

3.2.75 <u>Plan Ballot</u>. The form of ballot that the Debtor will transmit to Creditors and Interest Holders who are, or may be, entitled to vote on the Plan.

3.2.76 <u>Plan Documents</u>. Any and all documents contemplated to be executed in connection with this Plan.

3.2.77 <u>Plan Reserve</u>.  On the Effective Date, the Plan Agent shall reserve Cash in an amount sufficient to satisfy Allowed Administrative Claims, Allowed Priority Tax Claims, and such reserves for taxes, assessments and other expenses of administration of the Liquidating Debtor (including, without limitation, Statutory Fees) as may be necessary and appropriate for the proper operation of matters incident to the affairs of the Liquidating Debtor, but in no event shall such amount exceed $2,125,000.00.

3.2.78 <u>Priority Claim</u>. Any Claim to the extent entitled to priority in payment under § 507(a) of the Bankruptcy Code.

3.2.79 <u>Priority Non-Tax Claim</u>. Any Claim (other than an Administrative Claim or a Priority Tax Claim) to the extent entitled to priority in payment under § 507(a) of the Bankruptcy Code including, but not limited to, (i) Claims of an employee of the Debtor for wages, salaries, or commissions, including vacation, severance or sick leave pay, earned within one hundred and eighty (180) days prior to the Petition Date (to the extent of $10,950 per employee) as set forth in § 507(a)(4) of the Bankruptcy Code; (ii) Claims for contribution to an employee benefit plan as set forth in § 507(a)(5) of the Bankruptcy Code; (iii) Claims for deposits of up to $2,425 placed by consumers with the Debtor as set forth in § 507(a)(7) of the Bankruptcy Code; (iv) Claims based upon any commitment by the Debtor to a Federal depository institutions regulatory agency to maintain the capital of an insured depository institution as set forth in § 507(a)(9); and (v) Claims for death or personal injury resulting from the operation of a motor vehicle or vessel if such operation was unlawful because the Debtor were intoxicated from using alcohol, a drug or another substance as set forth in § 507(a)(10).

3.2.80 <u>Priority Tax Claim</u>. Any Claim entitled to priority in payment under §

507(a)(8) of the Bankruptcy Code. A Claim based upon an *ad valorem* tax that is secured by a statutory Lien is a Priority Tax Claim.

3.2.81  <u>Professional Fee Claims</u>. Administrative Claims for Professional Fees from the Petition Date through the Effective Date, as well as fees, expenses and other reimbursable costs incurred after the Effective Date in connection with the preparation and filing of fee applications with the Bankruptcy Court in respect of Professional Fee Claims.

3.2.82  <u>Professional Fees</u>. All fees, costs and expenses incurred in these Chapter 11 Cases by any professional Person (within the meaning of §§ 327, 328 or 1103 of the Bankruptcy Code or otherwise) and awarded by Final Order of the Bankruptcy Court pursuant to §§ 330 or 503(b) or any other provision of the Bankruptcy Code and any professional fees, costs and expenses which have been allowed pursuant to this Plan or by Final Order of the Bankruptcy Court.

3.2.83  <u>Professionals</u>.  Any Court-approved professional Person, including lawyers, accountants, financial advisors, investment bankers and restructuring advisors, employed by the Debtor in this Chapter 11 Case at any time before the Effective Date.

3.2.84  <u>Protected Person</u>.  Protected Persons shall include the Debtor, any of its employees, officers, directors, agents, representatives, affiliates, attorneys, financial advisors, or any other Professionals employed by any the Debtor, its officers, directors, employees and representatives, the Sole Member, the Plan Agent or any of his employees, officers, directors, agents, representatives, affiliates, attorneys, financial advisors, or any other professional Person employed by them, and each Professional for the Debtor or any of their employees, officers, directors, agents, representatives, affiliates, attorneys, financial advisors, or any other professional Persons employed by any of them.

3.2.85  <u>Pro Rata</u>. The proportion that the dollar amount of an Allowed Claim or Allowed Interest in a Class bears to the aggregate amount of all Allowed Claims or Allowed Interests in such Class.

3.2.86  <u>PSA</u>.  7 U.S.C. § 181 *et seq.*, the Packers and Stockyards Act of 1921, as amended.

3.2.87  <u>PSA Trust</u>.  Statutory trust established pursuant to PSA § 196.

3.2.88  <u>PSA Trust Claims</u>.  Any Claim by a Feeder made pursuant to the PSA arising from the Cash Sale of Livestock to the Debtor, which claim has been preserved in accordance with PSA § 196(b).

3.2.89  <u>PSA Trust Claimant</u>.  A Person asserting a PSA Trust Claim against the Debtor, the Debtor's property, or the Estate.

3.2.90  <u>Rabo</u>.  Rabo Agrifinance, Inc.

3.2.91  <u>Receiver</u>.  Hon. Richard S. Schmidt, ret.

3.2.92  <u>Receivership</u>.  The assets and business of the Debtor as held or operated

under the authority of the Receiver.

3.2.93  Receivership Finance Stipulation.  That certain Stipulation and Agreement Regarding Receivership Financing, which agreement specifically incorporates that Amendment Six to Amended and Restated MCF Account Assignment and Security Agreement by and between Marquette and the Debtor.

3.2.94  Receivership Order.  The *Order Appointing Receiver* [ECF # 45] entered on October 5, 2018 in the District Court Case appointing the Receiver.

3.2.95  Released Claims.  Any and all Claims or Rights of Action released pursuant to this Plan or the 543 Settlement.

3.2.96  Rights of Action. Includes (a) any avoidance, recovery, subordination or other action of the Debtor, the Estate, the Liquidating Debtor, or the Liquidating Trust, (b) any Cause of Action of the Debtor, the Estate, the Liquidating Debtor, or the Liquidating Trust, (c) any objection or other challenge to a Claim, and (d) any objection or other challenge to an Interest.

3.2.97  Secured Claim. A Claim to the extent of the value, as may be determined by the Bankruptcy Court pursuant to § 506(a) of the Bankruptcy Code, of any interest in property of the Debtor's Estate securing such Claim, or any Claim to the extent that it is subject to setoff under § 553 of the Bankruptcy Code. To the extent that the value of such interest is less than the amount of the Claim which has the benefit of such security, such Claim is a Deficiency Claim. Notwithstanding anything to the contrary herein, Priority Tax Claims which are secured by a statutory Lien on real property are Priority Claims.

3.2.98  Signatory Feeders.  Those Feeders designated as signatory parties to the 543 Settlement Agreement.

3.2.99  Sole Member.  Richard Schmidt as provided in [ECF # 134].

3.2.100 Statutory Fees.  Such fees as may be payable pursuant to 28 U.S.C. § 1930 and Section 5.3 of this Plan.

3.2.101  TCF Feeders.  Amigos Beef Cattle Company, LLC, Cal-Tex Feedyard, Inc., Carrizo Feeders, Ltd., Chaparral Feeders, Inc., Charco Cattle Feeders, Dawn Custom Cattle Feeders, Inc., Driskill Feedyard, Inc., Graham Land and Cattle Company, Immel Feedyard, Lipan Cattle Feeders, LLC, Live Oak Feedlot, Inc., Livestock Investors, Ltd. d/b/a Bar G Feedyard, Lubbock Feeders, LLC, Luckey Custom Feedlot, Inc., McDonald Bar 6 Feedlot, Inc., Morales Feed Lots, Inc., Runnels Peters Feedyards, LLC, Santa Fe Feeders, Ltd., Shearrer Feedlot, Inc., Starr Feedyards, Ltd., and Texana Feeders, Ltd.

3.2.102  TCF Feeders Adversary. *Amigos Beef Cattle Co. LLC, et al., v. Sam Kane Beef Processors, LLC, et al.,* Adversary Proceeding No. 19-02011, in the Bankruptcy Court for the Southern District of Texas – Corpus Christi Division.

3.2.103  Unsecured Claim. A Claim not secured by a charge, mortgage or Lien against or interest in property of the Estate, including but not limited to any Deficiency Claim

and any claim for damages resulting from the rejection of an executory contract or lease.

**Article 4**
**INFORMATION RELATED TO THE DEBTOR AND THE PROPOSED PLAN**

4.1     The Debtor's Former Business.  Prior to the Petition Date, the Debtor operated a meat packing plant located at 9001 Leopard Street in Corpus Christi, Texas and was in the business of buying and selling Livestock for purposes of slaughter, manufacturing, and preparing meat products for sale in commerce.

4.2     Events Leading to the Chapter Case.

4.2.1     Prepetition USDA Litigation and Appointment of the Receiver

a.   *United States Investigation of the Debtor*

In the Spring of 2016, the United States Department of Agriculture began an investigation of the Debtor related to purported violations of the Packers and Stockyards Act of 1921, as amended.  Among other things, the PSA is the federal legislation that governs the Debtor's operations as a slaughterhouse and meat packing facility.  The PSA attempts to foster fair competition among packers, market agencies, and dealers, and to provide payment protection.  Under the PSA, "packers," like the Debtor, must pay promptly for Livestock purchased for slaughter on a carcass or "grade and weight" basis before the close of the next business day following the determination of the purchase price.

An investigation notice letter was served on the Debtor in March 2016, and the actual investigation was commenced on May 11, 2016.  The investigation notice asserted that the Debtor was in violation of § 409 of the PSA (7 U.S.C. § 228b) for failing to pay sellers within the time period required by the PSA.  The investigation found that the Debtor paid sellers between ten to twenty-five days late in fourteen separate transactions related to the purchase of 797 head of Livestock.

As a result of the investigation, on January 12, 2017, an Administrative Complaint was filed against the Debtor with the United States Department of Agriculture.  On January 17, 2017, a Decision Without Hearing by Reason of Consent was issued whereby the Debtor agreed to cease and desist from failing to timely pay sellers for the purchase price of Livestock.

