IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| SAM KANE BEEF PROCESSORS, LLC,[1] | § | Case No. 19-20020 |
| | § | |
| Debtor. | § | Chapter 11 |

**DEBTOR'S EMERGENCY MOTION FOR APPROVAL OF
SECOND STIPULATION PURSUANT TO RULE 9019 OF THE
FEDERAL RULES OF BANKRUPTCY PROCEDURE**

**EMERGENCY RELIEF HAS BEEN REQUESTED. A HEARING WILL BE CONDUCTED ON THIS MATTER ON OCTOBER 17, 2019 AT 10:30 AM IN COURTROOM 400, FOURTH FLOOR, 515 RUSK, HOUSTON, TX 77002. IF YOU OBJECT TO THE RELIEF REQUESTED OR YOU BELIEVE THAT EMERGENCY CONSIDERATION IS NOT WARRANTED, YOU MUST EITHER APPEAR AT THE HEARING OR FILE A WRITTEN RESPONSE PRIOR TO THE HEARING. OTHERWISE, THE COURT MAY TREAT THE PLEADING AS UNOPPOSED AND GRANT THE RELIEF REQUESTED. RELIEF IS REQUESTED NOT LATER THAN OCTOBER 17, 2019.**

Sam Kane Beef Processors, LLC, the above captioned debtor and debtor in possession (the "Debtor"), hereby files this *Emergency Motion to Approve Stipulation Pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure* (the "Motion"), and in support hereof, respectfully states as follows:

**JURISDICTION AND VENUE**

1. This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. § 1334. Consideration of this Motion is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (O). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

---

[1] The Debtor in this Chapter 11 Case, along with the last four digits of the Debtor's federal tax identification number, is: Sam Kane Beef Processors, LLC (0433).

## I. BACKGROUND

2. On January 22, 2019 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11, Title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of Texas, Corpus Christi Division (the "Court").

3. Pursuant to Bankruptcy Code §§ 1107(a) and 1108, the Debtor is operating its business and managing its property as a debtor in possession.

4. Prior to the Petition Date, the Debtor operated a meat packing plant located at 9001 Leopard Street in Corpus Christi, Texas.

5. On October 5, 2018, the United States District Court for the Southern District of Texas entered an Order Appointing Receiver [ECF # 45 in Case No. 2:18-cv-00171] appointing Richard Schmidt as Receiver to the Debtor (the "Receivership").

6. Prior to the Petition Date, the Debtor sold meat products to Publix Super Markets, Inc. ("Publix," and with the Debtor, the "Parties") pursuant to various purchase orders. As of the Petition Date, the Debtor alleged that Publix owed the Debtor not less $3,609,327.85 (the "Pre-Petition A/R"), of which approximately $1,400,000.00 was due and scheduled to be paid and mailed out to the Debtor on January 24, 2019 (the "January 24 Payment").

7. Publix alleged that, pursuant to Publix's Supplier Policies and Guidelines which the Debtor has agreed to (the "Customer Agreement"), Publix was entitled to reduce the asserted Pre-Petition A/R for price discrepancies, returned product, post-audit adjustments, allowances, rebates, coupon redemptions, and/or other charge-back items permitted under the Customer Agreement (the "Charge Backs"). In the ordinary course of the Parties' pre-petition business, Publix applied Charge Backs to reduce payments owed to the Debtor. Because the exact amount of Charge Backs could not be computed on the Petition Date, the Debtor and Publix entered into

that *Stipulation Regarding Payment of Pre-Petition Amounts* [ECF # 48] (the "First Publix Stipulation") and agreed as follows:

    a. Publix shall send a check by January 30, 2019 to the Debtor for $1,124,774.76 on account of the January 24 Payment, along with other uncontested amounts due, and shall pay other Pre-Petition A/R amounts to the Debtor in accordance with the Parties' customary practices. For the avoidance of any doubt, pursuant to the Order in Aid of Administration of the Case [ECF # 15], Publix shall remit such amounts directly to the Debtor, and the Debtor shall deposit said funds into the Debtor's debtor-in-possession account.

    b. Publix shall reserve $235,599.62 ("Reserve") from the January 24 Payment to be held as adequate protection for its alleged set-off rights. Unless otherwise agreed by the Parties, Publix shall be entitled to hold the Reserve until such time as: (i) Publix is directed by a final, non-appealable order from this Court (or other court of competent jurisdiction) to pay all or part of the Reserve to the Debtor or a successor Trustee; or (ii) Publix obtains relief from the automatic stay. For the avoidance of doubt, Publix shall not be permitted to set-off any portion of the Reserve against Charge Backs without further relief from the Court.

    c. All other rights of the Parties' are expressly preserved.

8. The Parties subsequently complied with terms First Publix Stipulation.

9. Now, at the present time, JD Factors-Weload.com ("Weload") has notified Publix that Weload intends to recover outstanding freight charges, in the amount of $81,715.00, from

Publix as consignee of shipments of goods from the Debtor under federal tariff law (the "Weload Freight Charges").