On January 27, 2017, the Consent Order became final and effective. Notwithstanding the Consent Order, the Debtor allegedly continued to violate provisions of the PSA.

b.   *PSA Trust Dispute*

In January 2018, as a result of the late payment violations, seventy-seven (77) Livestock sellers filed Packer Trust claims against the Debtor under the provisions of the PSA in the total amount of $142,965,561.12.

On June 8, 2018, the Debtor, as required by the Consent Order, provided to the United States an unaudited report showing it owed $34,960,000 to Livestock sellers, and that the payments to sellers were made 38 days late, on average.

On June 14, 2018, the United States filed a Complaint for Injunctive Relief commencing the District Court Case.  The United States alleged that the Debtor failed to pay for Livestock when due and requested a preliminary injunction against the Debtor until resolution of the litigation.  The relief requested in the complaint included, *inter alia*, a request that the Debtor consent to the establishment of a voluntary receivership in the event it was unable to meet conditions of payments in full to sellers.

On July 19, 2018, a Motion to Intervene in the District Court Case, with proposed complaint attached, was filed by the TCF Feeders.  In addition to suing the Debtor, various other entities were named as defendants, including Marapro, LLC, ProAlamo Foods, LLC, ProValley Foods, LLC, ProCoastal, LLC, TAAG Americas, LLC, and Alfredo Fernandez and Carlos Fernandez, individually.  Marquette and Rabo, two of the Debtor's secured lenders, were also named as defendants.  The intervention motion was later approved by the District Court and the TCF Feeders' complaint was filed August 27, 2018.  [ECF ## 23 and 24 in the District Court Case]

The TCF Feeders asserted they were owed over $35 million and also asserted PSA Trust Claims.  Additionally, the TCF Feeders argued that Marquette and Rabo held or had received Cash and receivables subject to their trust claims and that each were subject to claims for disgorgement.

On July 25, 2018, an agreed preliminary injunction was entered by the District Court.  [ECF # 16 in the District Court Case].  The preliminary injunction contained (i) provisions requiring the Debtor to comply with the PSA, including the requirement to pay the full purchase price of Livestock by Cash or cashier's check no later than the next business day following the purchase and transfer of Livestock, and (ii) a requirement that the Debtor preserve and administer the statutory trust required under federal law.  With respect to the past due amounts, the Debtor was ordered to pay to its Creditors, including the TCF Feeders, the sum of $20 million no later than sixty (60) days following entry of the preliminary injunction.  It also provided that the Debtor's failure to make any one of the scheduled payments noted in the preliminary injunction would result in the District Court immediately appointing a receiver to manage its financial affairs.

### c.   *The Receivership and the Receiver's Authority*

On October 3, 2018, the United States filed its Motion for Appointment of a Receiver.  [ECF # 40 in the District Court Case].  The motion requested that the District Court appoint a receiver in light of the Debtor's failure to make the required payments to the TCF Feeders as provided in the preliminary injunction.

On October 5, 2018, the District Court entered the Receivership Order.  The terms of the Receivership Order were specifically agreed to, and binding upon, Marquette, Rabo, and certain Feeders, including the TCF Feeders.  At the time the Receivership Order was entered, the parties contemplated that a marketing and sale process would be initiated in order to sell the Debtor's business as a going concern.  The Receivership Order, thus, granted the Receiver broad management authority over the Debtor. Further, Marquette agreed to continue advancing funds for operations and cattle purchases pursuant to the Receivership Finance Stipulation.

4.2.2    Marketing and Sale Process

After taking possession of the assets in October 2018, the Receiver and his advisors developed a strategy, in consultation with the TCF Feeders and Marquette, and began to market and prepare the Debtor's assets for sale.  On or about November 3, 2018, after consideration of multiple proposals and negotiations amongst the TCF Feeders and Marquette, the Receiver engaged Gordian as investment banker for the Debtor with the approval and consent of the Feeders and Marquette.

Immediately following its engagement, Gordian created a broad list of potential purchasers, prepared offering materials, and worked with senior management to update a "virtual data room" to provide interested parties with easy access to pertinent information relating to the Debtor, its operations, assets, liabilities, financials, and the sale process.  Interested parties were asked to submit their indications of interest by January 14, 2019.  The Receiver received eight indications of interest by the January 14, 2019 deadline.

On January 18, 2019, the Debtor's facility was shut down after receiving a violation letter from the City of Corpus Christi asserting the facility was out of compliance with waste water treatment regulations. The Receiver and the Debtor's management diligently completed a City mandated checklist of corrective actions and reopened the facility on Monday, January 21, 2019. Nevertheless, the closing of the facility negatively impacted the sale process.

The setback caused by the closure was made worse when, on Sunday, January 20, 2019, the Debtor was unable to obtain the assurance of Marquette that further funding would be provided for cattle purchases and continued operations pursuant to the Receivership Finance Stipulation.  As a result, the Debtor was unable to obtain cattle deliveries and ceased killing operations on January 21, 2019.

The Debtor filed for chapter 11 protection on January 22, 2019.

4.3    Retention of Professionals.  On February 14, 2019, the Court entered an *Order Authorizing Richard S. Schmidt to Continue Acting as Sole Member and Manager of the Debtor Effective Nunc Pro Tunc to the Petition Date* [ECF # 134], an *Order Authorizing the Employment and Retention of Okin Adams LLP as Bankruptcy Counsel to the Debtor* [ECF # 135], and an *Order Authorizing the Employment and Retention of The Claro Group, LLC as Financial Advisor to the Debtor* [ECF # 136].

4.4    Transactions and Litigation During the Chapter 11 Case.  There have been a number of transactions and disputes in this Chapter 11 Case.  As relevant to this Plan, the most significant matters are described below.

4.4.1    Sale of Substantially All of the Debtor's Assets; the JDH Transaction.
From the Petition Date through January 29, 2019, the Receiver negotiated with certain prepetition bidders to serve as the stalking horse and DIP lender. When it became clear the Debtor would be unable to obtain the necessary DIP financing from any of the potential purchasers or either of its lenders (Marquette and Rabo), the Debtor decided to conduct an immediate auction for its assets.

14

On January 28, 2019, the Debtor filed its *Emergency Motion Pursuant to 11 U.S.C. §§ 105, 363, 365, and 554, for Entry of: (I) An Order (A) Approving Auction and Bidding Procedures; (B) Scheduling Auction and Sale Hearing; and (C) Approving the Form of Notice; (II) An Order Authorizing Abandonment of Assets Not Sold At Auction, and (III) Granting Related Relief* [ECF # 49], requesting authority to immediately liquidate substantially all of its assets.

On January 30, 2019, after receiving comments and proposed modifications from Marquette, Rabo, and the TCF Feeders, the Court entered its order approving the bid procedures motion [ECF # 64], scheduling an auction for the sale of the Debtor's assets for February 6, 2019.

The auction commenced on February 6, 2019 and was continued by the Court at the request of the parties.  On February 7, 2019, it was determined that JDH had the Highest and Best Bid (as defined in the Bid Procedures Order). Rabo, having submitted a credit-bid for the assets, was selected as the back-up bid should the Debtor and JDH be unable to close the transaction.

On February 14, 2019, the Court entered its *Order (A) Approving the sale of the Debtor's Assets Free and Clear of All Liens, Claims, Rights, Encumbrances and Other Interests; (B) Authorizing the Assumption, Assignment, and Sale of Certain Executory Contracts and Unexpired Leases; and (C) Granting Related Relief* [ECF # 137].

On February 25, 2019, the Debtor, Marquette, Rabo, the TCF Feeders, and JDH entered into that certain Stipulation Further Extending Deadlines and Providing for Payment of Interim Expenses.  Pursuant to this stipulation, the target closing date for the sale to JDH was extended, and Rabo and the TCF Feeders agreed to extend the funds to reach the closing of the sale, without the right to reimbursement, replacement Lien or any other type of claim against the sale proceeds or the Debtor's Estate.

The sale to JDH closed on February 28, 2019.  *See Notice of Sale Closing* [ECF # 156].

4.4.2    The Circle K Transaction.    In connection with the pre-petition marketing of the Debtor's assets, the Receiver marketed the Circle K Property to potential purchasers.  As a result of such efforts, the Receiver negotiated that certain Purchase Agreement And Escrow Instructions dated May 30, 2018 with Circle K Stores Inc. on terms that were satisfactory not only to the Receiver but also the Debtor's pre-petition secured lender and lienholder with respect to the Circle K Property.  Post-petition, the Debtor filed its *Expedited Motion for authority to Sell Certain Real Estate To Circle K Stores Inc. Free and clear of Liens, Claims, Encumbrances, and Interests Pursuant to Sections 105 and 363 of the Bankruptcy Code* [ECF # 160].

On March 12, 2019, the Court entered its *Order Approving Debtor's Expedited Motion for Authority to Sell Certain Real Estate To Circle K Stores Inc. Free and Clear of Liens, Claims, Encumbrances, and Interests Pursuant to Sections 105 and 363 of the Bankruptcy Code* [ECF #165].

On March 15, 2019, the TCF Feeders filed a *Motion for Reconsideration of Debtor's Motion to Sell Certain Real Property to Circle K Stores, Inc.* [ECF # 174] asserting that the Circle K Property was subject to the PSA Trust.

On March 25, 2019, the Court entered that *Order Regarding Proceeds From sale of Real Estate to Circle K Stores Inc.* [ECF # 180], which order authorized the sale of the Circle K Property to proceed but required that the Cash proceeds from that sale be deposited in the IOLTA account of Okin Adams LLP (Debtor's bankruptcy counsel).

The Circle K Transaction closed on or about April 29, 2019.

    4.4.3    <u>The 543 Motion</u>.  On March 27, 2019 the Debtor filed its 543 Motion seeking, amongst other relief, authority to pay certain unpaid expenses incurred by the Receiver in operating the Debtor prior to the Petition Date.  Amongst other arguments, the Debtor contended that the Receivership Order expressly authorized the use of alleged PSA Trust assets to pay said expenses and that such authorization established priority in payment for the 543 Claims.  Further, the Debtor noted that the Receivership Order expressly reflected the "consent" of all PSA Trust Creditors to such expenses.