10. Publix asserts that it is entitled to deduct the Weload Freight Charges from the Reserve.

11. The Debtor desires to liquidate the amounts owed to the Debtor and obtain a prompt return of any remaining Reserve.

12. As Publix and the Debtor wish to resolve the issues between them, and the Debtor is rapidly approaching confirmation of its *Chapter 11 Plan and Related Disclosure Statement* and winding down its bankruptcy affairs, Publix and the Debtor have entered into a second stipulation.

## II.   PROPOSED SECOND STIPULATION

13. The Parties have agreed to resolve all disputes between themselves pursuant to the terms set forth in the attached second stipulation, attached hereto as **Exhibit A** and incorporated herein by reference, (the "Second Stipulation"). The Stipulation is summarized as follows:

   i. Publix shall pay the Weload Freight Charges in the amount of $81,715.00 and, upon such payment, is entitled to retain $81,715.00 of the Reserve.

   ii. Within five (5) business days after the entry of a final and non-appealable order approving the Second Stipulation, Publix shall remit and pay to the Debtor the balance of the Reserve in the amount of $153,884.62 (the "Reserve Balance").

   iii. To the extent that the automatic stay applies, it shall be modified to permit Publix to take any actions necessary to perform the Second Stipulation.

   iv. The Debtor and Debtor-in-Possession, for themselves and all persons claiming by, through or under them, fully, finally and forever remise, release and discharge Publix and its agents, representatives, attorneys, trustees, nominees, predecessors,

4

successors and assigns, of and from any and all claims, counterclaims, crossclaims, actions, causes of action, suits, contracts, covenants, agreements, promises, trespasses, debts, dues, demands, accounts, bonds, obligations, liabilities, damages, judgment, executions, liens, encumbrances, claims for contribution and indemnity, losses, costs or expenses of any nature whatsoever, in law or in equity, known or unknown, suspected or unsuspected, asserted or unasserted, direct or indirect, liquidated or unliquidated, fixed or contingent, matured or unmatured, including but not limited to any claims under Chapter 5 of the Bankruptcy Code, Section 506 of the Bankruptcy Code or Section 543 of the Bankruptcy Code, which the Debtor, the Debtor-in-Possession or the Debtor's estate at any time had, owned or held from the beginning of the world through the date of entry the order approving the Second Stipulation.

### III.     ARGUMENT AND AUTHORITY

14.     Rule 9019(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") states that "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement . . . ." FED. R. BANKR. P. 9019(a). The merits of a proposed compromise should be judged under the criteria set forth in *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414 (1968). *Anderson* requires that a compromise must be "fair and equitable." *Anderson*, 390 U.S. at 424; *In re AWECO, Inc.*, 725 F.2d 293, 298 (5th Cir.), *cert. denied*, 469 U.S. 880 (1984). The terms "fair and equitable" mean that (a) senior interests are entitled to full priority over junior interests; and (b) the settlement is reasonable in relation to the likely rewards of litigation. *In re Cajun Elec. Power Coop.*, 119 F.3d 349, 355 (5th Cir. 1997); *In re Jackson Brewing Co.*, 624 F.2d 599, 602 (5th Cir. 1980).

15. In particular, the Court must evaluate and set forth in a comprehensible fashion:

(1) The probability of success in the litigation, with due consideration for the uncertainty in fact and law,

(2) The complexity and likely duration of the litigation and any attendant expense, inconvenience and delay, and

(3) All other factors bearing on the wisdom of the compromise.

*Jackson Brewing Co.*, 624 F.2d at 602. (internal citation omitted).

16. With respect to the first factor, it is unnecessary to conduct a mini-trial to determine the probable outcome of any claims waived in the settlement. *Cajun Elec.*, 119 F.3d at 356. "'The judge need only apprise himself of the relevant facts and law so that he can make an informed and intelligent decision . . . .'" *Id.* (quoting *In re American Reserve Corp.*, 841 F.2d 159, 163 (7th Cir. 1987)).

17. Under the rubric of the third, catch-all provision, the Fifth Circuit has specified two additional factors that bear on the decision to approve a settlement agreement. First, the court should consider the best interests of the creditors, "with proper deference to their reasonable views." *Connecticut Gen. Life Ins. Co. v. United Cos. Fin. Corp. (In re Foster Mortgage Corp.)*, 68 F.3d 914, 917 (5th Cir. 1995). Second, the court should consider "the extent to which the settlement is truly the product of arms-length bargaining, and not of fraud or collusion." *Id.* at 918 (internal citations omitted).

18. As discussed below, applying this standard to the facts of the instant case, the Debtor submits that the Second Stipulation should be approved.