Marquette and, certain of the Feeders, including the TCF Feeders objected to the 543 Motion.  Each, among other arguments, disputed the Debtor's position that the Receivership Order authorized the use of alleged PSA Trust assets or, in the case of Marquette, collateral. Moreover, both Marquette and the TCF Feeders alleged that, to the extent any such agreement is set forth in the Receivership Order, the expenses for which the Debtor sought payment greatly exceeded that agreement.  Each also contended that the Debtor violated the terms of the Receivership Finance Stipulation and that such breach by the Debtor excused further performance by Marquette and/or the Feeders.

On June 3, 2019, the Court conducted a Status Conference related to the 543 Motion and various other pending matters.  At the request of the Debtor, and with the consent of the TCF Group, the Court bifurcated consideration of the 543 Motion.  Initially, the Court set a hearing for July 17, 2019 to consider issues related to the Debtor's contention that the Receivership Order establishes the authority to use alleged PSA Trust assets to pay 543 Claims.  Issues regarding the allowance of specific 543 Claims were reserved for subsequent proceedings.

    4.4.4    <u>The 506(c) Motion</u>.  On April 19, 2019, the Debtor filed its 506(c) Motion requesting entry of an order surcharging certain expenditures incurred through the Chapter 11 Case, and during and through the sale process, against the secured collateral (or PSA Trust assets) of the Feeders, Rabo, and/or Marquette, as such expenses were reasonable, necessary, and beneficial to the secured Creditors being surcharged.  The Debtor alleged that such expenses were reasonable and necessary expenses to preserve property and operations through the sale process.  For example, the Debtor incurred utilities expenses, attorneys' fees, brokers fees, labor charges, payroll and withholding expenses, insurance expenses, and various expenses necessary to keep the Debtor in compliance with state and federal regulations.  The Debtor alleged that these expenses facilitated the preservation and disposition of the collateral (or PSA Trust assets) and therefore conferred a direct benefit on the secured Creditors or PSA Trust Claimants, including Marquette, Rabo, and/or the Feeders.

The 506(c) Motion noted that certain of the expenses in the above-referenced categories were included in the Debtor's 543 Motion and that the 506(c) Motion sought supplemental relief to pay the remainder of the expenses.

Marquette, Rabo, and the TCF Feeders each filed objections to the 506(c) Motion.

The Debtor's 506(c) claims against Marquette and the PSA Trust assets have been resolved pursuant to the 543 Settlement. Unless a similar settlement can be reached with Rabo, the Debtor's rights pursuant to the 506(c) Motion shall be transferred to the Liquidating Trust and will be decided by the Court after Confirmation of the Plan.

        4.4.5       <u>The Feeders' Motion for Relief and the TCF Feeder Adversary</u>. On April 4, 2019, the TCF Feeders filed their *Motion for Relief From Stay* [ECF # 195], seeking (a) an order from the Court determining that the Automatic Stay did not apply to the District Court Case, or (b) in the alternative, relief from the Automatic Stay to pursue claims against non-debtors. Contemporaneously, the TCF Feeders commenced the TCF Feeder Adversary asserting affirmative claims against the Debtor and Marquette. Howell Cattle Company, an alleged PSA Trust Claimant, has subsequently intervened in the TCF Feeder Adversary

The Debtor and Marquette opposed the Motion for Relief and the Debtor filed a separate motion seeking a determination that constituted a violation of the Automatic Stay.

        4.4.6       <u>The PSA Trust Dispute</u>. Certain of the Debtor's prepetition suppliers of Livestock assert PSA Trust Claims. While the Debtor acknowledges the trust provisions of the PSA, certain of the alleged PSA Trust Claims are disputed and have not, to date, been fully adjudicated.

Additionally, the Debtor disputes the extent of any PSA Trust and whether any property subject to such PSA Trust is, nevertheless, property of the Estate. The TCF Feeders maintain that all of the Debtor's remaining assets are subject to the PSA Trust and that any proceeds thereof must be used solely to satisfy PSA Trust Claims. The Debtor maintains that certain Estate property is held free of the PSA trust claims and, further, that property subject to any PSA trust is nevertheless property of the Estate to the extent of the Debtor's legal title and subject to the Debtor's interest to ensure a pro rata distribution to all Allowed PSA Trust Claims.

        4.4.7       <u>The 543 Settlement</u>. At the July 17, 2019 hearing, the Debtor, Marquette, and those Feeders appearing at the hearing announced that they had reached a global settlement resolving the 543 Motion, the 506(c) Motion (as to Marquette and the Feeders), and the Motion for Relief. The terms of the 543 Settlement are more fully set forth in the 543 Settlement Agreement and incorporated into this Plan, but the key terms are as follows:

- The Debtor shall receive the Marquette Settlement Payment, the Feeder Settlement Payment, a 40% share of any recovery on D&O Claims, and a reversionary interest in the Feeder Claims. The Debtor will also maintain all rights in any Avoidance Actions other than the Feeder Claims.

- Allowed 543 Claims shall be entitled to treatment as a third priority claim equivalent to that provided under § 507(a)(3) of the Bankruptcy Code.

- Marquette shall receive (i) Circle K Proceeds; and (ii) the 2019 Bond Proceeds; minus (iii) the Marquette Settlement Payment.

- The TCF Feeders shall receive for Distribution to Allowed PSA Trust Claims:

  o The Debtor Held Receivables less any amounts, up to $150,000.00, necessary to pay post-petition expenses related to the operation of the Debtor and incurred by the Debtor pursuant to either (a) an order of the Bankruptcy Court authorizing the Debtor to use cash collateral, or (b) the agreement of the Feeders to permit the Debtor to use of cash collateral;

  o The Marquette Held Receivables;

  o Exclusive control of and standing to pursue the Feeder Claims until such time as all Allowed PASA Trust Claims are paid in full.

  o Except for Excepted Claims, the Debtor releases the Cattle Sellers from all claims held by the Debtor, including but not limited to claims for anti-competitive behavior or price fixing.

- Such other releases as set forth in the 543 Settlement Agreement.

4.5     Best Interest of the Creditors.

        4.5.1     Compromise Plan.  As noted above, the PSA Trust Claimants contend that all of the Debtor's assets other than the proceeds of the JDH Transaction are subject to the PSA Trust. Marquette contends that all such assets are subject to Marquette's perfected Liens. Rabo contends that the remaining Cash proceeds of the JDH Transaction are subject to Rabo's Liens.  While the Debtor has challenged each of these allegations and has asserted Claims or Rights of Action against the PSA Trust assets, Marquette, and Rabo, there remains significant risk that the Debtor or its Estate holds no unencumbered assets available to satisfy Administrative Claims, 543 Claims, or General Unsecured Claims.

        For example, if the PSA Trust Claimants prevail in their Claims and the Court determines that all of the Debtor's remaining assets are subject to the PSA Trust, then the Debtor would lack sufficient assets to meet its post-petition obligations and would be required to convert this case to a case under chapter 7. In such a scenario, the likely outcome would be that all Creditors other than PSA Trust Claimants would receive no distributions on account their Claims.

        Given that substantial risk, the Debtor asserts that the settlements embodied in the Plan are in the best interests of the Estate and the Creditors. The 543 Settlement provides sufficient Cash to the Debtor to ensure that estimated Administrative Claims, including Professional Fee Claims and Statutory Fees, will be paid with some Cash remaining to pay 543 Claims. Accordingly, the Debtor asserts that, to the extent that any Impaired Class fails to accept the Plan, the Plan nevertheless satisfies the requirements of § 1127(a)(ii) of the Bankruptcy Code.

        4.5.2     Estimated Distribution.  As a result of the 543 Settlement, the Debtor will hold approximately $2.8 million in Cash on the Effective Date.  The Debtor anticipates that such funds will be sufficient to pay Allowed Administrative Claims in full, establish the Plan

18

Reserve and Liquidating Trust Reserve, and make a partial Distribution on account of Allowed 543 Claims. The Plan also preserves the Debtor's 506(c) Claims against Rabo and assigns such claims to the Liquidating Trustee for distribution in accordance Article 8 of this Plan. The Debtor estimates that Allowed Administrative Expense Claims shall not exceed $2,100,000 and the cost to administer the Liquidating Debtor and the Liquidating Trust shall not exceed $200,000.

      4.6     <u>Tax Concerns</u>. The tax consequences of the Plan to the Debtor and to Holders of Claims and Equity Interests (collectively, "Holders") are discussed below. This discussion of the federal income tax consequences of the Plan to the Debtors and Holders under U.S. federal income tax law, including the Internal Revenue Code of 1986, as amended (the "Tax Code"), is provided for informational purposes only. While this discussion addresses certain of the material tax consequences of the Plan, it is not a complete discussion of all such consequences and is subject to substantial uncertainties. Moreover, the consequences to a Holder may be affected by matters not discussed below (including, without limitation, special rules applicable to certain types of persons, such as persons holding non-vested stock or otherwise subject to special rules, nonresident aliens, life insurance companies, and tax-exempt organizations) and by such Holder's particular tax situation. In addition, this discussion does not address any state, local, or foreign tax considerations that may be applicable to particular Holders.