**A.** **Likelihood of Success**

19. Publix asserts that it is entitled to reduce the amounts owed to the Debtor by the amount of the Weload Freight Charges. While the Debtor could litigate the rights of Publix to set-off, recoup, or otherwise reduce the amounts owed to the Debtor for the Weload Freight

Charges, the Debtor is rapidly approaching confirmation and wishes to resolve any and all issues with Publix, so that the Debtor may proceed to wind down the bankruptcy affairs and the remainder of the Reserve that Publix holds may be returned to the Debtor. Ultimately, the outcome of Publix's asserted rights is subject to the normal uncertainties associated with such proceedings.

B.    **Potential Duration and Expense**

20.    The Debtor does not want to risk incurring the expense of participating in litigation with Publix, and the potential to incur claims for possible damages, costs, and attorney's fees. The process could be lengthy and, as detailed above, the ultimate outcome is subject to the normal uncertainties associated with litigation. Further, any expenses incurred by the Debtor opposing relief from the stay would be entitled to priority payment over general unsecured claims – thus, further reducing those creditors' prospects for recovery.

C.    **The Wisdom of the Compromise**

i.    *Desires of the Creditors*

21.    The Fifth Circuit has instructed that the "desires of the creditors are not binding." *Cajun Elec.*, 119 F.3d at 358 (citing *In re Foster*, 68 F.3d at 917). "The test is not the desires of the majority [of creditors] as such, but the best interests of the creditors, taking into account their reasonable views." *Id.* The Debtor does not anticipate any creditor's opposition to the Second Stipulation given that the Debtor may ultimately be liable for the Weload Freight Charges. Moreover, by resolving Publix's claims at this time, the Debtor will avoid the incurrence of additional administrative expenses entitled to priority payment ahead of unsecured creditors. Moreover, under the Second Stipulation, Publix has agreed to remit and pay the balance of the Reserve to the Debtor immediately, even though there may be future unknown Charge Backs.

7

      *ii.    Arms-Length Negotiations*

22. The Second Stipulation is the result of arms-length negotiations between the Parties. There is no evidence to support a finding that the parties are anything other than adverse or that they have settled this dispute through any improperly collusive mechanism.

23. In sum, the Debtor acknowledges that a certain degree of uncertainty always exists with respect to litigation. The Debtor respectfully asserts that the Second Stipulation fairly recognizes such risks and provides for the efficient resolution of the Weload Freight Charges without the need for continued costly litigation and with a certain result. In that regard, the Debtor has attempted to achieve a resolution that minimizes the potential damage and risk to the Debtor's estate and maximizes value for the estate. Consequently, the Debtor urges that the *Jackson Brewing* factors are satisfied and the Court should approve the Stipulation.

## IV.    BASIS FOR EMERGENCY RELIEF

24. As this Court is aware, the Debtor is under an expedited timeline to confirm its combined chapter 11 plan and disclosure statement to finalize the settlement negotiations with certain other creditors for the benefit of all parties in interest and the Debtor's estate. A hearing on final approval and confirmation of the combined chapter 11 plan and related disclosure statement is set for October 17, 2019 at 10:30 a.m. CST. The Debtor submits it is appropriate and efficient to set the hearing of this Motion for the same date and time, so that this Motion and the attached stipulation may too be resolved with finality before confirmation of a chapter 11 plan. Accordingly, expedited consideration of this Motion is warranted, and the Debtor request that hearing on this Motion be calendared for October 17, 2019 at 10:30 a.m. CST.

## V.    PRAYER

WHEREFORE, the Debtor respectfully requests that this Court enter an order (i) approving the terms of the Second Stipulation; (ii) authorizing the Debtor to take any and all

8

actions necessary to effectuate the Second Stipulation; (iii) waiving any stay imposed by Bankruptcy Rule 6004(h) or otherwise; and (iv) granting the Debtor such other and further relief as this Court may deem just and proper.

Respectfully submitted on the 15<sup>h</sup> day of October, 2019.

>**OKIN ADAMS LLP**
>By: /s/ *David L. Curry*
>    Matthew S. Okin
>    Texas Bar No. 00784695
>    mokin@okinadams.com
>    David L. Curry, Jr.
>    Texas Bar No. 24065107
>    dcurry@okinadams.com
>    Johnie A. Maraist
>    State Bar No. 24109505
>    jmaraist@okinadams.com
>    1113 Vine St. Suite 240
>    Houston, Texas 77002
>    Tel: (713) 228-4100
>    Fax: (888) 865-2118
>
>**ATTORNEYS TO THE DEBTOR**

### CERTIFICATE OF SERVICE

The undersigned hereby certifies that on October 15, 2019, I caused a copy of the foregoing to be served on all parties eligible to receive service through the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas by electronic mail.

>By: /s/ *David L. Curry*
>David L. Curry

### CERTIFICATE OF ACCURACY PURSUANT TO LOCAL RULE 9013-1(i)

In accordance with Local Bankruptcy Rule 9013-1(i), I hereby certify to the accuracy of the matters set forth in the foregoing Motion.

>By: /s/ *David L. Curry*
>David L. Curry