      **HOLDERS ARE URGED TO CONSULT THEIR OWN TAX ADVISORS REGARDING THE TAX CONSEQUENCES TO THEM OF THE TRANSACTIONS CONTEMPLATED BY THE PLAN, INCLUDING STATE, LOCAL AND FOREIGN TAX CONSEQUENCES.**

      **THE DEBTOR'S GENERAL BANKRUPTCY COUNSEL HAS NO TAX EXPERTISE AND HAS NOT RESEARCHED OR ANALYZED TAX CONSEQUENCES RESULTING FROM THE PLAN.**

      **SOME OF THE ISSUES DISCUSSED BELOW ARE COMPLEX, AND THERE CAN BE NO ASSURANCE OF THE ACCURACY OF THIS INFORMATION.**

      4.6.1     <u>General Federal Income Tax Consequences to Holders</u>

     *In General*. The following discussion addresses certain of the material consequences of the Plan to Holders. Under the Plan, the tax consequences of the Plan to a Holder will depend, in part, on the type of consideration received in exchange for the Claim or Equity Interest and the tax status of the Holder, such as whether the Holder is an individual, corporation or other entity, whether the Holder is a resident of the United States, the accounting method of the Holder, and the tax classification of the Holder's particular Claim or Equity Interest. **HOLDERS ARE STRONGLY ADVISED TO CONSULT THEIR OWN TAX ADVISORS WITH RESPECT TO THE TAX TREATMENT UNDER THE PLAN OF THEIR PARTICULAR CLAIM OR EQUITY INTEREST.**

     *Tax Consequences to Holders of Claims and Equity Interests*. The Holders of Claims against and Equity Interests in the Debtors are urged to consult with their tax advisors as to the consequences of the Plan to them. Among the issues the Holders of Claims and/or Equity Interests and their advisors may wish to consider are:

(1)     The extent to which the Holder of a Claim and/or Equity Interest is entitled to a bad debt deduction or a worthless securities loss.

(2)     The extent to which the Holder of a Claim or Equity Interest recognizes gain or loss on the exchange of its Claim or Equity Interest for property, debt, and stock of the Debtors and the character of that gain or loss.

(3)     The basis and the holding period for any property, debt, and stock received by the Holder of a Claim or Equity Interest.

(4)     Whether the original issue discount rules, market discount rule, and amortizable bond premium rules apply to any debt received by the Holder of a Claim or Equity Interest.

(5)     The treatment of property, stock, or debt, if any, received by the Holder of a Claim or Equity Interest in satisfaction of accrued interest.

(6)     The effect of a Holder of a Claim or Equity Interest receiving deferred distributions or distributions that are contingent in amount.

     4.6.2    <u>Certain Federal Income Tax Consequences to the Debtors</u>. Taxpayers are generally required to recognize taxable income as a result of cancellation of debt. The receipt of borrowed funds is not subject to tax, on the premise that the debtor will repay them. If the debt is cancelled without repayment, the recognition of income takes into account a debtor's receipt of the borrowed funds. Special rules, however, apply to the cancellation of debt in a bankruptcy proceeding. Generally, a debtor in a bankruptcy case is not required to recognize income from the cancellation of debt. However, a debtor may to pay for this exclusion by reducing specified tax attributes.

**PERSONS CONCERNED WITH THE TAX CONSEQUENCES OF THE PLAN SHOULD CONSULT THEIR OWN ACCOUNTANTS, ATTORNEYS AND/OR ADVISORS. THE DEBTOR MAKES THE ABOVE-NOTED DISCLOSURE OF POSSIBLE TAX CONSEQUENCES FOR THE SOLE PURPOSE OF ALERTING READERS TO TAX ISSUES THEY MAY WISH TO CONSIDER. THE DEBTOR CANNOT AND DOES NOT REPRESENT THAT THE TAX CONSEQUENCES MENTIONED ABOVE ARE COMPLETELY ACCURATE BECAUSE, AMONG OTHER THINGS, THE TAX LAW EMBODIES MANY COMPLICATED RULES THAT MAKE IT DIFFICULT TO STATE ACCURATELY WHAT THE TAX IMPLICATIONS OF ANY ACTION MIGHT BE.**

### Article 5
### <u>ADMINISTRATIVE CLAIMS, PRIORITY TAX CLAIMS, AND STATUTORY FEES</u>

     In accordance with § 1123(a)(1) of Bankruptcy Code, Administrative Claims and Priority Tax Claims of the Debtor have not been classified, and the Holders thereof are not entitled to vote on the Plan. All other Claims and Interests are classified and treated under Articles 6-7 of the Plan.

5.1     Administrative Claims.

5.1.1   Filing Administrative Claims.  Any Person that asserts an Administrative Claim, or a protective application on account of any Administrative Claim, arising before the Confirmation Date, (excluding Statutory Fees; Professional Fee Claims; and claims that are entitled to priority pursuant to §507(a)(8) of the Bankruptcy Code) shall, regardless of whether such amounts have been set forth in a Proof of Claim or attachment thereto, on or before the Administrative Claims Bar Date or other date as set by Bankruptcy Court Order or as may be agreed to by the Debtor, file an application, motion, or request, as called for by the Bankruptcy Rules, with the Bankruptcy Court for allowance of such Claim as an Administrative Claim specifying the amount of and basis for such Claim and priority; *provided, however,* that applicants or movants who have previously filed applications, motions, or requests with the Bankruptcy Court, other than in a Proof of Claim, need not file another such paper for the same Claim.  Failure to file a timely application, motion, or request for allowance pursuant to this Section by any Holder of an Administrative Claim for an expense or liability by the Debtor, other than such a Professional engaged or employed by the Debtor, the Liquidating Debtor or the Liquidating Trust, other than as may be otherwise agreed to by the Debtor, shall bar such a Claimant from seeking recovery on such Administrative Claim.

5.1.2   Treatment of Administrative Claims.  Except to the extent that a Holder of an Allowed Administrative Claim agrees to a different treatment, in writing, each Holder of an Allowed Administrative Claim shall receive, in full satisfaction, settlement and release of and in exchange for such Allowed Administrative Claim, Cash in an amount equal to such Allowed Administrative Claim, either: (i) as soon as reasonably practicable after the Effective Date, or (ii) if the Administrative Claim is not Allowed as of the Effective Date, thirty (30) days after the date on which such Administrative Claim becomes an Allowed Administrative Claim.

5.2     Priority Tax Claims.  Each holder of an Allowed Priority Tax Claim will be paid either (i) the full amount of the Allowed Priority Tax Claim (without post-petition interest or penalty) in Cash on the Effective Date or as soon thereafter as is reasonably practicable, or (ii) such lesser amount at such time as to which the holder of an Allowed Priority Tax Claim may agree, in writing.

5.3     Statutory Fees.  After Confirmation, the Plan Agent shall be responsible for filing post-confirmation quarterly financial reports on behalf of the Liquidating Debtor.  For purposes of 28 U.S.C. § 1930, fees shall be calculated upon amounts paid by or distributed by the Liquidating Debtor until the Bankruptcy Court enters a final decree closing this case or enters an order either converting the case to case under Chapter 7 or dismissing the case.

5.4     Professional Fee Claims.  Each Professional whose retention with respect to the Debtor's Cases has been approved by the Bankruptcy Court and who holds or asserts an Administrative Claim that is a Professional Fee Claim shall be required to file with the Bankruptcy Court, and to serve on all parties required to receive notice, a final fee application not later than forty-five (45) days following the Effective Date (the "Professional Fee Bar Date"). The failure to timely file a fee application shall result in the Professional Fee Claim being forever barred and discharged.  A Professional Fee Claim with respect to which a fee application has been properly and timely filed shall be treated and paid only to the extent allowed by Final Order.  All Professional Fee Claims shall be paid either by the Debtor or the Plan Agent, as applicable; provided, however, that to the extent any Holder of an Allowed Professional Fee

Claim holds a retainer regarding such Claim, the retainer shall be applied first to such Claim with the balance of such Claim to be paid by the Debtor or the Plan Agent, as applicable.

**Article 6**
**CLASSIFICATION OF CLAIMS, INTERESTS, AND VOTING**

6.1     Impaired Classes.   The following table designates the Classes of Claims and Interests in the Debtor and specifies which of those Classes are (i) impaired or unimpaired by the Plan, (ii) entitled to vote to accept or reject the Plan, and (iii) deemed to accept or reject the Plan.

6.1.1   Acceptance By Impaired Classes.  Except as otherwise provided in the 543 Settlement, each Impaired Class of Claims that will (or may) receive or retain property or any interest in property under the Plan shall be entitled to vote to accept or reject the Plan.  Except as provided in the 543 Settlement, an Impaired Class of Claims shall have accepted the Plan if the Holders (other than any Holder designated under § 1126(e) of the Bankruptcy Code) of at least two-thirds in amount and more than one-half in number of the Allowed Claims actually voting in such Class have voted to accept the Plan.

6.1.2   Voting Presumptions.   Claims in Unimpaired Classes are conclusively deemed to have accepted the Plan pursuant to § 1126(f) of the Bankruptcy Code and, therefore, are not entitled to vote to accept or reject the Plan. Claims and Equity Interests in Classes that do not entitle the Holders thereof to receive or retain any property under the Plan are conclusively deemed to have rejected the Plan pursuant to § 1126(g) of the Bankruptcy Code and, therefore, are not entitled to vote to accept or reject the Plan. Additionally, as a condition of the 543 Settlement, Classes 1 & 3 are deemed to have accepted the Plan.

6.2     Controversy Concerning Classification, Impairment or Voting Rights.   In the event a controversy or dispute should arise involving issues related to the classification, impairment or voting rights of any Creditor or Interest Holder under the Plan, prior to the Confirmation Date, the Bankruptcy Court may, after notice and a hearing, determine such controversy. Without limiting the foregoing, the Bankruptcy Court may estimate for voting purposes the amount of any contingent or unliquidated Claim the fixing or liquidation of, as the case may be, would unduly delay the administration of the Chapter 11 Cases.  In addition, the Bankruptcy Court may, in accordance with § 506(b) of the Bankruptcy Code, conduct valuation hearings to determine the Allowed Amount of any Secured Claim.

| Class | Description | Impairment | Entitled to Vote |
|-------|-------------|------------|------------------|
| Class 1 | PSA Claims | Impaired | No (deemed to accept) |
| Class 2 | Rabo Secured Claim | Impaired | Yes |
| Class 3 | Marquette Secured Claim | Impaired | No (deemed to accept) |
| Class 4 | 543 Claims | Impaired | Yes |
| Class 5 | Non-Tax Priority Claims | Impaired | Yes |

| Class | Description | Impairment | Entitled to Vote |
|-------|-------------|------------|------------------|
| Class 6 | General Unsecured Claims | Impaired | Yes |
| Class 7 | Subordinated Claims of Non-Insiders | Impaired | Yes |
| Class 8 | Subordinated Claims of Insiders | Impaired | No (deemed to reject) |
| Class 9 | Interests in Debtor | Impaired | No (deemed to reject) |

**Article 7**
**TREATMENT OF IMPAIRED CLAIMS**

7.1     Determination of Allowed Amounts.   Treatment prescribed for Claims and Interests in the following sections of this Article 7 shall in all events refer exclusively to the Allowed Amount of each respective Claim.   In the event the Allowed Amount of any Claim is not determined by agreement or otherwise prior to the Effective Date, then the treatment prescribed shall be deemed effective as of the date of the determination of such Claim by agreement or Final Order or as otherwise provided under the Plan. Notwithstanding Confirmation of the Plan, except as may otherwise be provided by Order of the Bankruptcy Court, the Debtor, the Liquidating Debtor, and the Liquidating Trust reserve the right to object to any Claim (other than Claims deemed in the Plan to be Allowed Claims) for any reason authorized by applicable bankruptcy and nonbankruptcy law as well as the right to assert that any such Claim includes amounts subject to equitable subordination or other equitable relief.

7.2     Class 1 – PSA Claims.  Class 1 consists of Allowed PSA Trust Claims.  PSA Trust Claims shall be paid pursuant to the terms of the 543 Settlement and shall not be entitled to receive any further Distributions from the Debtor.   This section provides a non-exclusive description of the material terms of the treatment provided for Class 1 Claims.  Class 1 Claims are impaired, but pursuant to the 543 Settlement are deemed to have accepted the Plan.

7.2.1     Allowance of PSA Trust Claims.  All alleged PSA Trust Claims and their asserted amounts are identified in Exhibit C to the 543 Settlement Agreement.  PSA Trust Claims shall be deemed Allowed upon a determination by the District Court (or subsequent court of final jurisdiction) that such claim is fully valid, proper and preserved under 7 U.S.C. § 196, or other applicable law.

7.2.2     Payments on the Effective Date.  On the Effective Date, subject to the terms of the 543 Settlement Agreement, the holders of Allowed PSA Trust Claims shall be paid the Collected Receivables.   The Collected Receivables and the full amount of the Feeder Settlement Payment shall be distributed to Allowed PSA Trust Claims as set forth in the 543 Settlement Agreement.

7.2.3     Transfer of Claims and Receivables to the TCF Feeders.  Subject to the provisions of the 543 Settlement Agreement and until such time as all Allowed PSA Trust Claims are paid in full, the Signatory Feeders shall be granted exclusive control of and standing to

pursue all of the Feeder Claims and all of Debtor's rights arising from or related to the collection of outstanding accounts receivable.  The Signatory Feeders' control of and standing to pursue any Feeder Claim shall terminate upon the earlier of (a) the payment of all Allowed PSA Trust Claims; or (b) one hundred eighty days prior to the running of any applicable statute of limitations.

        7.2.4   <u>Split of Recovery on Directors and Officers Claims</u>.  For such time as the Signatory Feeders are entitled to control of and have standing to pursue the Feeder Claims, any recovery on a D&O Claim shall be split amongst Allowed PSA Claims and the Liquidating Trust as set forth in the 543 Settlement Agreement.

        7.2.5   <u>Release by the Debtor</u>.  The Debtor shall release the Cattle Sellers from all claims held by the Debtor, including but not limited to claims for anti-competitive behavior or price fixing, except the Excepted Claims.

        7.3   <u>Class 2 – Rabo Secured Claim</u>.  Class 2 is comprised of the Rabo Secured Claim.  Pursuant to the JDH Transaction, Rabo has received the Rabo Debt Rollover.  Any remaining Secured Claim or deficiency claim asserted by Rabo shall be Allowed solely after final adjudication of the 506(c) Motion and shall be payable solely from remaining proceeds of the JDH Transaction.  Class 2 is impaired, but, pursuant to the Rabo Settlement, is entitled to vote on the Plan.

        7.4   <u>Class 3 – Marquette Secured Claim</u>.  Class 3 is comprised of the Marquette Secured Claim.  Class 3 shall be paid pursuant to the terms of the 543 Settlement.  This section provides a non-exclusive description of the material terms of the treatment provided for Class 3 Claims. Class 3 is impaired, but, pursuant to the 543 Settlement, is deemed to have accepted the Plan.

        7.4.1   <u>Allowance</u>.  Marquette shall have a fully Allowed perfected secured claim as set forth in the 543 Settlement Agreement.

        7.4.2   <u>Payment of the Marquette Secured Claim</u>.  Subject to the terms of the 543 Settlement Agreement, Marquette shall be paid the Marquette Funds on the Effective Date.

        7.4.3   <u>Subordination of the Marquette Remainder Claim</u>.  Subject to the terms of the 543 Settlement Agreement, the Marquette Remainder Claim shall be treated as a Class 6 Subordinated Claim.

        7.5   <u>Class 4 – 543 Claims</u>.  Class 4 is comprised of Allowed 543 Claims.  After the establishment the Liquidating Trust Reserve, Allowed 543 Claims shall be paid by the Liquidating Trustee *pro rata* from Available Cash.  To the extent that such Available Cash is insufficient to pay 543 Claims in full on the Effective Date, Class 4 claims shall then be paid *pro rata* from proceeds of the Liquidating Trust Assets in accordance with the priorities set forth in Article 8 herein.  Class 4 is impaired and is entitled to vote on the Plan.

        7.6   <u>Class 5 – Non-Tax Priority Claims</u>.  Class 5 is comprised of all Allowed Non-Tax Priority Claims.  Class 5 shall be paid *pro rata* from proceeds of the Liquidating Trust Assets in accordance with the priority set forth in Article 8 herein.  Class 5 is impaired and is entitled to vote on the Plan.

7.7 <u>Class 6 – General Unsecured Claims</u>. Class 6 is comprised of all Allowed General Unsecured Claims against the Debtor. Class 6 shall be paid *pro rata* from proceeds of the Liquidating Trust Assets in accordance with the priority set forth in Article 8 herein. Class 5 is impaired and is entitled to vote on the Plan.

7.8 <u>Class 7 – Subordinated Claims of Non-Insiders</u>. Class 7 is comprised of claims by non-insiders of the Debtors determined by Final Order to be subordinate, as a matter of agreement, law, equity or otherwise, to General Unsecured Claims. Class 6 shall be paid *pro rata* from proceeds of the Liquidating Trust Assets in accordance with the priority set forth in Article 8 herein. Class 6 is impaired and is entitled to vote on the Plan.

7.9 <u>Class 8 – Insider Subordinated Claims</u>. Class 8 is comprised of claims by insiders of the Debtors determined by Final Order to be subordinate, as a matter of agreement, law, equity or otherwise, to General Unsecured Claims. Each holder of a Class 8 Claim shall neither receive nor retain any property or interest in property on account of such Claim and such holder shall have no Claim against the Debtor, the Liquidating Trust or otherwise on account of such Claim. Because the Class 8 Claims are being cancelled, Holders of Interests are deemed to reject the Plan and, as such, they are not entitled to vote on the Plan.

7.10 <u>Class 9 – Equity Interests</u>. Class 9 is comprised of all Allowed Equity Interests in the Debtor. The Debtor's Interests will be cancelled on the Effective Date of the Plan. Each holder of an Interest shall neither receive nor retain any property or interest in property on account of such Interest and such holder shall have no Claim against the Debtor, the Liquidating Trust or otherwise on account of such cancelled Interest. Because the Class 9 Interests are being cancelled, Holders of Interests are deemed to reject the Plan and, as such, they are not entitled to vote on the Plan.

## Article 8
## MEANS OF IMPLEMENTATION

8.1 <u>Approval of the 543 Settlement</u>. To the extent not previously approved by Final Order of the Court, Confirmation of the Plan shall constitute approval of the 543 Settlement and the 543 Settlement Agreement pursuant to Rule 9019 of the Bankruptcy Rules.

8.2 <u>Transfers of Property</u>. On the Effective Date, the Debtor shall be deemed to have irrevocably transferred and assigned:

8.1.1 To the Liquidating Debtor, the Plan Reserve, for the benefit of Allowed Administrative Claims and Allowed Priority Tax Claims pursuant to the terms of this Plan. Except as otherwise provided by this Plan, upon the Effective Date, title to the Plan Reserve shall pass to the Liquidating Debtor free and clear of all Claims and interests, in accordance with § 1141 of Bankruptcy Code.

8.1.2 To the Liquidating Trust, the Liquidating Trust Assets, to hold in trust for the benefit of all Holders of Allowed Claims with respect to the Debtor pursuant to the terms of this Plan and the Liquidating Trust Agreement. Except as otherwise provided by this Plan, upon the Effective Date, title to the Liquidating Trust Assets shall pass to the Liquidating Trust free and clear of all Claims and Interests, in accordance with § 1141 of Bankruptcy Code.

8.1.3    Upon dissolution of the Debtor, any Plan Reserve funds remaining after (i) satisfaction of Administrative Claims and Priority Tax Claims; and (ii) payment of all of the Plan Agent's reasonable expenses; shall be distributed to the Liquidating Trust.

8.3    <u>No Distribution</u>.  For the avoidance of doubt, neither the payment of the Collected Receivables to the TCF Feeders nor the payment of Marquette Funds to Marquette shall be considered a Distribution of property of the Estate.

8.4    <u>Discharge of Sole Member, Winddown of Receivership</u>.  Upon the Effective Date, the Sole Member shall be discharged and released from any further obligation or duty to the Debtor and the Receiver shall be authorized to petition the District Court to close the receivership and seek a discharge of his duties and full release.  Nothing in the Plan or the Confirmation Order shall impair the Receiver's ability to close the receivership or to seek a released from the District Court.

8.5    <u>The Liquidating Debtor</u>.  The Plan Agent shall be the sole officer, director and shareholder of the Liquidating Debtor.  On the Effective Date, the Liquidating Debtor is deemed to have satisfied all liabilities for purposes of dissolution under applicable state law.  The Plan Agent is authorized to execute and file all documents necessary to effectuate the dissolution of the Liquidating Debtor.

8.6    <u>The Liquidating Trust</u>.  The following provisions of this section are intended to summarize the material terms of the Liquidating Trust Agreement (attached hereto as Exhibit B), which shall control the formation, operations and dissolution of the Liquidating Trust. In the event of any conflict between the terms of this section and the terms of the Liquidating Trust Agreement, the terms of the Liquidating Trust Agreement shall govern.

8.3.1    <u>Formation of the Liquidating Trust</u>. On or before the Effective Date, the Liquidating Trust Agreement shall be executed by the Debtor and the Liquidating Trustee, and all other necessary steps shall be taken to establish the Liquidating Trust.  For the avoidance of doubt, entry the Confirmation Order shall constitute a finding that the Liquidating Trust exists and is a valid entity for purposes of all non-bankruptcy law.

8.3.2    <u>Purpose of Liquidating Trust</u>. The Liquidating Trust shall be established only for the purposes of liquidating the Liquidating Trust Assets, including, but not limited to prosecuting and resolving objections to Disputed Claims against the Debtor, and liquidating and distributing its assets, with no objective to continue or engage in the pursuit of a trade or business.

8.3.3    <u>The Liquidating Trustee</u>. The Plan Agent shall serve as the Liquidating Trustee.

8.3.4    <u>Authority of Liquidating Trustee</u>. Subject only to the limitations contained in this Plan or in the Liquidating Trust Agreement, the Liquidating Trustee shall have, by way of illustration and not limitation, the following duties, responsibilities, authorities, and powers: (A) the power and authority to hold, manage, sell, and distribute the Liquidating Trust Assets in accordance with the Plan, (B) the power and authority to prosecute and resolve, in the name of the Debtor and/or the name of the Liquidating Trustee, the Liquidating Trust Assets, (C) the power and authority to prosecute and resolve objections to Disputed Claims against the Debtor

that are payable from the Liquidating Trust Assets, (D) the power and authority to perform such other functions as are provided in the Plan and Liquidating Trust Agreement, (E) the power to consent to the settlement of any Feeder Claims pursuant to the 543 Settlement Agreement; and (F) to pursue any Feeder Claims abandoned pursuant to the 543 Settlement Agreement.

8.3.5   Priority of Distribution of Liquidating Trust Assets. The Liquidating Trust, through the Liquidating Trustee, shall be responsible for distributing Liquidating Trust Assets, or the proceeds thereof, on account of the following Claims (in the order of priority shown): (i) fund the Liquidating Trust Reserve, (ii) then, to satisfy outstanding Allowed 543 Claims; (iii) then to satisfy Non-Tax Priority Claims, (iv) then, up to $3.5 million to pay Allowed General Unsecured Claims; and, finally, (v) remaining Allowed General Unsecured Claims and Class 7 Claims shall be paid *pro rata* from all remaining Liquidating Trust Assets or recoveries therefrom. For the avoidance of doubt, all expenses of the Liquidating Trust that are directly related to the administration of the Liquidating Trust Assets and exceeding the Liquidating Trust Reserve shall be taxed against the gross proceeds of the Liquidating Trust Assets and shall be satisfied prior to any subsequent Distributions. Other than the enumerated claims, no claims against the Debtor or its Estate shall be charged to the Liquidating Trust.

8.3.6   Procedure for Distribution of Liquidating Trust Assets. The Liquidating Trustee shall distribute Cash in accordance with the Liquidating Trust Agreement, beginning on the Effective Date or as soon thereafter as is practicable, from the Liquidating Trust Assets on hand (including any Cash received from the Debtor on the Effective Date), except such amounts (i) as would be distributable to a holder of a Disputed Claim if such Disputed Claim had been Allowed, prior to the time of such Distribution (but only until such Claim is resolved), (ii) as are reasonably necessary to meet contingent liabilities and to maintain the value of the Liquidating Trust Assets during litigation, (iii) to pay reasonable expenses (including, but not limited to, any taxes imposed on the Liquidating Trust or in respect of the Liquidating Trust Assets), and (iv) to satisfy other liabilities incurred by the Liquidating Trust in accordance with this Plan or the Liquidating Trust Agreement.

8.3.7   Compensation of the Liquidating Trustee. The Liquidating Trustee shall be entitled to reasonable compensation as set forth in the Liquidating Trust Agreement.

8.3.8   Retention of Professionals by the Liquidating Trustee. The Liquidating Trustee may retain and reasonably compensate counsel and other professionals to assist in his duties as Liquidating Trustee on such terms as the Liquidating Trustee deems appropriate without Bankruptcy Court approval. The Liquidating Trustee may retain any professional who represented parties in interest in the Chapter 11 Case, which may also be the same counsel retained by the Liquidating Trustee.

8.3.9   Tax Returns. The Liquidating Trustee shall file all necessary tax returns and other filings with governmental authorities on behalf to the Liquidating Trust and the Liquidating Trust Assets held therein pursuant to the terms of the Liquidating Trust Agreement.

8.3.10   Dissolution. The Liquidating Trust and the Liquidating Trustee shall be discharged or dissolved, as the case may be, at such time as (i) all Liquidating Trust Assets have been liquidated, and (ii) all Distributions required to be made by the Liquidating Trustee under the Plan have been made, but in no event shall the Liquidating Trust be dissolved later than four

(4) years from the Effective Date absent Bankruptcy Court approval.

8.3.11 <u>Indemnification of Liquidating Trustee</u>. The Liquidating Trustee and the Liquidating Trustee's agents and professionals, shall not be liable for actions taken or omitted in its capacity as, or on behalf of, the Liquidating Trustee, except those acts arising out of its or their own willful misconduct, gross negligence, bad faith, self-dealing, breach of fiduciary duty, or *ultra vires* acts, and each shall be entitled to indemnification and reimbursement for fees and expenses in defending any and all of its actions or inactions in its capacity as, or on behalf of, the Liquidating Trustee, except for any actions or inactions involving willful misconduct, gross negligence, bad faith, self-dealing, breach of fiduciary duty, or *ultra vires* acts. Any indemnification claims of the Liquidating Trustee, its agents or professionals, shall be satisfied from the Liquidating Trust Assets. The Liquidating Trustee shall be entitled to rely, in good faith, on the advice of its retained professionals.

**Article 9**
**CLAIM/INTEREST OBJECTION PROCEDURES, TREATMENT OF**
**DISPUTED CLAIMS/INTERESTS AND PROCEDURE FOR ASSERTING CLAIMS**

9.1 <u>Objection Process</u>. The Plan Agent on behalf of the Liquidating Debtor shall have the right to object to the allowance of any Claims or Interests payable by the Debtor or the Liquidating Debtor under the Plan and the Liquidating Trustee on behalf of the Liquidating Trust shall have the right to object to the allowance of any Claims payable by the Liquidating Trust under the Plan. Subject to the preceding sentences, all objections shall be litigated to Final Order; provided, however, that the Plan Agent or Liquidating Trustee, as the case may be, shall have the authority to compromise, settle or otherwise resolve all objections, for any Claim filed in the amount of $250,000 or less without approval of the Bankruptcy Court. For all Claims in excess of $250,000, the Plan Agent or Liquidating Trustee shall bring the matter before the Bankruptcy Court for final resolution after notice and hearing. Unless otherwise ordered by the Bankruptcy Court, all objections to Claims and Equity Interests shall be filed and served no later than (i) 120 days after the later of (a) the Effective Date; or (b) the date on which a proof of claim, proof of interest or request for payment is filed with the Bankruptcy Court or (ii) such other date as may be approved by the Bankruptcy Court after notice and hearing.

9.2 <u>Disputed Claims Reserve</u>. A Disputed Claims Reserve shall be established by the Liquidating Trust for the treatment of Disputed Claims. The Disputed Claims Reserve shall be held in a separate bank account from all other funds held by the Liquidating Trustee. The Liquidating Trustee shall deposit into a Disputed Claims Reserve an amount equal to the Pro Rata share of the Distribution allocable to such Disputed Claims, in accordance with the Distribution scheme contemplated in the Plan, as if such Claims were Allowed Claims. Amounts deposited into the Disputed Claims Reserve shall be held in trust for the benefit of the holders of Disputed Claims pending a determination of their entitlement thereto under the terms of the Plan. Once such Disputed Claim is determined by Final Order to be an Allowed Claim, the Liquidating Trustee is authorized to pay the Allowed Amount of such Claim without further approval from or notice to any Person.

9.3 <u>Distributions to Holders of Disputed Claims</u>. Within 10 Business Days after such time as a Disputed Claim becomes an Allowed Claim, any Distributions reserved for such Allowed Claim shall be released from the Disputed Claims Reserve and delivered to the holder of

such Allowed Claim in an amount proportionate to the Allowed Amount of any such. In the event that the Disputed Claim is disallowed in whole or in part, or otherwise settled in amount less than the Disputed Claim amount, the disallowed or reduced portion of such Claim shall be distributed from the Disputed Claim Reserve to holders of Allowed Claims or Equity Interests as Available Cash on the next Payment Date in accordance with the Plan without further approval from or notice to any Person.

9.4     Disallowance of Late Filed Proofs of Claim. Except as otherwise provided in the Plan, any proof of claim filed by the holder of such Claim after the Bar Date is disallowed.

9.5     Provisions Governing Distributions.

9.5.1   Record Date for Claims and Equity Interests. The record date for Distributions to Allowed Claims and Allowed Interests under this Plan shall be the date the Bankruptcy Court enters its order approving the Disclosure Statement. For purposes of Distributions to holders of Allowed Claims, the Liquidating Trustee will rely on the claims docket maintained by the Clerk for proofs of claim filed in this Chapter 11 Case except to the extent a notice of transfer of Claim or Interest has been filed with the Court prior to the record date pursuant to Bankruptcy Rule 3001.

9.5.2   Delivery of Distributions to Holders of Allowed Claims. Subject to Bankruptcy Rule 9010, Distributions to holders of Allowed Claims will be made at the address of each such holder as set forth on the proofs of claim filed by such holders, or at the last known address of such holder if no proof of claim is filed, unless the holder of the Allowed Claim has otherwise notified the Liquidating Trustee in writing of a change of address.  If any holder's Distribution is returned as undeliverable, no further Distributions to such holder will be made unless and until the Liquidating Trustee is notified in writing of such holder's then current address.

9.5.3   Unclaimed Distributions and Uncashed Checks. The Liquidating Trustee shall file a Notice of Distribution within ten Business Days of the date on which Distributions are made under the Plan. All claims for undeliverable Distributions must be made no later than the 60th day following the date that the Notice of Distribution is filed. After such date, all unclaimed Distributions will revert to the Liquidating Debtor for distribution in accordance with this Plan and the Claim or Equity Interest of any holder with respect to such Distribution will be discharged and forever barred. Checks issued in respect of Allowed Claims and/or Equity Interests will be null and void if not negotiated within ninety (90) days after the date of issuance thereof.

## Article 10
## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

10.1    Rejection of Executory Contracts and Unexpired Leases. All executory contracts and leases that are not assumed under this Plan are rejected, unless otherwise dealt with by the Plan or the Confirmation Order, or any other Order of the Court entered prior to the Effective Date, or which is the subject of a motion to assume pending on the Effective Date.

10.2    Claims Based on Rejection of Executory Contracts or Unexpired Leases. Damages arising from the rejection of an executory contract or unexpired lease shall be a

General Unsecured Claim against the Debtor unless subordinated under applicable law. Any Claim for damages arising from the rejection of an executory contract or unexpired lease must be asserted in a proof of claim filed with the Bankruptcy Court no later than 30 days following the earlier of: (a) the date of entry of an order of the Bankruptcy Court approving such rejection, or (b) the Effective Date of the Plan. Any Claims not filed within such times shall be forever barred from assertion against the Debtor or the Liquidating Debtor.

## Article 11
## EFFECT OF CONFIRMATION

11.1    <u>Legally Binding Effect</u>. The provisions of this Plan shall bind all Creditors and Interest Holders, whether or not they accept this Plan. On and after the Effective Date, all holders of Claims shall be precluded and enjoined from asserting any Claim (i) against the Debtor or their assets or properties based on any transaction or other activity of any kind that occurred prior to the Confirmation Date except as permitted under the Plan; and (ii) any derivative claims, including claims against third parties asserting alter ego claims, fraudulent transfer claims or any other type of successor liability.

11.2    <u>Limited Discharge of Debtor and Injunction</u>. The Confirmation Order will operate as a general resolution with prejudice, as of the Effective Date, of all pending legal proceedings, if any, against the Debtor and its assets and properties and any proceedings not yet instituted against the Debtor or its assets and properties, except as otherwise provided in the Plan. Except as otherwise expressly provided in the Plan or the Confirmation Order, all Persons who have held, hold, or may hold Claims against the Debtor are permanently enjoined on and after the Effective Date from (a) commencing or continuing in any manner any action or other proceeding of any kind against the Debtor or the Liquidating Debtor, or their property, or the Plan Agent, with respect to any such Claim, (b) the enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree or order with respect to any such Claim against the Debtor or the Liquidating Debtor, or their property, or the Plan Agent, (c) creating, perfecting, or enforcing any encumbrance of any kind against the Debtor or the Liquidating Debtor, or their property, or the Plan Agent, with respect to such Claim, (d) asserting any right of subrogation of any kind against any obligation due to the Debtor or the Liquidating Debtor, or the property of the Debtor, the Estates or the Liquidating Debtor with respect to any such Claim and (e) asserting any right of setoff or recoupment against the Debtor, the Estates or the Liquidating Debtor. Unless otherwise provided in the Plan or by order of the Bankruptcy Court, all injunctions or automatic stays provided for in this case pursuant to § 105, if any, or § 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date will remain in full force and effect until the Effective Date.

11.3    <u>Limited Protection of Certain Parties in Interest</u>. No Protected Person shall have or incur any liability to any Person or Entity under any theory of liability for any act or omission occurring on or after the Petition Date in connection or related to the Debtor, the Chapter 11 Case, or the Estate, including, but not limited to, (i) formulating, preparing disseminating, implementing, confirming, consummating or administering this Plan (including soliciting acceptances or rejections thereof); or (ii) the disclosure statement or any contract, instrument, release or other agreement or document entered into or any action taken or omitted to be taken in connection with this Plan, except for acts constituting willful misconduct or gross negligence and in all respects such Protected Persons shall be entitled to rely in good faith upon the advice of

counsel. In any action, suit or proceeding by any Person contesting any action by, or non-action of any Protected Person as constituting willful misconduct or gross negligence or not being in good faith, the reasonable attorneys' fees and costs of the prevailing party will be paid by the losing party and as a condition to going forward with such action, suit, or proceeding at the outset thereof, all parties thereto will be required to provide appropriate proof and assurances of their capacity to make such payments of reasonable attorneys' fees and costs in the event they fail to prevail.

11.4    Indemnification. The Liquidating Trust shall indemnify each Person identified as a Protected Person against any and all costs and expenses (including attorneys' fees) incurred by any of them in defending against post-Confirmation Date claims that are based on actions allegedly taken (or not taken) by them in their respective capacities relating to the Debtor, the Liquidating Debtor, the Liquidating Trust, or this Plan; provided, however, that no Protected Person shall be entitled to indemnification under this Plan for the costs and expenses of defending a cause of action in which it is ultimately judicially determined that such Protected Person was grossly negligent or acted fraudulently or with willful misconduct in performing such Protected Person's duties hereunder or under any Final Order of the Bankruptcy Court or applicable law. Any Protected Person entitled to indemnification under this section shall have a priority Distribution right that is senior to the holders of Allowed Claims/Interests. The Liquidating Trustee may use Liquidating Trust Assets (as an expense of consummating this Plan) to purchase indemnification insurance to satisfy any potential indemnification claims that may arise under this section.

11.5    Preservation of Claims and Rights. Confirmation of this Plan effects no settlement, compromise, waiver or release of any Claim, Cause of Action, Right of Action or claim for relief unless this Plan or the Confirmation Order specifically and unambiguously so provides. Exhibit C of this Plan describes (i) those Claims, Causes of Action, Right of Action or claims for relief currently known to the Debtor; and (ii) circumstances currently known to the Debtor that may give rise to a Claim, Cause of Action, Right of Action or other claim for relief. All Claims, Causes of Action, Rights of Action or claims for relief are expressly preserved for the benefit of the Debtor's Creditors in accordance with the terms of this Plan.  The non-disclosure or non-discussion of any particular Claim, Cause of Action, Right of Action or claim for relief is not and shall not be construed as a settlement, compromise, waiver, or release of any such Claim, Cause of Action, Right of Action or claim for relief.

**The Debtor, the Liquidating Trust and the Plan Agent, in his capacity as Plan Agent and Liquidating Trustee, reserve any and all claims and rights against any and all third parties, whether such claims and rights arose before, on or after the Petition Date, the Confirmation Date, the Effective Date, the Record Date and/or any Distribution date, including, without limitation, any and all Causes of Action, Rights of Action and/or claims for relief that the Debtor, the Liquidating Debtor or the Liquidating Trust may have against (i) any party described or related to the events described in Exhibit C hereto, and (ii) any insurer and/or insurance policies in which either the Debtor has an insurable or other interest in or right to make a claim against, any other of the Debtor's insurers. The entry of the Confirmation Order shall not constitute *res judicata* or otherwise bar, estop or inhibit any actions by the Debtor, the Liquidating Debtor or the Plan Agent, in his capacity as Plan Agent and/or Liquidating Trustee, relating to any claims, Causes of Action or Rights of Action referred to in this Article 11.5, or otherwise. The Plan Agent, either in his**

**capacity as Plan Agent or Liquidating Trustee, as the situation requires, shall constitute the representative of the Debtor for purposes of retaining, asserting and/or enforcing Rights of Action under § 1123(b)(3)(B) of the Bankruptcy Code. On the Effective Date, the Liquidating Trustee shall be substituted as a party of record in all pending litigation brought by or against the Debtor without need for further order of the Bankruptcy Court**.

**Article 12**
**RETENTION OF JURISDICTION**

12.1    <u>Exclusive Bankruptcy Court Jurisdiction</u>. The Court shall retain and have exclusive jurisdiction over this Chapter 11 Case to the maximum extent provided by law for the follow purposes following the Confirmation Date:

12.1.1    To determine any and all objections to the allowance and classification of Claims or Interests;

12.1.2    To determine the validity and priority of any Lien;

12.1.3    To determine the Allowed Amount of any Claim, whether secured or unsecured;

12.1.4    To allow any and all applications for allowances of compensation and reimbursement of expenses payable from the Estate;

12.1.5    To determine any and all applications or motions pending before the Court on the Effective Date of the Plan, including without limitation any motions for the rejection, assumption or assumption and assignment of any executory contract or unexpired lease.

12.1.6    To consider and approve any modification of this Plan, remedy any defect or omission or reconcile any inconsistency in the Plan, or any order of the Court, including the Confirmation Order;

12.1.7    To hear and determine all controversies, suits and disputes that may arise in connection with the interpretation, enforcement or consummation of this Plan, the Confirmation Order, any transactions or payments contemplated hereby, or any agreement, instrument or other document governing or related to any of the foregoing;

12.1.8    To consider and act on the compromise and settlement of any claim or cause of action by or against the Debtor;

12.1.9    To issue orders in aid of execution and implementation of this Plan and the Confirmation Order, to the extent authorized by 11 U.S.C. §1142 or provided by the terms of this Plan; and

12.1.10    To hear and determine matters concerning federal, state or local taxes in accordance with §§ 346, 505 or 1146 of the Bankruptcy Code

12.1.11    Limitation on Jurisdiction. In no event shall the provisions of this Plan

be deemed to confer in the Bankruptcy Court jurisdiction greater than that established by the provisions of 28 U.S.C. §§ 157 and 1334.

## Article 13
## CONDITIONS TO CONFIRMATION OF PLAN

13.1    <u>Conditions Precedent to Effective Date</u>. The following are conditions precedent to the occurrence of the Effective Date:

13.1.1  The Confirmation Order shall have been entered by the Bankruptcy Court;

13.1.2  The form of all documents necessary or appropriate to give effect to the transactions contemplated under the Plan, including but not limited to the 543 Settlement Agreement, have been approved and executed;

13.1.3  All required consents, approvals, and authorizations, if any, have been obtained;

13.1.4  There shall be no stay of the Confirmation Order in effect; and

13.1.5  All other actions, documents and agreements necessary to implement the Plan shall have been effected or executed

13.2    <u>Annulment of Plan if Conditions Not Waived or Satisfied</u>. The Debtor reserves the right to waive any of the conditions precedent to the Effective Date. If any of the conditions precedent are not waived and are not satisfied within the specified time periods or can no longer occur, the Confirmation Order will be annulled and the Debtor and all parties in interest will return to the *status quo ante* immediately before the entry of the Confirmation Order.

## Article 14
## NOTICE PROVISIONS

14.1    <u>Notices</u>.  All notices, requests, elections or demands in connection with this Plan, including any change of address of any Creditor or Interest Holder for the purposes of receiving Distributions under this Plan and to avoid forfeiting the same pursuant to Article 9 of this Plan, shall be in writing and shall be delivered personally, by facsimile, overnight courier or first class mail. Such notice shall be deemed to have been given when received or, if mailed by first class mail, 5 Business Days after the date of mailing, or if by overnight courier, the next Business Day following the date of mailing. Notices required to be sent to the following parties under this Plan shall be addressed to:

*To the Plan Agent or Liquidating Trustee:*

Douglas J. Brickley
711 Louisiana Street, Suite 2100
Houston, TX 77002
Telephone: (713) 955-8406
Facsimile: (713) 236-0033
Email:  dbrickley@theclarogroup.com

-and-

Okin & Adams LLP
Attn:  Matthew Okin
1113 Vine Street, Suite 201
Houston, TX 77002
Telephone: (713) 228-4101
Facsimile: (888) 865-2118
Email:  mokin@okinadams.com

14.2    <u>Limitation on Notice</u>. The Debtor/Liquidating Debtor shall give the following notice with regard to the following matters, which notice shall be deemed to be good and sufficient notice of such matters with no requirement for any additional or further notice:

14.2.1 <u>Notice of Effective date</u>. Notice of the Effective Date shall be sufficient if mailed to all known holders of Claims and Equity Interests (which have not become Disallowed as of the date of mailing). Such notice shall be mailed within 5 Business Days of the Effective Date.

14.2.2 <u>Post Confirmation Date Service</u>. From and after the date the Confirmation Order becomes a Final Order, notices of appearances and demands for service of process filed with the Court prior to such date shall no longer be effective. No further notices (other than notice of entry of the Confirmation Order) shall be required to be sent to any entities or Persons, except those Persons specified in Section 14.1 of this Plan, the Office of the U.S. Trustee and any Creditor or Interest Holder who files a renewed request for service of pleadings and whose Claim has not been fully satisfied.

14.2.3 <u>General Notice To Creditors</u>. All notices and requests to Creditors or Interest Holders of any Class shall be sent to them at the addresses set forth on the proofs of claim or, if no proof of claim was filed, to their last known address as reflected in the Debtor' records. Any Creditor or Interest Holder may designate in writing any other address for purposes of this Article, which designation shall be effective upon receipt by the Plan Agent.

**Article 15**
**<u>MISCELLANEOUS PROVISIONS</u>**

15.1    <u>Application of Rule 9006</u>.  For the avoidance of doubt, Rule 9006 of the Federal

Rules of Bankruptcy Procedure shall apply to all deadlines established pursuant to the Plan. For purposes of Rule 9006(b), such deadlines shall be deemed set "by order of court."

15.2    <u>Directive to State Agencies</u>. At such time as the Liquidating Debtor files articles of dissolution, all governmental agencies are directed to accept such articles and recognize the dissolution of the Liquidating Debtor regardless of whether all Claims, including taxes have been paid in full. For purposes of dissolution, completion of Distributions under the Plan constitutes satisfaction in full of all outstanding liabilities.

15.3    <u>Warranty of Transfers</u>. All property, whether real or personal, to be transferred by the Liquidating Trustee to any person or entity under this Plan, is transferred "as is, where is," with no representation or warranty of any kind. All transfers by the Liquidating Trustee shall be transferred free and clear of all Liens, claims and encumbrances pursuant to 11 U.S.C. § 363(f).

15.4    <u>Compliance with Tax Requirements</u>. In connection with this Plan, the Debtor/Liquidating Debtor and the Liquidating Trust/Liquidating Trustee shall comply with all withholding and reporting requirements imposed by federal, state, and local taxing authorities, and Distributions hereunder shall be subject to such withholding and reporting requirements.

15.5    <u>Amendment of the Plan</u>. This Plan may be amended or modified by the Debtor before, or by the Liquidating Debtor/Plan Agent after the Effective Date, as provided in § 1127 of the Bankruptcy Code.

15.6    <u>Timing of Distributions</u>. Unless otherwise specified herein, all payments and Distributions shall be made on a Payment Date. When a provision of this Plan requires that a payment shall be made on a certain date, such payment may be made (i) at any time prior to the date on which such payment is due; (ii) in more frequent intervals than set forth in such provision of the Plan; or (iii) not more than 10 days after the date any such payment is due. Notwithstanding the foregoing, no payment shall be considered late or otherwise result in a default unless the Plan Agent has failed to make the payment after the passage of 30 days following the receipt by the Plan Agent of a written notice advising that a payment has not been received in accordance with the times set forth in this paragraph.

15.7    <u>Filing of Documents in Public Records</u>. Pursuant to § 1146 of the Bankruptcy Code, the issuance, transfer or exchange of a security or the making of an instrument of transfer under this Plan (including without limitation the filing of any mortgage, deed of trust, security agreement, uniform commercial code financing statement or other similar document) shall not be taxed under any law imposing a stamp tax or similar tax.

15.8    <u>Right to Seek Further Orders</u>. The Liquidating Debtor and the Plan Agent, if and to the extent necessary, will seek such orders, judgments, injunctions, regulatory approvals, and rulings that may be required to carry out and further the intentions and purposes, and give full effect to the provisions, of the Plan.

15.9    <u>Regulatory Approvals</u>. As the Plan is not intended to modify or supplant any regulatory authority over the Debtor or the Liquidating Debtor, all regulatory approvals required in connection with the Plan will be sought and obtained.

15.10   <u>Withdrawal of Plan</u>. The Debtor reserves the right to withdraw this Plan at any

time prior to the Confirmation Date. If the Debtor withdraws this Plan prior to the Confirmation Date, or if the Confirmation Date or the Effective Date does not occur, then this Plan shall be deemed null and void. In such event, nothing contained herein shall be deemed to constitute an admission, waiver or release of any Claims by or against the Debtor, the Estate or any other person, or to prejudice in any manner the rights of the Debtor, the Estate or any person in any further proceedings involving the Debtor.

15.11   <u>Due Authorization by Creditors</u>. Each and every Creditor who elects to participate in the Distributions provided for herein (i) warrants that it is authorized to accept in consideration of its Claim against the Debtor the Distributions provided for in this Plan; (ii) states that there are no outstanding commitments, agreements, or understandings, express or implied, that may or can in any way defeat or modify the rights conveyed or obligations undertaken by it under this Plan; and (iii) indemnifies and holds harmless the Liquidating Debtor, the Plan Agent, the Liquidating Trust, the Liquidating Trustee and their professionals and representatives with respect to such Distributions.

15.12   <u>Filing of Additional Documentation</u>. On or before the Effective Date, the Debtor may file with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of this Plan.

15.13   <u>Implementation</u>. The Debtor, the Liquidating Debtor and the Plan Agent shall be authorized to perform all reasonable, necessary and authorized acts to consummate the terms and conditions of the Plan.

15.14   <u>Governing Law</u>. Except to the extent that the Bankruptcy Code or Bankruptcy Rules are applicable, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Texas, without giving effect to any conflicts of law principles.

15.15   <u>Conflict</u>. Except as otherwise provided in the Plan, to the extent the Confirmation Order and/or this Plan are inconsistent with the Disclosure Statement, any other agreement entered into between the Debtor and any third party, the Plan controls the Disclosure Statement and any such agreements and the Confirmation Order (and any other orders of the Bankruptcy Court) controls the Plan.

15.16   <u>Severability</u>. The provisions of this Plan shall not be severable unless such severance is agreed to by the Debtor and the Committee and such severance would constitute a permissible modification of this Plan pursuant to § 1127 of the Bankruptcy Code.

15.17   <u>Further Action</u>. Nothing contained in the Plan shall prevent the Liquidating Debtor or the Plan Agent from taking such actions as may be necessary to consummate the Plan, even though such actions may not specifically be provided for within the Plan.

**Date: September 20, 2019.**

*/s/  Richard S. Schmidt*
Richard S. Schmidt, Sole Member of the Debtor